# **EXHIBIT A**

EXHIBIT "A"

# akerman

People



## Michael I. Goldberg

Partner, Bankruptcy and Reorganization

Fort Lauderdale
T +1 954 468 2444

michael.goldberg@akerman.com
vCard

Connect With Me

A Fellow of the American College of Bankruptcy, Michael Goldberg chairs Akerman's Fraud and Recovery Practice, an experienced team of lawyers focused on unraveling high-profile investor fraud, including Ponzi schemes, receiverships, and EB-5 Immigrant Investor Visa Program wrongdoing. Michael has managed some of the largest Ponzi scheme liquidation recoveries in U.S. history. More recently he has developed a reputation for his work unraveling EB-5 fraud schemes. As noted in *Chambers USA*, his peers call him "an extraordinary lawyer who is unflappable. He's got a keen business mind and can forge consensus in seemingly irreconcilable disputes." Michael previously served as chair of Akerman's Bankruptcy and Reorganization Practice Group.

As a qualified expert witness on Ponzi schemes, he is highly sought after and routinely testifies in federal and state court cases throughout the country and internationally. Michael has served as court-appointed receiver in many of his cases over the past two decades, helping victims maximize potential returns by identifying, securing, and monetizing potential assets as quickly and efficiently as possible.

Regarded as a thought leader on fraud, Michael has appeared on CNN, CNBC, Fox News, and National Public Radio to discuss Ponzi schemes and receiverships. He has also been quoted in *Bloomberg, Forbes, The Wall Street Journal, The New York Times, The American Lawyer, The Miami Herald, Sun Sentinel,* and numerous other publications. Michael regularly lectures on receiverships, Ponzi schemes and EB-5 fraud to regulators and various legal groups throughout the country.

### Notable Work

#### Ponzi Scheme Liquidation Work and Receiverships

**Professional Financial Investors, Inc. and Professional Investors Security Fund, Inc. - Independent Director:** Appointed Independent Director (and subsequently Liquidating Trustee) to oversee the bankruptcy of Professional Financial Investors, Inc. and Professional Investors Security Fund, Inc., two entities that engaged in an $850 million Ponzi scheme defrauding hundreds of investors in connection with the purchase and operation of

### Areas of Experience

Bankruptcy and Reorganization
SEC Receiverships and EB-5 Investor Fraud
Fraud and Recovery
Fraud and Recovery
Assignments for the Benefit of Creditors
Distressed and Special Assets

### Education

J.D. Brooklyn University, 1994 magna cum laude
1984 New York University 1984
B.A. Boston University, History, 1985

### Admissions

#### Bars

Florida
New York

#### Courts

U.S. Court of Appeals for the Eleventh Circuit
U.S. District Court District of Colorado
U.S. District Court Middle District of Florida
U.S. District Court Southern District of Florida
U.S. District Court Southern District of California

### Related Content

US Akerman Lawyers Across the United States Recognized in 2024 Chambers Lawyers and Firm Standouts

Akerman named to the 2024 edition of the list of the Best Lawyers in America

Nearly 400 Akerman Lawyers Across 24 Offices Recognized ...

more than 60 multi-family and commercial buildings in and around San Francisco. Case is pending in the United States Bankruptcy Court for the Northern District of California.

**Champlain Towers South Condominium Association, Inc. - Receiver:** Serve as Receiver for the Champlain Tower South Condominium Association, Inc. following the horrific collapse of the Champlain Tower South Condominium in Surfside, Florida, in June 2021. Case is pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami Dade County, Florida.

**Florida Immigration Building Funding, LLC - Receiver:** Appointed receiver over an entity that raised $50 million from 100 EB-5 investors based on claims that the entity defrauded the investors by wrongfully diverting the money raised for personal use and other purposes. Case is pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami Dade County, Florida.

**Woodbridge Group of Companies:** Appointed by the SEC to the Board of Managers, and subsequently as Liquidating Trustee, of The Woodbridge Group of Companies, a group of related entities accused of defrauding investors out of $1.2 billion. The appointment of the Board of Managers arises out of a settlement that resolved motions filed by the SEC and the Unsecured Creditors Committee in the United States Bankruptcy Court in Delaware to oust the debtors' current management in favor of a trustee. The settlement also avoided the appointment of a receiver in a case commenced by the SEC against the debtors in the United States District Court for the Southern District of Florida accusing the debtors of conducting a massive Ponzi scheme.

**Jay Peak, Inc. and Q Resorts, Inc.:** Appointed Receiver by the United States District Court for the Southern District of Florida over ski resorts located in Northern Vermont in the largest EB-5 fraud in the history of the United States involving more than 800 investors owed in excess of $400 million. Secured a $150 million settlement with Raymond James that was announced in a press conference with Vermont Governor Phil Scott exactly one year from the date the case began. In negotiating the settlement, recovered investors' stolen money and all past due trade debt and contractor claims of the resort will be paid in full. The settlement funds allow for completion of construction of the Jay Peak Resort, northern Vermont's largest employer.

**Rothstein Rosenfeldt Adler:** Represented the Official Committee of Unsecured Creditors in the Rothstein Rosenfeldt Adler bankruptcy case involving the liquidation of a law firm engaged in a $1.2 billion Ponzi scheme. Subsequently appointed Liquidating Trustee of Rothstein Rosenfeldt Adler Liquidating Trust responsible for overseeing all distributions to creditors and handling litigation on behalf of the Liquidating Trust, which had a one hundred percent payout to all general unsecured creditors.

**Madoff Ponzi Scheme:** Represented over 100 defendants in more than 35 separate adversary proceedings seeking to avoid alleged preferential and fraudulent transfers in Madoff Ponzi scheme.

**Pearlman Ponzi Scheme:** Represented the Chapter 11 Trustee of the Louis J. Pearlman and Transcontinental Records estates. Pearlman, who was the creator and the manager of such musical groups as the Back Street Boys and 'NSYNC, was convicted of running a $500 million Ponzi scheme victimizing hundreds of investors.

**Simple Health Plans:** Appointed Receiver by the United States District Court for the Southern District of Florida in an FTC action

over a company alleged to have sold hundreds of millions of dollars in fraudulent health insurance policies.

**Worldwide Entertainment, Inc**: The Entertainment Group Fund, Inc.; and American Enterprises, Inc.: Appointed Receiver by the United States District Court for the Southern District of Florida over a group of entertainment companies, including the world's second largest independent concert promoter, to operate and liquidate diverse entertainment assets, including venues, shows, movies and other intellectual property, in order to repay approximately 3,750 investors owed more than $300 million.

**U.S. EB-5 Investments, LLC and EB-5 Asset Manager, LLC**: Appointed Receiver by the United States District Court for the Southern District of Florida over entities accused of defrauding Chinese EB-5 investors.

**Federal Employee Benefits Group, Inc. and F&S Asset Management, Inc.**: Appointed receiver by Chief Judge of the United States District Court for the Southern District of Florida at the request of the Securities and Exchange Commission over entities engaged in a $50 million Ponzi scheme which victimized approximately 300 FBI, DEA, and ICE agents in connection with non-existent bond fund.

**Premium Sales**: Represented the Receiver in Premium Sales, a $250 million Ponzi scheme.

**Berman Mortgage Corporation**: Appointed Receiver by the Circuit Court in Miami, Florida over a large mortgage origination business with approximately 650 investors and total mortgages and/or real estate developments valued at more than $200 million.

**MAMC Incorporated**: Appointed Receiver by the Circuit Court in Miami, Florida over a business engaged in the servicing of more than $200 million in mortgages on behalf of approximately 650 lenders.

**Home Equity Mortgage Corporation**: Appointed Receiver by the Circuit Court in Miami, Florida over a company engaged in the business of originating and servicing over $200 million in mortgages on behalf of approximately 800 investors.

**Wealth Pools International, Inc. and Recruit for Wealth, Inc.**: Appointed as substitute receiver by the United States District Court for the Middle District of Florida in a $136 million Ponzi scheme case involving 15,000 victims.

**The Cyprus Fund and Related Companies**: Appointed Receiver by the United States District Court for the Southern District of Florida over a group of companies operating a $100 million Ponzi scheme. Responsible for operating corn and soybean farms and liquidating vast real estate holdings throughout Ohio and Florida.

**University Lab Technologies, Inc.**: Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in the manufacturing and distribution of natural herbal remedy products and raised money from dozens of investors in violation of federal securities laws.

**AB Financing & Investments, Inc.**: Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in a $80 million Ponzi scheme. Responsible for liquidating six large commercial properties, including hotels and office buildings.

