UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-20719-RNS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

  v.

BKCOIN MANAGEMENT, LLC and
MIN WOO KANG a/k/a "KEVIN" KANG,

    Defendants, and

BKCOIN CAPITAL, LP,
BK OFFSHORE FUND, LTD.,
BKCOIN MULTI-STRATEGY
MASTER FUND, LTD.,
BKCOIN MULTI-STRATEGY FUND, LP,
BKCOIN MULTI-STRATEGY FUND LTD., AND
BISON DIGITAL LLC,

    Relief Defendants.

**PLAINTIFF'S RESPONSE TO PUTATIVE INTERVENORS' LIMITED OBJECTION TO RECEIVER'S EXPEDITED EX PARTE MOTION SEEKING ENTRY OF AN ORDER AUTHORIZING LIQUIDATION AND MOTION FOR ORDER BARRING INTERVENTION[1]**

Plaintiff Securities and Exchange Commission ("SEC" or "Commission"), pursuant to the Court's March 13, 2023 Order [DE 35], files this Response to the *Limited Objection to the Receiver's Expedited Ex Parte Motion Seeking Entry of an Order Authorizing Liquidation* (the "Objection") [DE 32] filed in this litigation by so-called "Interested Parties" Jeffrey Ghitman ("Ghitman"), The Ghitman Family Trust ("Ghitman Trust"), Joseph Lifschutz ("Lifschutz"), Joseph Lifschutz Living Trust ("Lifschutz Trust"), Kevin Henderson ("Henderson"), The

---

[1] The Commission is filing this response pursuant to the Court's March 13, 2023 Order. However, the Court should reject the Putative Intervenors' Objection outright because they are barred from intervening in this litigation.

Henderson Family Trust ("Henderson Trust"), New World Markets, LLC ("NWM"), and GH Holdings, LLC ("GH") (collectively, the "SMA Investors"), (hereinafter the "Putative Intervenors"), and respectfully moves for an Order barring the Putative Intervenors from intervening in this Commission enforcement action.

## I.  INTRODUCTION

The Putative Intervenors—SMA investors who signed Investment Management Agreements ("IMAs") with Defendant BKCoin Management, LLC ("BKCoin")—want to participate in this Commission enforcement action without actually moving to intervene. Prior to filing their Objection, on March 7, 2023 attorneys for the Putative Intervenors filed a Notice of Appearance as "counsel of record" for the SMA Investors, who are not parties to this action and are statutorily prohibited from intervening in the first place. [DE 18]. Undeterred, they next filed an objection to the Receiver's expedited motion seeking to liquidate crypto assets, claiming that neither the Receiver nor this Court has decided the "issue of ownership" as to those assets. Objection, at 2. The Putative Intervenors argue that they are "a class separate and apart" from the BKCoin Funds' investors, because under the IMA BKCoin was required to keep their assets in separate accounts owned by those investors.

The Putative Intervenors' Objection should be denied for several reasons. First, the Putative Intervenors are statutorily prohibited from intervening in this litigation and cannot meet their burden to intervene as a matter of right. Accordingly, the Court should grant the Commission's motion and reject the Objection.

Moreover, contrary to the Putative Intervenors' claim that they are in a "separate" class of investors whose interests are not represented by the Receiver, the SMA investors are in fact similarly situated with the investors who invested with BKCoin through one of the following

2

funds: BKCoin Capital, LP, BK Offshore Fund, Ltd., and three "Multi-Strategy" funds: BKCoin Multi-Strategy Master Fund, Ltd., BKCoin Multi-Strategy Fund, LP and BKCoin Multi-Strategy Fund Ltd. (the "Multi-Strategy Funds") (all funds collectively, "BKCoin Funds"). The evidence submitted by the Commission in support of its emergency motion establishes that Defendants BKCoin and Kang disregarded BKCoin entities' structures and commingled assets of *all* investors – including those of SMA investors. Indeed, at least one SMA investor's investment was redeemed with money misappropriated from the Multi-Strategy Funds. Additionally, the IMAs executed by the SMA investors (Exhibit A to the Objection) expressly granted Defendant BKCoin—an entity now under the control of the Receiver—the authority to "take Client's cryptocurrency assets out of [Client's Account], move the cryptocurrency assets into [BKCoin's] corporate accounts" and trade through "corporate level accounts across numerous exchanges . . . for purposes of execution of the Investment Objectives as [BKCoin] deems appropriate." Objection, Ex. A, §2.

