UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-20719-RNS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

BKCOIN MANAGEMENT, LLC and
MIN WOO KANG a/k/a "KEVIN" KANG,

    Defendants, and

BKCOIN CAPITAL, LP,
BK OFFSHORE FUND, LTD.,
BKCOIN MULTI-STRATEGY
MASTER FUND, LTD.,
BKCOIN MULTI-STRATEGY FUND, LP,
BKCOIN MULTI-STRATEGY FUND LTD., AND
BISON DIGITAL LLC,

    Relief Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THIRD-PARTY
ALEJANDRO CANTO'S MOTION TO INTERVENE AND
LIFT STAY OF LITIGATION AGAINST CARLOS BETANCOURT**

Plaintiff Securities and Exchange Commission ("SEC" or "Commission"), respectfully submits this opposition to the motion to intervene filed by non-party Alejandro Canto ("Canto"), a plaintiff in a class action pending in the United States District Court for the Southern District of New York (the "class action").[1]  Canto seeks to intervene in this Commission enforcement action to request a partial lift of the stay of litigation entered by the Court pursuant to a receivership order,

---

[1] *See Canto v. BKCoin Mgmt. et al*, No. 1:22-cv-08858 (S.D.N.Y.).  Canto filed a complaint individually and on behalf of class members (the "Class") in October 2022.  Canto amended the complaint in January 2023.

to pursue claims against non-party Carlos Betancourt ("Betancourt") "in his individual capacity." [DE 51 ("Motion"), at 2]. For the reasons set forth below, the Court should deny the Motion.

I. **INTRODUCTION**

Cantos seeks to intervene in this matter for the limited purpose of lifting the stay of litigation against Betancourt who, with Defendant Min Woo Kang a/k/a "Kevin" Kang ("Kang"), served as co-founder and managing member of BKCoin Management, LLC ("BKCoin"). According to the class action complaint, Canto retained BKCoin to manage his cryptocurrency investment portfolio and executed Investment Management Agreements with BKCoin in March and December 2020. [Motion, Ex. A]. Canto maintained a Separately Managed Account ("SMA") with BKCoin and had investment accounts that at their height held in excess of $11 million. Canto alleges that BKCoin, Kang and Betancourt ("the Class Action Defendants") "hid[] massive losses in Canto's investment portfolio while illegally raiding his portfolio of millions of dollars." Canto asserts claims for breach of fiduciary duties against the Class Action Defendants, and additional claims against Kang and Betancourt for aiding and abetting BKCoin's breaches of fiduciary duty, and direct claims of fraudulent misrepresentation.

Canto asserts that he is entitled to "conduct discovery to establish [Betancourt's] liability for damages…and to determine if there are any third parties that aided and abetted [Betancourt] in his personal breaches of fiduciary duty and fraud." [Motion at 4]. Among other things, Canto argues that the stay of litigation impairs his and the class members' legal claims against Betancourt, that "the statute of limitations clock is running," and that lifting the stay will allow him to bring claims against third parties that the receiver cannot bring. [Motion at 9]. He also claims that allowing his suit against Betancourt will not prejudice the parties because Betancourt is not a party

2

to the SEC's case, he and the Class are suing Betancourt in his "individual capacity" and that Betancourt's assets are not part of the receivership estate. [Motion at 4-5, 7-9, 11].

Canto's motion to intervene—even for the limited purpose of requesting a lift of the stay of litigation against Betancourt—should be denied. Canto is statutorily prohibited from intervening in this enforcement action without the Commission's consent under Section 21(g) of the Exchange Act, 15 U.S.C. § 77u(g).

In addition, Canto fails to meet the standards for intervention, either permissive or as of right, under Federal Rule of Civil Procedure 24. Canto's primary arguments for lifting the stay—that he is pursuing claims against Betancourt in his "individual capacity," that those claims are "are outside of this [SEC] action" and that Betancourt's assets are not part of the receivership estate [Motion at 9]—establish that Canto cannot meet a key requirement for mandatory intervention under Rule 24, specifically a demonstrated interest to the property or transaction that is the subject matter of this enforcement action and he is not entitled to intervene as of right.