**Omni Capital Ltd.:** Represented the Receiver of Omni Capital Ltd., a $50 million Ponzi scheme.

**Sterling Wentworth Currency Group, Inc. and LaSalle International Clearing Corporation:** Appointed Receiver at the request of the CFTC by the United States District Court for the Southern District of Florida in a $36 million Ponzi scheme involving FOREX trading.

**Service Five Investments, Inc.:** Appointed Receiver by the Circuit Court in Miami, Florida over a company engaged in making loans to active military personnel. At the time of appointment, the company had debts of $36 million. A plan of distribution was approved by the Eleventh Judicial Circuit Court in Miami, Florida, resulted in creditors receiving an approximate 85% distribution.

**Ware Enterprises and Investments, Inc.:** Appointed Receiver by the United States District Court for the Middle District of Florida over an investment firm engaged in a $30 million dollar Ponzi scheme.

**Par Three Investments, Inc.:** Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in a $10 million Ponzi scheme.

**Receiver, Discovery Capital Group, LTD.:** Appointed Receiver by the United States District Court for the Southern District of Florida over a securities brokerage firm accused of defrauding millions of dollars from hundreds of investors throughout the United States and Europe.

**Biscayne Landing, LLC:** Represented the Receiver of Biscayne Landing, LLC, a 200-acre multi use real estate development.

**Representative Bankruptcy Work**

**Hal's Realty, Inc. - Chapter 11 Trustee :** Appointed Chapter 11 Trustee to oversee the bankruptcy of Hal's Realty, Inc., an entity that owned several properties in downtown Palm Beach, Florida. The case involved resolving litigation among the debtor's ownership group and overseeing the 363 sale of the debtor's property. Case was in the United States Bankruptcy Court for the Southern District of Florida.

**Lending Syndicate:** Represented a lending syndicate of 28 banks and hedge funds as co-counsel in defending a $675 million fraudulent transfer claim brought by the creditors' committee in the TOUSA bankruptcy case.

**Samsung Electronics of America:** Represented the consumer electronics manufacturer in bankruptcy cases throughout the United States including the Sears, Circuit City, Tweeter, and Ultimate Electronics cases.

**AutoNation:** Represented the largest automobile dealership in the United States in the ANC Rental bankruptcy in Delaware in connection with large avoidable transfer claims made against AutoNation arising out of its spin-off of Alamo and National Car Rental.

**In Re: Elcom:** Appointed Liquidating Trustee in a case involving a multi-tower condominium and hotel complex located in Miami, Florida.

**HIG Capital:** Represented HIG Capital in connection with its purchase of Supra Telecom pursuant to a buyer-sponsored plan of reorganization.

**Parkstone Medical**: Represented Parkstone Medical in its Chapter 11 case culminating in the sale of substantially all of its assets pursuant to Section 363 of the Bankruptcy Code.

**Blackfin Yacht Corporation**: Represented a large manufacturer of sport fishing boats in its Chapter 11 filing culminating in a sale of substantially all of its assets.

**Republic Services, Inc.**: Represented one of largest waste companies in the purchase of a waste transfer station pursuant to Section 363 of the Bankruptcy Code.

**Commerzbank of Germany**: Represented the bank as co-counsel in defending a multimillion dollar fraudulent transfer claim brought by the trustee in connection with the Sentinel Funds case. The case involved novel issues of international jurisdiction and banking law.

**Omni Capital, Ltd.**: Served as Liquidating Trustee of Omni Capital, Ltd., a company engaged in a $50 million Ponzi scheme. Responsible for litigating dozens of "claw-back" suits to recover fraudulent transfers of profit to investors.

**Quail West and Tesoro Homeowners Associations**: Represented clients in the Ginn bankruptcies. Responsible for protecting the interests of the homeowners in connection with 363 sales of the uncompleted real estate projects to new developers.

**Fontainebleau Las Vegas**: Represented a steering group of term lenders as co-counsel in the bankruptcy of the unfinished 24.5-acre resort, condominium, and casino project on the Las Vegas Strip.

**South Motors Corporation**: Represented an automotive group and its affiliates, consisting of 17 car dealerships in their Chapter 11 bankruptcies. Approximately seven of the dealerships were sold pursuant to a 363 sale and the remaining dealerships were reorganized pursuant to a plan of reorganization.

## Published Work and Lectures

- American Bankruptcy Institute, Panelist, "Allocating Precious Resources in the Face of Disaster," March 29, 2022

- Miami Law, Class Action and Complex Litigation Forum, Speaker, "New Waves of Mega Liability Litigation: Lessons Learned from Opioid, Monsanto Roundup, and Other Complex Cases," January 24, 2020

- Federal Bar Association, Orlando Chapter and Central Florida Bankruptcy Law Association Meeting, "Liquidation of Ponzi Schemes," September 2019

- National Association of Bankruptcy Trustees Annual Conference, Panelist, "Administering Mega-Ponzi Scheme Cases in Bankruptcy and Receivership," August 2018

- The Federal Bar Association, Panelist, "Equity Receiverships," January 17, 2018

- Association of Insolvency & Restructuring Advisors' 16th Annual Advanced Restructuring and Plan of Reorganization Conference, Speaker, "EB-5 Lending - A Tale of Two Cities," November 13, 2017

- National Association of Federal Equity Receivers' 6th Annual Conference, Moderator, "Fraud Vectors in the Receivership Universe," October 19, 2017

- 2017 San Francisco EB-5 & Investment Immigration Convention, "EB-5 Receivership and Representation of Investors in Troubled Projects," July 2017

- IIUSA Annual Conference, Speaker, "EB-5 & Securities: Enforcement & Compliance Trends," April 2017

- 15th Annual Advanced Restructuring and Plan of Reorganization Conference, Speaker, "Administrating Ponzi Schemes in Bankruptcy," November 14, 2016

- University of Miami School of Law, Guest Lecturer, "Distressed Real Estate Receiverships – An alternative to Bankruptcy," April 2016

- Moderator, Florida Fiduciary Forum, Judges panel (District Court, Bankruptcy Court and State Court) comparing receiverships to bankruptcy, March, 2016

- Palm Beach Bar Association, Speaker, "Ponzi Scheme Liquidations," May 2015

- The Florida Bar Continuing Legal Education Committee and the Business Law Section, Moderator on Statutory Receiverships, May 2014

- Central Florida Bankruptcy Law Association, Speaker, "Liquidating Ponzi Schemes," October 2012

- C5I Fraud, Asset Tracing and Recovery Conference, Speaker, "Miami Vice - Unravelling the $1.2 Billion "Rothstein" Ponzi Scheme," October 2012

- Guest Lecturer, Florida International University School of Law, "Receiverships and Ponzi schemes," February 2012

- Turnaround Management Association, Speaker, "Liquidating Ponzi Schemes," October 2010

- North American Securities Administrator Association's (NASAA) 25th Annual Public Policy Conference, Speaker, "Overview of Receivership and Ponzi Schemes." Audience Included State and Federal Regulators from the United States and Canada, April 2010

- Greater Miami Jewish Federation, Professional Advisory Committee, Lunch and Learn Program, Speaker, January 2010

- Turnaround Management Association, Speaker, "Mopping Up After Madoff," 2009

- Broward County Family Law Bar, Speaker, "Bankruptcy Law Issues for the Family Law Practitioner," December 2005

- Stetson University College of Law and the Florida Bar, Faculty Speaker, "The Ins and Outs of the New Reformed Code-Minefields for the Unwary Special Topics Under Bankruptcy Reform," August 2005

- Stetson University College of Law Seminar, Faculty Speaker, "Previewing the Bankruptcy Reform Act," August 2005

- Turn Around Management Association, Annual South Florida Dinner, Speaker, "Trustees and Receiver's Responsibility for Preserving Computer Evidence in Bankruptcy and Receiverships," 2005

- Daily Business Review, Author, "Florida to Remain a Haven for Debtors," March 30, 2005

- Florida Medical Business, Author, "Road Map For Dealing With Your PPM When It Careens Towards Bankruptcy"

- South Florida Business Journal, Author, "Buying Assets from Bankrupt Businesses," May 2002

- Daily Business Review, Author, "When Bankruptcy Looms: Deciding If Patient Can Be Saved Or Read Last Rites," March 23, 1998

- The Florida Bridge The Gap Seminar, Speaker, 1995 and 1996

- As a law clerk, assisted in writing a book on exemptions for PLI and his portion of Colliers, dealing with Leverage Buyouts and Fraudulent Transfers; also wrote a thesis receiving the highest honors on this particular issue, in an article entitled "Fraudulent Transfer Laws, Are They In Need Of Repair?"