This Court should reject the Putative Intervenors' attempt to gain an unfair advantage over all other defrauded BKCoin Fund investors. This Court should also bar the Putative Intervenors from intervening in this Commission enforcement proceeding.

## II. BACKGROUND AND PROCEDURAL HISTORY

On February 23, 2023, the Commission filed a sealed Complaint against BKCoin, and one of its two managing members, Min Woo Kang a/k/a "Kevin" Kang ("Kang"), each of the BKCoin Funds and Bison Digital LLC. The Commission's Complaint alleges that Defendants raised nearly $100 million from at least 55 investors from at least October 2018 through September 2022, purportedly for the primary purpose of investing in crypto assets. Defendants made false or materially misleading statements to investors in fund documents and other communications with investors, including that BKCoin generated returns for investors in the BKCoin Funds, or

separately managed accounts ("SMAs") through specific investment strategies and objectives focusing on crypto assets. Defendants also told investors and prospective investors in the Multi-Strategy Funds that BKCoin or one of the Multi-Strategy Funds had obtained a US opinion from a top four auditor. In reality, Defendants disregarded fund structures, comingled BKCoin Funds' assets, and used millions for unauthorized purposes, including $3.6 million from the Multi-Strategy Funds' bank accounts to make Ponzi-like payments to investors in the Legacy Fund and one SMA investor. Kang also misappropriated over $371,000 of investor funds to finance his lavish lifestyle.

The Commission also filed an emergency motion concurrently with the Complaint to prevent further fraudulent dissipation and conversion of investor assets. Among other relief, the Commission sought an asset freeze, records preservation, and sworn accounting from Kang. In addition, the Commission filed a motion for appointment of Michael I. Goldberg as Receiver over BKCoin and the Relief Defendants. The Court granted the Commission's motions on February 24, 2023 [DE 8 and 9] and subsequently unsealed the docket. [DE 10 and 11].

On March 10, 2023, the Receiver filed an *Expedited Ex Parte Motion Seeking Entry of an Order Authorizing Liquidation* [DE 32]. The Receiver sought authorization to liquidate certain Receivership Property in the form of cryptocurrency housed at Standard Custody & Trust Company, LLC ("Standard Custody"), a crypto asset depository institution, due to extreme volatility in the cryptocurrency market. The Court granted the Receiver's motion on March 13, 2023. [DE 33].

On the same day, after the Court granted the Receiver's motion, the Putative Intervenors filed their Objection. In their Objection, the Putative Intervenors claim they are "a class separate and apart from the general BKCoin Funds" and have an ownership interest in cryptocurrency assets

4

managed by BKCoin pursuant to the terms of their IMAs with BKCoin which states that "[t]he cryptocurrency assets of the Account shall be held in the account managed by the Client." Objection, at 2. They argue that their ownership rights to crypto assets have not been determined by either the Receiver or this Court, and that liquidation proposed by the Receiver would significantly prejudice their rights. *Id.* For the reasons stated below, the Court should reject the Objection and bar the Putative Intervenors from intervening in this Commission enforcement action.

### III. LEGAL ARGUMENTS

#### A. To the Extent the Putative Intervenors Seek to Intervene as Third-Party Plaintiffs, Section 21(g) of the Exchange Act Bars Intervention

The Putative Intervenors' effort to intervene in this enforcement action is barred by Section 21(g) of the Exchange Act. Section 21(g) provides:

> [N]o action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u (g).