Even if Canto could demonstrate an interest in the underlying enforcement action as an alleged SMA investor, Canto cannot show how that interest may be impaired by the disposition of this action, or how his interests (and those of the Class) are separate or different from those of all other investors who entrusted BKCoin with their investments. Importantly, the Court has appointed a Receiver whose duties are in part to identify investors with an interest in the receivership estate, marshal assets of the receivership entities, bring suits against third parties if appropriate, and prepare a plan for the administration of the receivership estate for the benefit of all investors, including Canto and the Class.

Canto's request for permissive intervention also fails because Canto has not identified a common question of law or fact between his individual suit against Betancourt and the underlying

SEC enforcement action. Even if there is a strong commonality of fact or law, Canto's intervention in this action—to pursue his claims against Betancourt—will only serve to undermine the efficiency of the SEC's case. Canto's attempt to conduct discovery in the class action will likely include discovery against Kang and BKCoin in light of the aiding and abetting claims against Kang and Betancourt and similar claims in the class action. In addition, Betancourt may very well implicate Kang and BKCoin in defense of the claims against him. The effect of these additional issues would only complicate the SEC's case.

Finally, Canto has not met the requirements to lift the stay of litigation. First, maintaining the stay to permit the Receiver to continue his work of identifying and marshalling the assets of the receivership entities preserves the status quo. Canto would not suffer substantial injury by any delay if the litigation remains in place at this time.

In contrast, lifting the stay as to Betancourt has the potential to create disruption in this SEC enforcement case and the work of the Receiver, while also likely draining limited receivership assets. Despite Canto's claims that the class action claims are against Betancourt "in his individual capacity" and "are outside of this [SEC] action," Betancourt was a co-founder and manager of BKCoin. The allegations in Canto's class action complaint [Motion, Ex. A] all relate to Betancourt's [and Kang's] roles as former principals and "senior management" of BKCoin; their duties (and breaches of duties) while providing investment management services through BKCoin; allegedly misusing and commingling investor funds entrusted to "BKCoin and the Multi-Strat Funds"; and allegedly making fraudulent misrepresentations about their investments with BKCoin. In order to pursue his claims against Betancourt, Canto will almost certainly need substantial discovery from the Receiver, who stands in the shoes of management of the relevant entities.

Second, the receivership has only been in effect for less than two months and lifting the stay at this early stage while the Receiver is marshalling assets is premature and unwarranted. Third, while it is not possible to evaluate the merits of Canto's case against Betancourt given the status of that case, even if such claims were meritorious, the other factors concerning a possible lift of the stay favor maintaining the stay.

Accordingly, the Court should deny Canto's request to intervene in this action and maintain the stay of litigation.

## II.     BACKGROUND AND PROCEDURAL HISTORY

On February 23, 2023, the Commission filed a sealed Complaint against Defendants BKCoin and Kang, and Relief Defendants BKCoin Capital, LP, BK Offshore Fund, Ltd., and three "Multi-Strategy" funds: BKCoin Multi-Strategy Master Fund, Ltd., BKCoin Multi-Strategy Fund, LP and BKCoin Multi-Strategy Fund Ltd. (the "Multi-Strategy Funds") (all funds collectively, "BKCoin Funds"), and Bison Digital LLC ("Bison"). The Commission's Complaint alleges that Defendants raised nearly $100 million from at least 55 investors from at least October 2018 through September 2022, purportedly for the primary purpose of investing in crypto assets. Defendants made false or materially misleading statements to investors in fund documents and other communications with investors, including that BKCoin generated returns for investors in the BKCoin Funds and SMAs through specific investment strategies and objectives focusing on crypto assets. Defendants also told investors and prospective investors in the Multi-Strategy Funds that BKCoin or one of the Multi-Strategy Funds had obtained a US opinion from a top four auditor. In reality, Defendants disregarded fund structures, comingled BKCoin Funds' assets, and used millions for unauthorized purposes, including $3.6 million from the Multi-Strategy Funds' bank

accounts to make Ponzi-like payments to investors in the Legacy Fund and one SMA investor. Kang also misappropriated over $371,000 of investor funds to finance his lavish lifestyle.