## Affiliations

- American College of Bankruptcy, Fellow
- The Florida Bar, Member
- Broward County Bar Association, Member
- New York State Bar Association, Member
- Bankruptcy Bar Association of the Southern District of Florida, Member
- American Bar Association, Member
- Families Against Cult Teachings, Legal Advisor
- Nova University School of Law, Board of Trustees, 2012-2014
- FBI Citizens Academy Graduate, 2008

## Honors and Distinctions

- *Super Lawyers* Magazine 2020-2022, Listed in Florida for Bankruptcy: Business
- *Fort Lauderdale Illustrated*, Recognized as a "Top Lawyer in Broward County" for Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law, 2021
- *Daily Business Review*, "Most Effective Lawyer," Finalist, 2017
- *The Financial Times*, "Most Innovative Lawyers North America", Litigation and Disputes, 2017
- *Daily Business Review*, Professional Excellence Awards, "Distinguished Leader," 2017
- *The Best Lawyers in America* 2006-2023, Listed in Florida for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law, Bet-the-Company Litigation, and Litigation - Bankruptcy
- *The Best Lawyers in America* 2013, 2016, 2018, 2021, Listed as "Lawyer of the Year" awards for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law in Fort Lauderdale and Miami
- *The Best Lawyers in America* 2020, Listed as "Lawyer of the Year" for Bet-the-Company-Litigation in Fort Lauderdale
- *The Best Lawyers in America* 2015, 2019, Listed as "Lawyer of the Year" for Litigation - Bankruptcy in Fort Lauderdale and Miami
- *Chambers USA* 2006-2022, Ranked in top tier in Florida (South Florida) for Bankruptcy/Restructuring
- *Daily Business Review*, "Lawyer of the Year," Finalist, 2015
- *South Florida Legal Guide* Top Lawyers 2004-2019, Listed for Bankruptcy, Creditors' Rights
- *Super Lawyers* Magazine 2007-2020, Listed in Florida for Bankruptcy & Creditor/Debtor Rights
- *Florida Trend's* Legal Elite 2005-2011, 2013-2015, 2019, Listed for Bankruptcy & Workout
- *Daily Business Review*, Most Effective Lawyer in Bankruptcy, Winner, 2013
- *The Best Lawyers in America* 2013, Named as "Lawyer of the Year" for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law in Miami
- *South Florida Business Journal*, "Key Partner Award," Finalist, 2011
- *Super Lawyers* Magazine 2010, Listed in Florida as a "Top 100 Lawyer"
- *BTI* 2007, Listed as a Client Service "All-Star"
- National Multiple Sclerosis Society, Leadership Award, 2000
- Paul J. Liacos Scholar; G. Joseph Tauro Scholar

# **EXHIBIT B**

Filing # 160209794 E-Filed 10/28/2022 03:45:38 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO.: _____

BKCOIN MANAGEMENT LLC,
a Delaware Limited Liability Company,
as General Partner of BKCOIN MULTI-
STRATEGY FUND LP and as Investment
Manager of BKCOIN MULTI-STRATEGY
FUND, LTD., BKCOIN MULTI-STRATEGY
MASTER FUND, LTD. and BKCOIN MULTI-
STRATEGY FUND LP,

       Petitioner,

vs.

BKCOIN MULTI-STRATEGY FUND, LTD.,
a British Virgin Islands Company;
BKCOIN MULTI-STRATEGY MASTER FUND, LTD.,
a British Virgin Islands Company;
BKCOIN MULTI-STRATEGY FUND LP,
a Delaware Limited Liability Company,

Respondents.

_____/

## EMERGENCY PETITION FOR APPOINTMENT OF RECEIVER

### BASIS FOR EMERGENCY RELIEF:

      This action has been filed as an Emergency Petition on the basis that the Petitioner is the manager of multiple Investment Funds (including the Defendant Funds) which managed millions of dollars of investor funds, some of which were invested in cryptocurrencies and other assets which, due to their nature, are very difficult to marshal and track. It is the belief of the Petitioner that the appointment of a receiver on an emergency basis will help to ensure not further waste and/or loss of investor assets.

> Furthermore, the Petitioner lacks the resources to continue the management of such funds and/or the recovery of funds improperly transferred to third parties. Accordingly, Petitioner prays that this Court grant emergency relief as time may be of the essence in securing and recovering such investor assets.

Petitioner, BKCOIN MANAGEMENT, LLC, a Delaware Limited Liability Company ("Petitioner" or "BKCoin Management"), as General Partner of the BKCOIN MULTI-STRATEGY FUND, LP ("Multi-Strat Domestic"), and as Investment Manager of BKCOIN MULTI-STRATEGY FUND, LTD. ("Multi-Strat Offshore"), Multi-Strat Domestic and BKCOIN MULTI-STRATEGY MASTER FUND, LTD. ("Multi-Strat Master") (collectively, "Respondents" or "Multi-Strat Funds") by and through its undersigned counsel, hereby petitions this Court for the emergency appointment of a Receiver pursuant to Fla. Stat. §§ 605.0704 and Florida's Revised Uniform Limited Partnership Act of 2005, Chapter 620, Fla. Stat., and in support thereof states the following:

## NATURE OF THE ACTION

1.     In this emergency action, BKCoin Management seeks the appointment of a receiver pursuant to Fla. Stat. §§ 605.0704 and Florida's Revised Uniform Limited Partnership Act of 2005, Chapter 620, Fla. Stat. and applicable Florida law to windup the activities and affairs of the Multi-Strat Fund.

2.     The business relationship between the Petitioner and Respondents is governed by the Investment Management Agreement ("IMA"), dated March 9, 2022.[1]

## THE PARTIES

---

[1] To protect the private information of the investors, a copy of the Multi-Strat Funds' organizational documents has not been attached to the Complaint but is in the possession of each of the parties hereto.

3.     Petitioner, BKCoin Management, is a Limited Liability Company organized under the laws of the State of Delaware with its principal place of business in the State of Florida. BKCoin is therefore a citizen of Delaware and Florida and is otherwise *sui juris*.

4.     Respondent, Multi-Strat Offshore., is a British Virgin Islands company limited by shares, with its principal place of business in British Virgin Islands. Multi-Strat Offshore is therefore a citizen of the British Virgin Islands and is otherwise *sui juris*.

5.     Respondent, Multi-Strat Master is a British Virgin Islands company limited by shares, with its principal place of business in British Virgin Islands. Multi-Strat Master is therefore a citizen of the British Virgin Islands and is otherwise *sui juris*.

6.     Respondent, Multi-Strat Domestic is a Delaware Limited Liability Company organized under the laws of the State of Delaware with its principal place of business in the State of Florida. Multi-Strat Domestic is therefore a citizen of Delaware and Florida is otherwise *sui juris*.

7.     BKCoin Management is a General Partner of Multi-Strat Domestic and the Investment Manager of each of the Multi-Strat Funds.

## JURISDICTION AND VENUE

8.     This is an emergency action for the Appointment of a Receiver to manage the activities and affairs of the Multi-Strat Fund pursuant to Fla. Stat. §§ 605.0704 and Florida's Revised Uniform Limited Partnership Act of 2005, Chapter 620, Fla. Stat.

9.     This Court has subject matter jurisdiction pursuant to Fla. Stat. §§ 605.0704 Florida's Revised Uniform Limited Partnership Act of 2005, Chapter 620, Fla. Stat.. Art. 10, Sec.

3

10.5 of the IMA and the Eleventh Judicial Circuit in and for Miami-Dade County, Florida Administrative Order 17-11, Section 3.

10.     Venue of this action is proper in this Court pursuant to the Venue clause located in Art. 10, Sec. 10.5 of the IMA.

## STATEMENT OF FACTS

11.     BKCoin Management currently provides investment management services to private funds in the Cryptocurrency field.

12.     Specifically, BKCoin Management was the manager of, and or general partner of, no less than two funds in addition to the Multi-Strat Funds as well as multiple separately managed accounts ("SMAs").

13.     Pursuant to the BKCoin Management's Limited Liability Company Agreement, the business, property, and affairs of BKCoin Management are managed by a Board of Managers, which is comprised of Carlos Betancourt ("Mr. Betancourt") and Kevin Kang ("Mr. Kang"). Art. V, Sec. 5.1(a).

14.     Pursuant to the Limited Partnership Agreement of BKCoin Multi-Strategy Fund LP ("Multi-Strat Domestic"), dated March 3, 2022, BKCoin Management is the General Partner of the limited partnership.[2]

15.     Pursuant to the IMA, BKCoin Management was appointed as the Investment Manager of each of the Multi-Strat Funds to manage the investment of cash and other investments on behalf of the Multi-Strat Funds. *See* Art. 2.