Courts have broadly applied Section 21(g) to preclude interference by private parties in Commission law enforcement proceedings without Commission consent. *See, e.g., Aaron v. SEC*, 446 U.S. 680 at 717 n.9 (1980) (Blackmun, J., concurring); *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 332 (1979) (observing that "the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired") (citing *SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1973)). Courts have also interpreted Section 21(g) to extend beyond consolidation and coordination, barring intervention into actions initiated by the Commission. *SEC v. Nadel*, No. 8:09-cv-87-T-26TBM, 2009 WL 3126266, at *1 (M.D. Fla. Sept.

24, 2009) (quoting *SEC v. Cogley*, No. 98CV802, 2001 WL 1842476, at *5 (S.D. Ohio Mar. 21, 2001) ("[A]fter reviewing the legislative history, and reviewing other cases that have discussed this issue, this Court comes to the inescapable conclusion that Section 21(g) bars intervention.")); *SEC v. Univ. Lab Techs., Inc.*, No. 07-80838-CIV, 2009 WL 723243, at *3 (S.D. Fla. Mar. 18, 2009) ("[Allowing intervention] opens the door to a serious, substantial evisceration of Section 21(g)."). Indeed, in *SEC v. Wozniak*, the Court described Section 21(g) as an "impenetrable wall" to private plaintiffs' attempts to intervene in Commission enforcement actions. No. 92 C 4691, 1993 WL 34702, at *1 (N.D. Ill. Feb. 8, 1993). As Judge Shadur explained, Section 21(g) is "unambiguous":

> [Its] plain meaning has been confirmed by the Supreme Court (albeit in passing) in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n. 17 (1979) and elaborated on by Justice Blackmun (concurring in part and dissenting in part) in *Aaron v. SEC*, 446 U.S. 680, 717 n. 9 (1980). Only SEC's consent can open a door in that wall to permit a private party [] to have access to this federal court in this lawsuit.

*Id.*; *see also SEC v. Homa,* No. 99 C 6895, 2000 WL 1468726, at *2 (N.D. Ill. Sept. 29, 2000) (denying a motion to intervene in an SEC enforcement action and concluding "the language of Section 21(g) is plain and unambiguous, and therefore it must be given effect").

Here, the Putative Intervenors request that the Court determine their ownership interest in some of the crypto assets based on the terms of the IMAs. They also claim they will be prejudiced if the Court were to authorize liquidation. In that regard, the Putative Intervenors seek to significantly expand the scope of the Commission's enforcement action by inserting their own issues and claims. These are precisely the types of private claims by proposed intervenors that Section 21(g) bars. *Univ. Lab Tech.*, 2009 WL 723243, at *3 ("[I]ntervention … opens the door to a serious, substantial evisceration of Section 21(g) and would complicate unnecessarily and detrimentally these proceedings."); *see also SEC v. Bradt*, No. 93 Civ. 8521, 1995 WL 215220, at

*1 (S.D. Fla. Mar. 7, 1995) (dismissing third-party complaint because allowing it would have amounted to coordination of the Commission's action with another action, in contravention of plain meaning of Section 21(g)).

Moreover, Congress enacted Section 21(g) to allow efficient resolution of Commission actions. *Nadel*, 2009 WL 3126266, at *1 (denying intervention); *Univ. Lab Techs.*, 2009 WL 723243, at *3; *Cogley*, 2001 WL 1842476, at *5. Allowing third parties to intervene in Commission enforcement actions drains agency resources with excessive tangential litigation costs and impedes the Commission's mission, which is to protect all of the defrauded investors and the public at large. *Everest Mgmt. Corp.*, 475 F.2d at 1240; *Nadel*, 2009 WL 3126266, at *1. Indeed, when passing Section 21(g), Congress expressly referred to a case in which the Second Circuit Court of Appeals refused to allow intervention in a Commission enforcement action on policy grounds. S. REP. 94-75, at 76 (citing *Everest Mgmt. Corp.*, 475 F.2d at 1236). In denying the fraud victim's motion to intervene, the court in *Everest Management* held that "the complicating effect of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues." *Id*. at 1240. By citing an intervention case in the Senate report, Congress signaled that using 21(g) to bar intervention fulfills the law's purpose and allows for speedy resolution of agency action. Accordingly, the Court should deny the Putative Intervenors' effort to intervene in this case because Section 21(g) bars intervention.