The Commission also filed an emergency motion concurrently with the Complaint to prevent further fraudulent dissipation and conversion of investor assets. Among other relief, the Commission sought an asset freeze, records preservation, and sworn accounting from Kang. In addition, the Commission filed a motion for appointment of Michael I. Goldberg as Receiver over BKCoin and the Relief Defendants. The Court granted the Commission's motions on February 24, 2023 [DE 8 and 9] and subsequently unsealed the docket. [DE 10 and 11].

As part of the Order Appointing the Receiver, the Court imposed a stay on all litigation against any of the Defendants' or Relief Defendants' past or present officers, directors, managers, and agents, unless specifically permitted by the Court. As set forth below, Canto's motion to intervene and to lift the stay of litigation against one of those past officers and managers, Betancourt, is unwarranted and should be denied.

### III. LEGAL ARGUMENTS

**A. Canto Is Statutorily Prohibited from Intervening**

Section 21(g) of the Exchange Act, 15 U.S.C. § 77u(g), bars third parties from intervening in enforcement actions by the Commission without Commission consent. Section 21(g) states:

> [N]o action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u (g).

Courts have broadly applied Section 21(g) to preclude interference by private parties in Commission law enforcement proceedings without Commission consent. *See, e.g., Aaron v. SEC*, 446 U.S. 680 at 717 n.9 (1980) (Blackmun, J., concurring); *Parklane Hosiery Co. Inc. v. Shore*,

6

439 U.S. 322, 332 (1979) (observing that "the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired") (citing *SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1973)). Courts have also interpreted Section 21(g) to extend beyond consolidation and coordination, barring intervention into actions initiated by the Commission. *SEC v. Nadel*, No. 8:09-cv-87-T-26TBM, 2009 WL 3126266, at *1 (M.D. Fla. Sept. 24, 2009) (quoting *SEC v. Cogley*, No. 98CV802, 2001 WL 1842476, at *5 (S.D. Ohio Mar. 21, 2001) ("[A]fter reviewing the legislative history, and reviewing other cases that have discussed this issue, this Court comes to the inescapable conclusion that Section 21(g) bars intervention.")); *SEC v. Univ. Lab Techs., Inc.*, No. 07-80838-CIV, 2009 WL 723243, at *3 (S.D. Fla. Mar. 18, 2009) ("[Allowing intervention] opens the door to a serious, substantial evisceration of Section 21(g)."). Indeed, in *SEC v. Wozniak*, the Court described Section 21(g) as an "impenetrable wall" to private plaintiffs' attempts to intervene in Commission enforcement actions. No. 92 C 4691, 1993 WL 34702, at *1 (N.D. Ill. Feb. 8, 1993). As Judge Shadur explained, Section 21(g) is "unambiguous":

> [Its] plain meaning has been confirmed by the Supreme Court (albeit in passing) in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n. 17 (1979) and elaborated on by Justice Blackmun (concurring in part and dissenting in part) in *Aaron v. SEC*, 446 U.S. 680, 717 n. 9 (1980). Only SEC's consent can open a door in that wall to permit a private party [] to have access to this federal court in this lawsuit.

*Id*.; *see also SEC v. Homa,* No. 99 C 6895, 2000 WL 1468726, at *2 (N.D. Ill. Sept. 29, 2000) (denying a motion to intervene in an SEC enforcement action and concluding "the language of Section 21(g) is plain and unambiguous, and therefore it must be given effect").