16.     In or around October 2022, BKCoin Management learned that Mr. Kang had engaged in certain suspicious and/or improper acts with regard to the management of the Multi-

---

[2] To protect the private information of the investors, a copy of the Multi-Strat Funds' organizational documents has not been attached to the Complaint but is in the possession of each of the parties hereto.

4

Strat Funds in contravention to the IMA, and that certain assets of the Multi-Strat Funds were being improperly diverted by Mr. Kang from the Multi-Strat Funds and being comingled with other assets under management.

17.     Upon information and belief, Mr. Kang has diverted and/or comingled over $12,000,000.00 in cash and other assets out of the Multi-Strat Funds.

18.     On October 14, 2022, upon learning of Mr. Kang's improper and fraudulent acts regarding the management of the Multi-Strat Funds, BKCoin Management terminated Mr. Kang as an employee and Officer of BKCoin Management.

19.     BKCoin Management has notified all investors of the Multi-Strat Funds regarding Mr. Kang's improper and apparently fraudulent acts and its desire to appoint a Receiver. None of the investors have objected to the appointment of a Receiver and the investors representing more than a ninety percent (90%) interest in the Multi-Strat Funds affirmatively support such request for the proposed relief. Five of the six investors have all stated that they support the appointment of a receiver and the remaining investor has not provided comment as of the time of this petition.

## APPOINTMENT OF RECEIVER IS NECESSARY

20.     The appointment of a Receiver is necessary to marshal, preserve and protect the assets of the Multi-Strat Funds.

21.     The limited partners and members of the Multi-Strat Funds are comprised of six separate investors which are both U.S. and foreign business entities who are believed to have invested in excess of Eighteen Million Dollars ($18,000,000.00) in the Multi-Strat Funds which they now seek to recover.

22.     BKCoin Management, the sole entity engaged to manage the Multi-Strat Funds' assets is unable to effectively manage the Multi-Strat Fund due to (a) a lack of financial resources

to carry out the marshaling and management of the subject assets; (b) the inability to effectively manage the funds in light of the clear conflict between the Petitioner and Mr. Kang, one of its members and managers of the Multi-Strat Funds; (c) the lack of staff and personnel to pursue claims which the Multi-Strat Funds may have against third parties; and (d) the potential conflict of interest which may exist between the various funds managed by BKCoin Management.

23.     Counsel for Petitioner has contacted Michael I. Goldberg, Esq. of Akerman LLP ("Mr. Goldberg"), to determine his availability to function as the Receiver (*see* attached Curriculum Vitae as **Composite Exhibit "A"**).

24.     Mr. Goldberg chairs Akerman LLP's Fraud and Recovery Practice, focusing on the unraveling of high-profile investor fraud, including Ponzi Schemes and receiverships; and recently served as the Receiver for the Champlain Tower South Condominium Association, Inc. Mr. Goldberg is therefore an appropriate individual and member of the Florida Bar to oversee the Multi-Strat Fund's operations and maintain the cash and assets of the Multi-Strat Fund and to ultimately windup the same.

25.     Without the appointment of a Receiver, the Multi-Strat Funds risk, further impairment, and loss of property to the detriment of its investors and it is believed that given the nature of the losses sustained by the Multi-Strat Funds, the appointment of a receiver should be undertaken on an expedited and emergency basis to ensure that all assets have been secured and that the assets are preserved and recovered from third party recipients of the Multi-Strat Funds' assets. .

26.     Mr. Goldberg has agreed to serve as a Receiver.

27. This Court has the jurisdiction to enter an order appointing a Receiver and should do so on an expedited basis given the risk of loss to the investors and the volatile nature of the investments in which some of the assets may be held.

28. The Petitioner believes that any delay in the appointment of a receiver would negatively impact the investors and increase the potential of further loss and/or an inability to recover some of the funds which were improperly removed from the Multi-Strat Funds.

<u>Argument:</u>

A. <u>Authority to Appoint Receiver:</u>

It has been long held by the courts of this state that "[t]he power to appoint a receiver has long been recognized as one that is inherent in a court of equity, which 'lies in the sound discretion of the chancellor to be granted or withheld according to the facts and circumstances of the particular case.'" *Granada Lakes Villas Condo. Ass'n, Inc. v. Metro-Dade Invs. Co.*, 125 So. 3d 756, 758 (Fla. 2013) (citations omitted). See also: *Armour Fertilizer Works v. First Nat'l Bank of Brooksville*, 100 So. 362 (Fla. 1924); *Bayview Homes Co. v. Sanders*, 136 So. 234 (Fla. 1931); *Buckley Towers Condo., Inc. v. Buchwald*, 340 So. 2d 1206, 1209 (Fla. 3d DCA 1976), cert. denied, 348 So. 2d 945 (Fla. 1977); *Recarey v. Rader*, 320 So. 2d 28 (Fla. 3d DCA 1975); *Ins. Mgmt., Inc. v. McLeod*, 194 So. 2d 16 (Fla. 3d DCA 1966); *Bookout v. First Nat'l Mortg. & Disc., Co., Inc.*, 514 F.2d 757 (Fla. 5th Cir. 1975); Rule 1.620, *Florida Rules of Civil Procedure*, Authors' Comment – 1967 (2017) ("The matter of appointing a receiver rests within the discretion of the court.").

A court-appointed receiver is the agent of the Court, and property or monies possessed by a receiver are possessed by the Court. *Edenfield v. Crisp*, 186 So. 2d 545, 549 (Fla. 2d DCA 1966). Importantly, in *Granada Lakes*, the Florida Supreme Court set forth circumstances warranting

7

appointment of an equitable receiver: "Equitable receiverships are a creation of common law, which this Court has stated should be reserved for cases involving fraud, self-dealing, or waste." *Id.*, 125 So. 3d at 759. See also *McAllister Hotel v. Schatzberg*, 40 So. 2d 201, 202–03 (Fla.1949) (same); *Apalachicola N.R. Co. v. Sommers*, 85 So. 361, 362 (Fla. 1920) (appointment of receiver proper to prevent fraud, destruction, loss of property, or self-dealing). Furthermore, misconduct, mismanagement, and danger of or actual insolvency of a corporation authorize appointment of a receiver. *See Bird Rd. Commercial Sites, Inc. v. Feldstein*, 214 So. 2d 658, 660 (Fla. 3d DCA 1968), cert. denied, 222 So. 2d 752 (Fla. 1969) (affirming appointment of receiver where chancellor faced a "maze of conflicting financial reports and interpretations thereof"). In the instant case, the Petitioner discovered the apparent mismanagement, misconduct and, upon information and belief, fraud committed by Mr. Kang in relation to the Multi-Strat Funds assets which has, *inter alia*, placed the Multi-Strat Funds and BKCoin Management, LLC at risk of insolvency and or further dissipation of assets to the extent Mr. Kang may/could still have access to certain assets belonging to the Multi-Strat Funds.

As clearly stated by the Florida Supreme Court, this court (and the circuit courts of this state) have inherent authority to appoint a receiver of all the property, business, and affairs of a corporation to carry on its business or to windup the same. See *Mills Dev. Corp. v. Shipp & Head*, 171 So. 533, 534 (Fla. 1936). In the instant case, it is believed that certain third parties may be in possession of some and/or all of the assets which were improperly removed from the Multi-Strat Funds, and there is an immediate risk that those assets may be further dissipated and/or concealed, a risk which is exacerbated by the fact that some of the assets may be held in cryptocurrencies and/or other fungible and often anonymous accounts.

WHEREFORE, BKCOIN MANAGEMENT, LLC, as General Partner of BKCOIN MULTI-STRATEGY FUND LP, and as Investment Manager of BKCOIN MULTI-STRATEGY FUND, LTD., BKCOIN MULTI-STRATEGY MASTER FUND, LTD. and BKCOIN MULTI-STRATEGY FUND LP, respectfully requests that this Court appoint a Receiver to manage the activities and affairs of the Multi-Strat Fund, along with such other and further relief deemed just and proper.

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

_____

CARLOS BETANCOURT, CEO of BKCoin
Management, LLC

Respectfully submitted,

ANNESSER ARMENTEROS, PLLC
*Attorneys for Petitioner*
2525 Ponce De Leon Blvd., Suite 625
Coral Gables, Florida 33134
(786) 600-7446 Telephone
(786) 607-3022 Facsimile
jannesser@aa-firm.com
mconkey@aa-firm.com
natali@aa-firm.com
service@aa-firm.com

By: */s/ John W. Annesser*

John W. Annesser, Esq.
Florida Bar No.: 98233
Megan Conkey Gonzalez, Esq.
Florida Bar No.: 1002944

10

EXHIBIT "A"

**akerman**

People



## Michael I. Goldberg

Partner, Bankruptcy and Reorganization

Fort Lauderdale
T: +1 954 468 2444

michael.goldberg@akerman.com
vCard

Connect With Me

A Fellow of the American College of Bankruptcy, Michael Goldberg chairs Akerman's Fraud and Recovery Practice, an experienced team of lawyers focused on unraveling high-profile investor fraud, including Ponzi schemes, receiverships, and EB-5 Immigrant Investor Visa Program wrongdoing. Michael has managed some of the largest Ponzi scheme liquidation recoveries in U.S. history. More recently he has developed a reputation for his work unraveling EB-5 fraud schemes. As noted in *Chambers USA*, his peers call him "an extraordinary lawyer who is unflappable. He's got a keen business mind and can forge consensus in seemingly irreconcilable disputes." Michael previously served as chair of Akerman's Bankruptcy and Reorganization Practice Group.