### B. The Putative Intervenors May Not Intervene as of Right Under Rule 24

Even if the Court were to reach the issue of permissive intervention under Rule 24 of the Federal Rules of Civil Procedure ("Rule 24")—which it should not, given the statutory bar described above—the Putative Intervenors do not meet their burden to intervene as of right in the case. To intervene as of right a party must establish that: (1) his application to intervene is timely;

(2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing *Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982)). The movant has the burden to show that each of these four elements are met. *See CFTC v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984). "Failure to satisfy even one of [Rule 24(a)'s] requirements is sufficient to warrant denial of a motion to intervene as a matter of right." *Id*. As discussed below, the Putative Intervenors have failed to meet their burden.

First, the Putative Intervenors' objection is untimely. It was filed after the Receiver's motion and after the Court considered and ruled on the motion.

Second, although the Putative Intervenors claim to have a purported ownership interest in the crypto assets at issue, at this stage of the case it is impossible to identify or separate the SMA investors' potential interests in *these* crypto assets from the interests of all BKCoin Funds' investors. As set forth in the Commission's emergency motion and supporting evidence, Defendants BKCoin and Kang *disregarded* fund and accounts' structures, and commingled assets among *all* investors. Defendants looted Multi-Strategy Funds to make Ponzi-like payments to other investors, including at least one SMA investor. Thus, untangling these funds to match crypto assets to a particular investor without the benefit of discovery, as well as expert blockchain analysis, may not be feasible.

Moreover, contrary to the Putative Intervenors' argument that the IMA required BKCoin to keep each SMA investor's crypto assets separate in that SMA investors' account, the IMA vested BKCoin—in its capacity as investment adviser and attorney-in-fact—with authority to buy,

sell, trade crypto assets on behalf of SMA investors and perform other functions without first consulting with an SMA Investor. [DE 34, Ex. A]. BKCoin was also provided with a Power of Attorney over SMA Investors' accounts with the power to move funds to BKCoin's corporate accounts for the purpose of achieving agreed upon investment strategies. The IMA states in pertinent part:

> Client hereby grants to Manager a power of attorney coupled with an interest, authorizing and permitting Manager to take Client's cryptocurrency assets out of the Account, move the cryptocurrency assets into Manager's corporate accounts at whichever exchange that Manager deems appropriate for execution of the Investment Objectives, to execute the trades in such accounts as the Manager deems appropriate, and finally to move the money back into the Account upon conclusion of the strategy employed by Manager.

[DE 34, Ex. A, §2]. In fact, although the Commission's staff obtained records for eight crypto trading platforms used by Defendants, it could not identify any accounts in the names of any Putative Intervenor or other SMA Investors.

Third, even if the Putative Intervenors demonstrate a sufficient protectable interest in the underlying litigation, they cannot establish that the disposition of the action may impede or impair their ability to protect that interest. *See Chiles*, 865 F.2d at 1213. Indeed, this Court appointed a Receiver for the purposes of marshaling and preserving all assets of the Defendants and Relief Defendants, including but not limited to those assets "that: (a) are attributable to funds derived from investors or clients of the Defendant and Relief Defendants; [or] (b) are held in constructive trust for the Defendant and Relief Defendants." [DE 8 at 1]. The Receiver is also authorized to "take such action as necessary and appropriate . . . to prevent the dissipation or concealment of Receivership Property." [DE 8 at 3]. Since the Putative Intervenors' interests (if any) are adequately protected by the Receiver given that their respective objectives are similar, *i.e.*, to preserve interests, intervention is unwarranted.