Even if this Court were to adopt the position that Section 21(g) is not a complete bar to intervention, the Court should still deny the Motion to Intervene in light of the policy considerations. Specifically, Congress enacted Section 21(g) to allow efficient resolution of

7

Commission actions. *Nadel*, 2009 WL 3126266, at *1 (denying intervention); *Univ. Lab Techs.*, 2009 WL 723243, at *3; *Cogley*, 2001 WL 1842476, at *5. Allowing third parties to intervene in Commission enforcement actions drains agency resources with excessive tangential litigation costs and impedes the Commission's mission, which is to protect all of the defrauded investors and the public at large. *Everest Mgmt. Corp.*, 475 F.2d at 1240; *Nadel*, 2009 WL 3126266, at *1. Indeed, when passing Section 21(g), Congress expressly referred to a case in which the Second Circuit Court of Appeals refused to allow intervention in a Commission enforcement action on policy grounds. S. REP. 94-75, at 76 (citing *Everest Mgmt. Corp.*, 475 F.2d at 1236). In denying the fraud victim's motion to intervene, the court in *Everest Management* held that "the complicating effect of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues." *Id*. at 1240. By citing an intervention case in the Senate report, Congress signaled that using 21(g) to bar intervention fulfills the law's purpose and allows for speedy resolution of agency action.

Here, Canto seeks to intervene for a limited purpose, specifically, to pursue a private action against Betancourt. While Betancourt is not a party to this action, he is a former founder and managing principal of BKCoin. There are sound reasons why the Order Appointing Receiver imposes a stay of litigation not just against the receivership entities, but also on all litigation against any of the Defendants' or Relief Defendants' past or present officers, directors, managers, and agents. Among other things, the Receiver (who reports to the Court, not any of the parties) is charged with tracing and marshalling assets, investigating potential claims—including any claims the entities may have against insiders and third-parties—and preserving assets for ultimate distribution to harmed investors. The claims in Cantos' private action purportedly arise from the Class' underlying investments in the SMA accounts and BKCoin Multi-Strategy Funds. Canto

explains that he is "entitled to conduct discovery to establish Mr. Betancourt's liability for damages to Mr. Canto and the class members," and investigate potential claims the Class may have against third-parties. But any such discovery will necessarily involve production of bank and trading records, and other documents in the possession of the Receiver. The Receiver will necessarily have to expend valuable resources that would otherwise be used to benefit the interests of *all* investors. This concern is not inconsequential, given the substantial amount of missing funds.

Given these concerns, the Commission cannot consent to the proposed intervention. Because the Commission has not consented to the proposed intervention, the plain text of section 21(g) and its legislative history mandate that Canto's motion for leave to intervene in this SEC enforcement action should be denied.

### B. Canto Has Not Met the Standards for Intervention Under Rule 24

Canto's motion also should be denied because he cannot meet the standards established for either "as of right" intervention or permissive intervention pursuant to Federal Rule of Civil Procedure 24.

#### 1. Canto Does Not Meet the Standard for Mandatory Intervention

Rule 24(a)(2) permits intervention as of right when: (1) the movant's application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing *Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982)). The movant has the burden to show that each of these four elements are met. *See CFTC v. Heritage Capital Advisory Servs.,*

*Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984). "Failure to satisfy even one of [Rule 24(a)'s] requirements is sufficient to warrant denial of a motion to intervene as a matter of right." *Id*.

Canto fails to establish all the requirements for intervention as of right. Canto's central argument for intervention is that he only seeks to pursue claims against Betancourt in his "individual capacity," that Betancourt is not a party to the SEC's case, and Betancourt's assets are not part of the receivership. [DE 8, 9]. Based on this argument alone, Canto cannot meet the second requirement for intervention as of right, because he does not hold a "direct, substantial, legally protect[a]ble interest in the proceeding" or in the transaction which is the subject of the proceeding. *Chiles*, 865 F.2d at 1213-14. As Canto cannot show an interest relating to the property or transaction that is the subject of this action, he also cannot establish that disposition of this action, as a practical matter, may impair or impede his ability to protect that interest. *NBD Bank N.A. v. Bennett*, 159 F.R.D. 505, 507 (S.D. Ind. 1994) ("[b]ecause they fail to satisfy the second prong of the test under Rule 24(a)(2), petitioners necessarily fail to meet the third prong") (citation omitted).