As a qualified expert witness on Ponzi schemes, he is highly sought after and routinely testifies in federal and state court cases throughout the country and internationally. Michael has served as court-appointed receiver in many of his cases over the past two decades, helping victims maximize potential returns by identifying, securing, and monetizing potential assets as quickly and efficiently as possible.

Regarded as a thought leader on fraud, Michael has appeared on CNN, CNBC, Fox News, and National Public Radio to discuss Ponzi schemes and receiverships. He has also been quoted in *Bloomberg, Forbes, The Wall Street Journal, The New York Times, The American Lawyer, The Miami Herald, Sun Sentinel,* and numerous other publications. Michael regularly lectures on receiverships, Ponzi schemes and EB-5 fraud to regulators and various legal groups throughout the country.

### Notable Work

**Ponzi Scheme Liquidation Work and Receiverships**

**Professional Financial Investors, Inc. and Professional Investors Security Fund, Inc. - Independent Director**: Appointed Independent Director (and subsequently Liquidating Trustee) to oversee the bankruptcy of Professional Financial Investors, Inc. and Professional Investors Security Fund, Inc., two entities that engaged in an $850 million Ponzi scheme defrauding hundreds of investors in connection with the purchase and operation of

### Areas of Experience

Bankruptcy and Reorganization
SEC Receiverships and Private Lawsuits
Fraud and Recovery
Financial Services
Assignments for the Benefit of Creditors
Distressed and Special Assets

### Education

J.D., Boston University, 1988, magna cum laude
M.B.A., New University, 1987
B.A., Boston University, History, 1985

### Admissions

#### Bars

Florida
New York

#### Courts

U.S. District Court Northern District of Florida
U.S. District Court District of Florida
U.S. District Court Middle District of Florida
U.S. District Court Southern District of Florida
U.S. District Court Southern District of Alabama

### Related Content

22 Akerman Lawyers Across 11 Practice Areas Named to 2022 Benchmark Litigation Rising Stars List

Akerman Partner Michael Goldberg Joins the Chambers Global Alternative Assets Experts Guide Contributing Panel

Has CRE Turned Around? 1:1 Q&A Beeson Properties Inc.

more than 60 multi-family and commercial buildings in and around San Francisco. Case is pending in the United States Bankruptcy Court for the Northern District of California.

**Champlain Towers South Condominium Association, Inc. - Receiver:** Serve as Receiver for the Champlain Tower South Condominium Association, Inc. following the horrific collapse of the Champlain Tower South Condominium in Surfside, Florida, in June 2021. Case is pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami Dade County, Florida.

**Florida Immigration Building Funding, LLC - Receiver:** Appointed receiver over an entity that raised $50 million from 100 EB-5 investors based on claims that the entity defrauded the investors by wrongfully diverting the money raised for personal use and other purposes. Case is pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami Dade County, Florida.

**Woodbridge Group of Companies:** Appointed by the SEC to the Board of Managers, and subsequently as Liquidating Trustee, of The Woodbridge Group of Companies, a group of related entities accused of defrauding investors out of $1.2 billion. The appointment of the Board of Managers arises out of a settlement that resolved motions filed by the SEC and the Unsecured Creditors Committee in the United States Bankruptcy Court in Delaware to oust the debtors' current management in favor of a trustee. The settlement also avoided the appointment of a receiver in a case commenced by the SEC against the debtors in the United States District Court for the Southern District of Florida accusing the debtors of conducting a massive Ponzi scheme.

**Jay Peak, Inc. and Q Resorts, Inc.:** Appointed Receiver by the United States District Court for the Southern District of Florida over ski resorts located in Northern Vermont in the largest EB-5 fraud in the history of the United States involving more than 800 investors owed in excess of $400 million. Secured a $150 million settlement with Raymond James that was announced in a press conference with Vermont Governor Phil Scott exactly one year from the date the case began. In negotiating the settlement, recovered investors' stolen money and all past due trade debt and contractor claims of the resort will be paid in full. The settlement funds allow for completion of construction of the Jay Peak Resort, northern Vermont's largest employer.

**Rothstein Rosenfeldt Adler:** Represented the Official Committee of Unsecured Creditors in the Rothstein Rosenfeldt Adler bankruptcy case involving the liquidation of a law firm engaged in a $1.2 billion Ponzi scheme. Subsequently appointed Liquidating Trustee of Rothstein Rosenfeldt Adler Liquidating Trust responsible for overseeing all distributions to creditors and handling litigation on behalf of the Liquidating Trust, which had a one hundred percent payout to all general unsecured creditors.

**Madoff Ponzi Scheme.** Represented over 100 defendants in more than 35 separate adversary proceedings seeking to avoid alleged preferential and fraudulent transfers in Madoff Ponzi scheme.

**Pearlman Ponzi Scheme:** Represented the Chapter 11 Trustee of the Louis J. Pearlman and Transcontinental Records estates. Pearlman, who was the creator and the manager of such musical groups as the Back Street Boys and 'NSYNC, was convicted of running a $500 million Ponzi scheme victimizing hundreds of investors.

**Simple Health Plans:** Appointed Receiver by the United States District Court for the Southern District of Florida in an FTC action

over a company alleged to have sold hundreds of millions of dollars in fraudulent health insurance policies.

**Worldwide Entertainment, Inc:** The Entertainment Group Fund, Inc.; and American Enterprises, Inc.: Appointed Receiver by the United States District Court for the Southern District of Florida over a group of entertainment companies, including the world's second largest independent concert promoter, to operate and liquidate diverse entertainment assets, including venues, shows, movies and other intellectual property, in order to repay approximately 3,750 investors owed more than $300 million.

**U.S. EB-5 Investments, LLC and EB-5 Asset Manager, LLC:** Appointed Receiver by the United States District Court for the Southern District of Florida over entities accused of defrauding Chinese EB-5 investors.

**Federal Employee Benefits Group, Inc. and F&S Asset Management, Inc.:** Appointed receiver by Chief Judge of the United States District Court for the Southern District of Florida at the request of the Securities and Exchange Commission over entities engaged in a $50 million Ponzi scheme which victimized approximately 300 FBI, DEA, and ICE agents in connection with non-existent bond fund.

**Premium Sales:** Represented the Receiver in Premium Sales, a $250 million Ponzi scheme.

**Berman Mortgage Corporation:** Appointed Receiver by the Circuit Court in Miami, Florida over a large mortgage origination business with approximately 650 investors and total mortgages and/or real estate developments valued at more than $200 million.

**MAMC Incorporated:** Appointed Receiver by the Circuit Court in Miami, Florida over a business engaged in the servicing of more than $200 million in mortgages on behalf of approximately 650 lenders.

**Home Equity Mortgage Corporation:** Appointed Receiver by the Circuit Court in Miami, Florida over a company engaged in the business of originating and servicing over $200 million in mortgages on behalf of approximately 800 investors.

**Wealth Pools International, Inc. and Recruit for Wealth, Inc.:** Appointed as substitute receiver by the United States District Court for the Middle District of Florida in a $136 million Ponzi scheme case involving 15,000 victims.

**The Cyprus Fund and Related Companies:** Appointed Receiver by the United States District Court for the Southern District of Florida over a group of companies operating a $100 million Ponzi scheme. Responsible for operating corn and soybean farms and liquidating vast real estate holdings throughout Ohio and Florida.

**University Lab Technologies, Inc.:** Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in the manufacturing and distribution of natural herbal remedy products and raised money from dozens of investors in violation of federal securities laws.

**AB Financing & Investments, Inc.:** Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in a $80 million Ponzi scheme. Responsible for liquidating six large commercial properties, including hotels and office buildings.

**Omni Capital Ltd.:** Represented the Receiver of Omni Capital Ltd., a $50 million Ponzi scheme.

**Sterling Wentworth Currency Group, Inc. and LaSalle International Clearing Corporation:** Appointed Receiver at the request of the CFTC by the United States District Court for the Southern District of Florida in a $38 million Ponzi scheme involving FOREX trading.