Moreover, to the extent the Putative Intervenors believe they are entitled to any part of the Receivership estate, the claims process under the receivership is the proper way for any investors to bring their arguments as to why they are entitled to monies from the receivership estate, not intervention. *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584, 587 (10th Cir. 1984) ("Like the district court, we believe the claims procedures set up by the receiver will permit [the intervenor] to protect his claimed interest in assets presently under the control of the Receiver."). To otherwise allow intervention by individual investors would make this action both unwieldy and waste the Receiver's limited assets.

Finally, the Putative Intervenors cannot demonstrate how their interest is represented inadequately by the existing parties to the suit. *See Chiles*, 865 F.2d at 1213. Even if they disagree with the Receiver's proposed liquidation plan, "the conflict is properly characterized as one of strategy as opposed to a conflict with the goal of preserving interests and maximizing distributions to…clients." *SEC v. Am. Pension Servs.*, No. 2:14 Civ. 00309, 2015 U.S. Dist. LEXIS 6782, at *14 (D. Utah Jan. 20, 2015) citing *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (citations omitted) (where parties have "the same ultimate objective, a presumption of adequacy of representation arises."). Moreover, an enforcement action with individual investors intervening to advance legal and factual arguments the parties are capable of making would unnecessarily complicate this action, cause undue delay, require additional judicial resources, and prejudice the Commission's efforts to enforce the federal securities laws. Therefore, permissive intervention should be denied.

### C. Should the Court Allow the Putative Intervenors to Intervene for the Limited Purpose of Asserting their Objection, their Objection Should be Rejected

The Court should not contemplate the Putative Intevenors' Objection because they should not be allowed to intervene. But if the Court allows intervention for the limited purpose of considering the Objection, the Objection should be rejected. The Receiver has requested authorization to liquidate the crypto assets at issue relatively quickly in order to get money back to all the investors as soon as possible, due to "extreme volatility in the cryptocurrency markets." Given this extreme volatility, any delay to litigate the Putative Intervenors' claim of ownership will harm the Receivership Estate to the detriment of all investors. Even if possible, it would undoubtedly take considerable time to untangle the Putative Intervenors' crypto assets (if any exist) from those of other BKCoin fund investors. Such delay is unjustified because the Putative Intervenors may assert any arguments they may have regarding the amounts due to them through the claims process.

Moreover, the Putative Intervenors cannot establish that they are in a "separate" class that is not already represented in this action, and should not be allowed to gain an unfair—and unjustifiable—advantage over other BKCoin investors. As explained above, Defendants disregarded corporate formalities and commingled investor funds, including those of SMA investors. The SMA investors granted BKCoin, which is under the control of a Court-appointed Receiver, with the authority to manage, invest, liquidate and—for purposes of trading crypto assets—commingle their assets with those of other BKCoin investors.

Therefore, the Putative Intervenors' Objection should be rejected and the Court should allow liquidation to proceed immediately.

## IV. CONCLUSION

For the reasons stated, the Commission respectfully requests the Court enter an Order barring the Putative Intervenors from intervening in this litigation and rejecting the Objection.

March 15, 2023

Respectfully submitted,

By: /s/ Pascale Guerrier
Pascale Guerrier
Trial Counsel
Fla. Bar No. 22590
Direct Dial: (305) 982-6301
Email: guerrierp@sec.gov

Alexander H. Charap, Esq.
Senior Counsel
SDFL Special Bar No. A5502711
Direct Dial: (305) 416-6228
Email: charapal@sec.gov

Jeffrey B. Goldberg, Esq.
Counsel
Fla. Bar No. 0118689
Direct Dial (305) 982-6334
Email: goldergj@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4146

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of March 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

<u>s/Pascale Guerrier</u><br>Pascale Guerrier