Even if Canto can show some interest in the underlying case as an SMA investor, he cannot show that his interests would be impaired or inadequately protected (the third and fourth requirements). The Court appointed a Receiver, charging him to preserve and take control of, and to prevent the dissipation, concealment, or disposition of any assets, including those of investors of BKCoin. That charge adequately protects all BKCoin investors' interests, including Canto's purported interest in the receivership estate. *SEC v. TLC Investments and Trade Co.*, 147 F. Supp. 2d 1031, 1040 (holding that the receiver adequately protected the interests of victims who sought to intervene). Therefore, Canto's purported interests are adequately protected.

10

In addition, Canto cannot show any conflicting obligation of the Commission or the Receiver which would prevent the parties in this case from representing Canto's purported interest. "Adequacy of representation can be presumed when the party on whose behalf the applicant seeks intervention is a governmental body or officer charged by law with representing the interests of the proposed intervenor." *American Nat'l Bank & Trust Co. of Chicago*, 865 F.2d 144, 148 (7th Cir. 1989) (citations and internal quotation marks omitted).

### 2. Canto's Request for Permissive Intervention Should Be Denied

A district court may exercise its discretion to allow a third party to intervene if (1) a movant's claim or defense and the main action have a question of law or fact in common, and (2) the proposed intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(3). Canto has not identified a claim or defense that has a common question of law or fact. Although Canto states that the complaint in the class action asserts common questions of law and fact, he concedes that Betancourt is not a party to this matter and Betancourt's assets are not under the Court's asset freeze order. [Motion at 8-9, 11]. Therefore, the Commission respectfully requests that the Court exercise its discretion and deny permissive intervention.

Permitting Canto to intervene in the civil enforcement case, even if only to pursue his individual claims against Betancourt, will only complicate the SEC's case in the event that any of the Defendants in *this* case are implicated, especially since Canto intends to conduct discovery against Betancourt and those who aided and abetted Betancourt's alleged wrongful conduct. *SEC v. Bear, Stearns & Co. Inc.*, 03 CIV.2937 WHP, 2003 U.S. Dist. LEXIS 14611, at 7-8 (S.D.N.Y. Aug. 25, 2003) ("permissive intervention will not be granted, even where there is a strong commonality of fact or law, where such intervention would cause undue delay, complexity or

11

confusion in a case"); *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972) ("[c]oncerns about undue delay and complication resulting from permissive intervention are acute where the…SEC, is a party to the underlying action.").

### C. The Court Should Maintain the Litigation Stay

A district court has broad authority to issue blanket stays of litigation prohibiting all persons, including non-parties, from commencing any suit against the receivership entities except by leave of the court. *SEC v. Harbor City Cap. Corp*. 2023 U.S. Dist. LEXIS 15348, at *9 (M.D. Fla. Jan. 30 2023) citing *SEC v. Wencke*, 622 F.2d 1363, 1371 (9th Cir. 1980) (*Wencke I*) ("a district court in an SEC enforcement action may . . . stay proceedings against a court-imposed receivership, and [] such a stay can be made effective against persons not parties to the SEC action who have notice of the stay.").

In determining whether to lift a litigation stay in a receivership context, courts have considered three factors: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim. *SEC v. Stanford Int'l Bank Ltd.,* 424 F. App'x 338, 341 (5th Cir. 2011) (per curiam) (unpub.) citing *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) (*Wencke II*).[2]  The focus is not on if, but when, during the course of a receivership, should the stay be lifted. *Id*.