**Service Five Investments, Inc.:** Appointed Receiver by the Circuit Court in Miami, Florida over a company engaged in making loans to active military personnel. At the time of appointment, the company had debts of $38 million. A plan of distribution was approved by the Eleventh Judicial Circuit Court in Miami, Florida, resulted in creditors receiving an approximate 85% distribution.

**Ware Enterprises and Investments, Inc.:** Appointed Receiver by the United States District Court for the Middle District of Florida over an investment firm engaged in a $30 million dollar Ponzi scheme.

**Par Three Investments, Inc.:** Appointed Receiver by the United States District Court for the Southern District of Florida over a company engaged in a $10 million Ponzi scheme.

**Receiver, Discovery Capital Group, LTD.:** Appointed Receiver by the United States District Court for the Southern District of Florida over a securities brokerage firm accused of defrauding millions of dollars from hundreds of investors throughout the United States and Europe.

**Biscayne Landing, LLC:** Represented the Receiver of Biscayne Landing, LLC, a 200-acre multi use real estate development.

**Representative Bankruptcy Work**

**Hal's Realty, Inc. - Chapter 11 Trustee :** Appointed Chapter 11 Trustee to oversee the bankruptcy of Hal's Realty, Inc., an entity that owned several properties in downtown Palm Beach, Florida. The case involved resolving litigation among the debtor's ownership group and overseeing the 363 sale of the debtor's property. Case was in the United States Bankruptcy Court for the Southern District of Florida.

**Lending Syndicate:** Represented a lending syndicate of 28 banks and hedge funds as co-counsel in defending a $675 million fraudulent transfer claim brought by the creditors' committee in the TOUSA bankruptcy case.

**Samsung Electronics of America:** Represented the consumer electronics manufacturer in bankruptcy cases throughout the United States including the Sears, Circuit City, Tweeter, and Ultimate Electronics cases.

**AutoNation:** Represented the largest automobile dealership in the United States in the ANC Rental bankruptcy in Delaware in connection with large avoidable transfer claims made against AutoNation arising out of its spin-off of Alamo and National Car Rental.

*In Re: Elcom:* Appointed Liquidating Trustee in a case involving a multi-tower condominium and hotel complex located in Miami, Florida.

**HIG Capital:** Represented HIG Capital in connection with its purchase of Supra Telecom pursuant to a buyer-sponsored plan of reorganization.

**Parkstone Medical**: Represented Parkstone Medical in its Chapter 11 case culminating in the sale of substantially all of its assets pursuant to Section 363 of the Bankruptcy Code.

**Blackfin Yacht Corporation**: Represented a large manufacturer of sport fishing boats in its Chapter 11 filing culminating in a sale of substantially all of its assets.

**Republic Services, Inc.**: Represented one of largest waste companies in the purchase of a waste transfer station pursuant to Section 363 of the Bankruptcy Code.

**Commerzbank of Germany**: Represented the bank as co-counsel in defending a multimillion dollar fraudulent transfer claim brought by the trustee in connection with the Sentinel Funds case. The case involved novel issues of international jurisdiction and banking law.

**Omni Capital, Ltd.**: Served as Liquidating Trustee of Omni Capital, Ltd., a company engaged in a $50 million Ponzi scheme. Responsible for litigating dozens of "claw-back" suits to recover fraudulent transfers of profit to investors.

**Quail West and Tesoro Homeowners Associations**: Represented clients in the Ginn bankruptcies. Responsible for protecting the interests of the homeowners in connection with 363 sales of the uncompleted real estate projects to new developers.

**Fontainebleau Las Vegas**: Represented a steering group of term lenders as co-counsel in the bankruptcy of the unfinished 24.5-acre resort, condominium, and casino project on the Las Vegas Strip.

**South Motors Corporation**: Represented an automotive group and its affiliates, consisting of 17 car dealerships in their Chapter 11 bankruptcies. Approximately seven of the dealerships were sold pursuant to a 363 sale and the remaining dealerships were reorganized pursuant to a plan of reorganization.

## Published Work and Lectures

- American Bankruptcy Institute, Panelist, "Allocating Precious Resources in the Face of Disaster," March 29, 2022

- Miami Law, Class Action and Complex Litigation Forum, Speaker, "New Waves of Mega Liability Litigation: Lessons Learned from Opioid, Monsanto Roundup, and Other Complex Cases," January 24, 2020

- Federal Bar Association, Orlando Chapter and Central Florida Bankruptcy Law Association Meeting, "Liquidation of Ponzi Schemes," September 2019

- National Association of Bankruptcy Trustees Annual Conference, Panelist, "Administering Mega-Ponzi Scheme Cases in Bankruptcy and Receivership," August 2018

- The Federal Bar Association, Panelist, "Equity Receiverships," January 17, 2018

- Association of Insolvency & Restructuring Advisors' 16th Annual Advanced Restructuring and Plan of Reorganization Conference, Speaker, "EB-5 Lending - A Tale of Two Cities," November 13, 2017

- National Association of Federal Equity Receivers' 6th Annual Conference, Moderator, "Fraud Vectors in the Receivership Universe," October 19, 2017

- 2017 San Francisco EB-5 & Investment Immigration Convention, "EB-5 Receivership and Representation of Investors in Troubled Projects," July 2017

- IIUSA Annual Conference, Speaker, "EB-5 & Securities Enforcement & Compliance Trends," April 2017

- 15th Annual Advanced Restructuring and Plan of Reorganization Conference, Speaker, "Administrating Ponzi Schemes in Bankruptcy," November 14, 2016

- University of Miami School of Law, Guest Lecturer, "Distressed Real Estate Receiverships – An alternative to Bankruptcy," April 2016

- Moderator, Florida Fiduciary Forum, Judges panel (District Court, Bankruptcy Court and State Court) comparing receiverships to bankruptcy, March, 2016

- Palm Beach Bar Association, Speaker, "Ponzi Scheme Liquidations," May 2015

- The Florida Bar Continuing Legal Education Committee and the Business Law Section, Moderator on Statutory Receiverships, May 2014

- Central Florida Bankruptcy Law Association, Speaker, "Liquidating Ponzi Schemes," October 2012

- C5I Fraud, Asset Tracing and Recovery Conference, Speaker, "Miami Vice - Unravelling the $1.2 Billion "Rothstein" Ponzi Scheme," October 2012

- Guest Lecturer, Florida International University School of Law, "Receiverships and Ponzi schemes," February 2012

- Turnaround Management Association, Speaker, "Liquidating Ponzi Schemes," October 2010

- North American Securities Administrator Association's (NASAA) 25th Annual Public Policy Conference, Speaker, "Overview of Receivership and Ponzi Schemes," Audience Included State and Federal Regulators from the United States and Canada, April 2010

- Greater Miami Jewish Federation, Professional Advisory Committee, Lunch and Learn Program, Speaker, January 2010

- Turnaround Management Association, Speaker, "Mopping Up After Madoff," 2009

- Broward County Family Law Bar, Speaker, "Bankruptcy Law Issues for the Family Law Practitioner," December 2005

- Stetson University College of Law and the Florida Bar, Faculty Speaker, "The Ins and Outs of the New Reformed Code-Minefields for the Unwary Special Topics Under Bankruptcy Reform," August 2005

- Stetson University College of Law Seminar, Faculty Speaker, "Previewing the Bankruptcy Reform Act," August 2005

- Turn Around Management Association, Annual South Florida Dinner, Speaker, "Trustees and Receiver's Responsibility for Preserving Computer Evidence in Bankruptcy and Receiverships," 2005

- Daily Business Review, Author, "Florida to Remain a Haven for Debtors," March 30, 2005

- Florida Medical Business, Author, "Road Map For Dealing With Your PPM When It Careens Towards Bankruptcy"

- South Florida Business Journal, Author, "Buying Assets from Bankrupt Businesses," May 2002

- Daily Business Review, Author, "When Bankruptcy Looms: Deciding If Patient Can Be Saved Or Read Last Rites," March 23, 1998

- The Florida Bridge The Gap Seminar, Speaker, 1995 and 1996

- As a law clerk, assisted in writing a book on exemptions for PLI and his portion of Colliers, dealing with Leverage Buyouts and Fraudulent Transfers; also wrote a thesis receiving the highest honors on this particular issue, in an article entitled "Fraudulent Transfer Laws, Are They In Need Of Repair?"