Here, the *Wencke* factors weigh against lifting the litigation stay at this time. The first factor—which requires the balancing of the receiver's interests and the interests of the moving

---

[2] The Eleventh Circuit has not addressed the *Wencke* factors in the context of lifting a stay of litigation in a receivership.

party[3]—weighs against lifting the stay because Canto's suit against Betancourt could endanger the receivership status quo, diminishing the total pool of funds available for distribution to creditors. *United States v. Elk Assocs. Funding Corp.*, No. 13 Civ. 1326(JS)(SIL), 2020 U.S. Dist. LEXIS 210397 (E.D.N.Y. Nov 10, 2020) citing *Rupert v. Winter*, No. 10-CV-0799, 2012 U.S. Dist. LEXIS 200868, 2012 WL 13102348, at *8 & n.16 (N.D. Tex. Jan. 24, 2012) ("individual suits against agents, officers, or employees of [the entities in receivership] . . . could endanger the receivership status quo, diminishing the total pool of funds available for distribution to creditors.").

As explained above, the claims in Canto's private action purportedly arise from the Class' underlying investments in the SMA accounts and BKCoin Multi-Strategy Funds. The discovery Canto intends to conduct to support those claims could endanger the receivership status quo, by requiring the Receiver to use limited resources that could be used for the benefits of investors to respond to and conduct substantial discovery.

Permitting the stay to remain in effect would not cause Canto substantial injury. The fact that resolution of Canto's claims against Betancourt may be postponed until after the Receiver has finished untangling the receivership assets is not a substantial injury.

The second *Wencke* factor, timing, also weighs against lifting the stay. The receivership began just this February and the Receiver is still in the process of tracing assets and understanding the financial transactions among Kang, the Receivership entities and third parties. [DE 39 at 2]. Therefore, relief from the stay at this preliminary stage of this receivership and litigation is premature and unwarranted. *Stanford,* 424 F. App'x at 342 ("The receivership was in its early

---

[3] The first *Wencke* factor balances the Receiver's interests and the interests of the moving party. *SEC v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985). In doing so, the Court considers "not only the protection of the receivership res, but also protection of defrauded investors and considerations of judicial economy." *Id.* (citing *Wencke I*, 622 F.2d at 1372-73).

stages and that the interest of the Receiver in continuing to marshal and conserve the estate outweighed the Appellant's claims at this time.")

As to the third factor, the merits of Canto's case, since Betancourt has not filed a response to Canto's complaint, that case's merit cannot be evaluated. Even assuming the underlying claims are meritorious, lifting the stay is not warranted due to the weight of the first two factors. *SEC v. Illarramendi,* No. 3:11CV78 JBA, 2012 WL 234016, at *6 ("[C]ourts are generally unwilling to delve deeply into the merits where the first two factors weigh heavily in favor of maintaining the litigation stay."). Accordingly, the *Wencke* factors do not weigh in favor of lifting the stay against litigation.

## IV. CONCLUSION

Canto's motion should be denied because (1) Canto is statutorily prohibited from intervening in this Commission enforcement action; (2) Canto has not met the standards for intervention under Rule 24 of the Federal Rules of Civil Procedure; and (3) lifting the litigation stay is not warranted.

April 7, 2023

Respectfully submitted,

By: */s/ Pascale Guerrier*
Pascale Guerrier
Trial Counsel
Fla. Bar No. 22590
Direct Dial: (305) 982-6301
Email: guerrierp@sec.gov

Alexander H. Charap, Esq.
Senior Counsel
SDFL Special Bar No. A5502711
Direct Dial: (305) 416-6228
Email: charapal@sec.gov

Jeffrey B. Goldberg, Esq.
Counsel
Fla. Bar No. 0118689
Direct Dial (305) 982-6334
Email: goldergj@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4146

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of April 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/Pascale Guerrier*
Pascale Guerrier