## Affiliations

- American College of Bankruptcy, Fellow
- The Florida Bar, Member
- Broward County Bar Association, Member
- New York State Bar Association, Member
- Bankruptcy Bar Association of the Southern District of Florida, Member
- American Bar Association, Member
- Families Against Cult Teachings, Legal Advisor
- Nova University School of Law, Board of Trustees, 2012-2014
- FBI Citizens Academy Graduate, 2008

## Honors and Distinctions

- *Super Lawyers* Magazine 2020-2022, Listed in Florida for Bankruptcy: Business
- *Fort Lauderdale Illustrated*, Recognized as a "Top Lawyer in Broward County" for Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law, 2021
- *Daily Business Review*, "Most Effective Lawyer," Finalist, 2017
- *The Financial Times*, "Most Innovative Lawyers North America", Litigation and Disputes, 2017
- *Daily Business Review*, Professional Excellence Awards, "Distinguished Leader," 2017
- *The Best Lawyers in America* 2006-2023, Listed in Florida for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law, Bet-the-Company Litigation, and Litigation - Bankruptcy
- *The Best Lawyers in America* 2013, 2016, 2018, 2021, Listed as "Lawyer of the Year" awards for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law in Fort Lauderdale and Miami
- *The Best Lawyers in America* 2020, Listed as "Lawyer of the Year" for Bet-the-Company Litigation in Fort Lauderdale
- *The Best Lawyers in America* 2015, 2019, Listed as "Lawyer of the Year" for Litigation - Bankruptcy in Fort Lauderdale and Miami
- *Chambers USA* 2006-2022, Ranked in top tier in Florida (South Florida) for Bankruptcy/Restructuring
- *Daily Business Review*, "Lawyer of the Year," Finalist, 2015
- *South Florida Legal Guide* Top Lawyers 2004-2019, Listed for Bankruptcy, Creditors' Rights
- *Super Lawyers* Magazine 2007-2020, Listed in Florida for Bankruptcy & Creditor/Debtor Rights
- *Florida Trend's* Legal Elite 2005-2011, 2013-2015, 2019, Listed for Bankruptcy & Workout
- *Daily Business Review*, Most Effective Lawyer in Bankruptcy, Winner, 2013
- *The Best Lawyers in America* 2013, Named as "Lawyer of the Year" for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law in Miami
- *South Florida Business Journal*, "Key Partner Award," Finalist, 2011
- *Super Lawyers* Magazine 2010, Listed in Florida as a "Top 100 Lawyer"
- *BTI* 2007, Listed as a Client Service "All-Star"
- National Multiple Sclerosis Society, Leadership Award, 2000
- Paul J. Liacos Scholar; G. Joseph Tauro Scholar

# **<u>EXHIBIT C</u>**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-020760-CA-01
SECTION: CA44
JUDGE: Alan Fine

**BKCOIN MANAGEMENT LLC et al**

Plaintiff(s)

vs.

**BKCOIN MULTI-STRATEGY FUND, LTD. et al**

Defendant(s)

_____/

## EX PARTE ORDER APPOINTING A TEMPORARY RECEIVER

Petitioner, BKCOIN MANAGEMENT, LLC ("Petitioner" or "BKCoin Management") has filed its Emergency Petition for Appointment of Receiver pursuant to Fla. Stat. §§ 605.0704 and Florida's Revised Uniform Limited Partnership Act of 2005, Chapter 620, Fla. Stat. ("Emergency Petition"), and has moved, for the appointment of a temporary receiver of Respondents, BKCOIN MULTI-STRATEGY FUND, LTD., BKCOIN MULTI-STRATEGY MASTER FUND, LTD. and BKCOIN MULTI-STRATEGY FUND LP ("Respondents" or "Multi-Strat Funds").

### FINDINGS OF FACT

The Court, having considered the Emergency Petition, exhibits, and the memorandum of law filed in support thereof, and being otherwise advised, finds that:

A. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this Circuit is proper.

B. There is good cause to believe that, in numerous instances, a member of the Multi-Strat

Funds manager, Mr. Kevin Kang, a Board member of Petitioner ("Mr. Kang"), engaged in certain improper acts with regard to the management of the Multi-Strat Funds in contravention to the governing agreements between the Petitioner and the Multi-Strat Funds.

C. There is good cause to believe that, in multiple instances, Mr. Kang improperly diverted certain assets of the Multi-Strat Funds which were being commingled with other assets under Petitioner and Mr. Kang's management.

D. Petitioner is uncertain as to whether Mr. Kang may still have access to certain accounts and/or assets of the Multi-Strat Funds and whether he has engaged in or is likely to continue to engage in acts or practices that violate the governing agreements between Petitioner and Multi-Strat Funds and Florida and Federal Law.

E. Good cause exists for issuing this Order, appointing a temporary receiver over the Receivership Entities, freezing Respondents' assets, permitting Petitioner and the Receiver immediate access to Respondents' records, and permitting Petitioner and the Receiver to take expedited discovery.

F. The Petitioner, on behalf of the Defendant Multi-Strat Funds, for which the Petitioner is the General Partner and/or Manager, has consented to and encourages the appointment of a receiver as the Petitioner does not have the financial resources necessary to undertake the necessary actions to preserve and protect the investor funds.

G. Good cause exists for the appointment of a temporary receiver as the investors owning more than ninety percent (90%) of the interest in the subject Multi-Strat Funds support the appointment of a receiver in this matter.

H. Weighing the equities and considering Petitioner's likelihood of ultimate success on the merits, granting the appointment of a temporary receiver, immediate access to any business premises, expedited discovery, and other equitable relief is in the public interest is in the best interest of the investors.

A. This Court has authority to issue this Order pursuant to Fla. Stat. § 605.0704 and Florida's Revised Uniform Limited Partnership Act of 2005, Chapter 620, Fla. Stat.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A. **"Asset"** includes any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held, and all proceeds, product, offspring, rents, or profit of or from that property.

B. **"Multi-Strat Funds"** means **BKCoin Multi-Strategy Fund, LP**, **BKCoin Multi-Strategy Fund, Ltd.** and **BKCoin Multi-Strategy Master Fund, Ltd.**, and each of their subsidiaries, affiliates, successors and assigns.

C. **"Respondents"** means **Multi-Strat Funds**, collectively, or in any combination.

D. **"Document"** includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including email and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

E. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

F. **"Petitioner"** means **BKCoin Management, LLC**, as General Partner of the **BKCoin Multi-Strategy Fund, LP**, and as Investment Manager of the **Multi-Strat Funds**.

G. **"Receiver"** means the temporary receiver appointed in Section I of this Order and any deputy receivers that shall be named by the temporary receiver.

H. **"Receivership Entities"** means **Multi-Strat Funds**, as well as any other entity that has conducted any business related to Respondents' advertising, marketing, promoting, offering for sale, or sale or investment of cryptocurrency investments, including by transferring, commingling, or receiving Assets derived from any activity that is the subject of the Petition in this matter, and that the Receiver determines in controlled or owned by any Respondent.

## ORDER

### I. TEMPORARY RECEIVER

**IT IS ORDERED** that Michael I. Goldberg, Esquire is hereby appointed as temporary receiver ("Receiver") of the Receivership Entities with full powers of an equity receiver. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

### II. DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A. Assume full control of Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B. Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity, wherever situated,

including Assets the Receiver has a reasonable basis to believe were purchased using funds from any Receivership Entity's corporate accounts;

C. Conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities. The Receiver shall have full power to sue for, collect, and receive all Assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer or investor if the Receiver believes the consumer or investor's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Petition in this matter, without prior Court approval;

D. Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents. The Receiver shall: divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials); take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; and take whatever steps necessary to preserve all such Documents;

E. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

F. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order,

and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

G. Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities actively operate their businesses and maintain records. Such steps may include, as the Receiver deems necessary or advisable: (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from such premises Documents or Assets of the Receivership Entities. Law enforcement personnel, including police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, law enforcement will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

H. Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Respondents, and to provide access to all such web page or websites to Petitioner's representatives, agents, and assistants, as well as Respondents and their representatives;

A. Enter into and cancel contracts and purchase insurance as advisable or necessary;

J. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers or investors who have transacted business with the Receivership Entities;

K. Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

AX. Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers and including any claims the Receivership Entities may have in law or equity against any third party;

ALL. Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

N. Open one or more bank accounts at designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;

O. Maintain accurate records of all receipts and expenditures incurred as Receiver;

P. Allow Petitioner's representatives, agents, and assistants, as well as Respondents and their representatives, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

Q. Allow Petitioner's representatives, agents, and assistants, as well as Respondents and their representatives reasonable access to all Documents in the possession, custody, or control of

the Receivership Entities;

R. Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

S. Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

T. If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. Provided, however, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its assets and records, if the Receiver determines that notice to the entity or the parties before the Receiver establishes control over the entity may result in the destruction of records, dissipation of assets, or any other obstruction of the Receiver's control of the entity;

U. If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations; and

E. File with the Court, on or before January 4, 2023, a report outlining (1) the steps taken by the Receiver to implement the terms of the Order; (2) the value of all assets and sum of all liabilities of the Receivership Entities; (3) the steps the Receiver intends to take in the future to protect receivership assets, recover receivership assets from third parties, and adjust receivership liabilities; (4) the Receiver's opinion on whether any portion of the business of any of the Receivership Entities can continue to operate legally and profitably; and (5) any

other matters that the Receiver believes should be brought to the Court's attention.

### III. TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that Respondents and any other person with possession, custody or control of property of, or records relating to, the Receivership Entities shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities and immediately transfer or deliver to the Receive possession, custody, and control of, the following:

A. All Assets held by or for the benefit of the Receivership Entities;

B. All Documents of or pertaining to the Receivership Entities;

C. All computers, mobile devices, tablets, and other electronic storage devices or machines used to conduct the business of the Receivership Entities;

D. All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody or control of the Receivership Entities; and

E. All keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property

The Corporate Defendants and Relief Defendants and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of the receivership defendant shall deliver forthwith upon demand such property, monies, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks,

brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of the Corporate Defendants;

All banks, brokerage firm financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, the receivership Defendant shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver';

In the event that any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file, *ex parte*, an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation. Upon the filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, Document, or other thing and to deliver it to the Receiver.

## IV. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Respondents shall immediately provide to the Receiver:

A. A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B. A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

C. A description of any Documents covered by attorney-client privilege or attorney work product, including files where such Documents are likely to be located, authors or recipients of such Documents, and search terms likely to identify such electronic Documents.

## V. COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Respondents; Receivership Entities; Respondents' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of property of or records relating to the Receivership entities who receive actual notice of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names and passwords required to access, and allowing the Receiver to inspect, any computers, mobile devices, tablets and other electronic storage devices and machines (on site or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Entities.

## VI. NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Respondents, Receivership Entities; Respondents' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are restrained and enjoined from directly or indirectly:

A. Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B. Transacting any business of the Receivership Entities;

C. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or

D. Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## VII. **STAY OF ACTIONS**

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Respondents, Respondents' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Respondents, and all others acting for or on behalf of such persons, are enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities, including:

A. Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

B. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

C. Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities,

whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise. Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

VIII. **COMPENSATION OF RECEIVER**

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty days after the date of entry of this Order. This court finds that the hourly rate of $750.00 per hour is a reasonable hourly rate for the Receiver. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

IX. **RECEIVER'S BOND**

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $5,000.00 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

X. **IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS**

**IT IS FURTHER ORDERED** that:

A. To allow Petitioner and the Receiver to preserve Assets and evidence relevant to this action and to expedite discovery, Petitioner and the Receiver, and their representatives, agents, contractors, and assistants, shall have immediate access to any business premises and storage facilities owned, controlled, or used by the Receivership Entities. The Receiver may exclude Respondents, Receivership Entities, and their employees from any business premises during the immediate access;

B. Petitioner and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Section;

C. Petitioner and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to remove Documents from the Receivership Entities' premises in order that they may be inspected, inventoried, and copied. Petitioner shall return any removed materials to the Receiver within five business days of completing inventorying and copying, or such time as is agreed upon by Petitioner and the Receiver;

D. Petitioner's access to the Receivership Entities' Documents pursuant to this Section shall not provide grounds for any Respondent to object to any subsequent request for Documents served by Petitioner;

E. If any Documents, computers, mobile devices, tablets, or other electronic storage devices containing information related to the business practices or finances of the Receivership Entities are at a location other than those listed herein, including personal residence(s) of any Respondent, then, immediately upon receiving notice of this order, Respondents and Receivership Entities shall produce to the Receiver all such Documents, computers, mobile devices, tablets, and other electronic storage devices, along with any codes or passwords needed for access; and

F. If any communications or records of any Receivership Entity are stored with an Electronic Data Host, such Entity shall, immediately upon receiving notice of this order, provide the Receiver with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third party to attempt to access, the communications or records. Nothing contained herein shall be deemed to require any production of privileged and/or work product material maintained by the Petitioner.

## XI. DISTRIBUTION OF ORDER BY RESPONDENTS

**IT IS FURTHER ORDERED** that Respondents shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, members, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division and representative of any Respondent, and shall, within ten days from the date of entry of this Order, provide Petitioner's counsel and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Respondents shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XII. EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of applicable Florida law, Petitioner and Receiver are granted leave, at any time after service of this Order, to conduct limited expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of Respondents' Assets; (2) the nature, location, and extent of Respondents' business

transactions and operations; (3) Documents reflecting Respondents' business transactions and operations; or (4) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A. Petitioner and the Receiver may take the deposition of parties and non-parties. Forty-eight hours of notice shall be sufficient notice for such depositions. Any limitations and conditions set forth under Florida law regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth under Florida law and depositions my be taken by telephone or other remote electronic means.

B. Petitioner and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five days of service, provided, however, that three days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

C. Petitioner and the Receiver may serve upon parties interrogatories that require response within five days of service.

D. Petitioner and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five days of service.

E. Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

F. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Florida Rules of Civil Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Florida law or the Local Rules of this Court.

G. The parties are exempted from making initial disclosures until further order of this Court.

## XIII. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Petitioner, by any law enforcement agency, or by private process serve, upon any Respondent, or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Respondent, or that may be subject to any provision of this Order pursuant to applicable Florida law. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## IX. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>2nd day of November, 2022</u>.

<u>2022-020760-CA-01 11-02-2022 11:50 AM</u>
Hon. Alan Fine

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
John William Annesser II, jannesser@aa-firm.com

John William Annesser II, natali@aa-firm.com
John William Annesser II, service@aa-firm.com
Megan Conkey Gonzalez, mconkey@aa-firm.com

**Physically Served:**

## **EXHIBIT D**

Filing # 161680831 E-Filed 11/21/2022 05:25:20 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-020760-CA-01
SECTION: CA44
JUDGE: Alan Fine

**BKCOIN MANAGEMENT LLC et al**

Plaintiff(s)

vs.

**BKCOIN MULTI-STRATEGY FUND, LTD. et al**

Defendant(s)

_____/

## ORDER GRANTING RECEIVER'S EXPEDITED VERIFIED MOTION TO EXPAND RECEIVERSHIP

This matter came before the Court on the *Expedited Verified Motion by Receiver Michael I. Goldberg to Expand Receivership* (the "Motion"). The Receiver seeks to expand the receivership to include three additional receivership entities: BKCoin Management LLC, BKCoin Capital LP, and BK Offshore Fund Ltd. The Court having found that the Receiver has made a sufficient and proper showing in support of the relief requested, it is therefore

**ORDERED, ADJUDGED, AND DECREED:**

1. The Motion is **GRANTED**.

2. The Court finds that BKCoin Management LLC, BKCoin Capital LP, and BK Offshore Fund Ltd. are Receivership Entities as defined by the paragraph 4 of the Receivership Order. The receivership is therefore expanded to include BKCoin Management LLC, BKCoin Capital LP, and BK Offshore Fund Ltd.

3. Michael I. Goldberg is hereby appointed the Temporary Receiver over BKCoin Management LLC, BKCoin Capital LP, and BK Offshore Fund Ltd., their subsidiaries, successors and assigns (collectively, the "Additional Receivership Entities") and is hereby authorized,

empowered and directed to take all action set forth in or contemplated by the Receivership Order with respect to the Additional Receivership Entities. The Receivership Order shall apply to the Additional Receivership Entities as if the Additional Receivership Entities were originally included in the Receivership Order.

4. Other than as set forth herein, the Receivership Order remains in full force and effect.

5. This Court shall retain jurisdiction of this matter for all purposes.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>21st day of November, 2022</u>.

<u>2022-020760-CA-01 11-21-2022 5:11 PM</u>
Hon. Alan Fine

**CIRCUIT COURT JUDGE**
Electronically Signed

---

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

---

**Electronically Served:**
Catherine Douglas Kretzschmar, catherine.kretzschmar@akerman.com
Catherine Douglas Kretzschmar, jeanette.martinezgoldberg@akerman.com
Christopher S Carver, christopher.carver@akerman.com
Christopher S Carver, cary.gonzalez@akerman.com
John William Annesser II, jannesser@aa-firm.com
John William Annesser II, natali@aa-firm.com
John William Annesser II, service@aa-firm.com
Megan Conkey Gonzalez, mconkey@aa-firm.com
Michael I. Goldberg, michael.goldberg@akerman.com
Michael I. Goldberg, charlene.cerda@akerman.com
Michael I. Goldberg, kimberly.smiley@akerman.com

**Physically Served:**