## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Securities and Exchange Commission,

     Plaintiff,

vs.                                Case No. 23-20719-Civ-SCOLA

BK Coin Management, LLC
and other Defendants.

_____/

### RECEIVER'S UNOPPOSED MOTION FOR ENTRY OF AN ORDER:
### (I) AUTHORIZING SALE OF 76 MADISON AVENUE, APARTMENT 3A,
### NEW YORK, NEW YORK, 10016 AND (II) GRANTING RELATED RELIEF

Michael I. Goldberg, the Court appointed receiver (the "Receiver") in the above-captioned

case, respectfully submits this *Unopposed Motion for Entry of an Order: (I) Authorizing the Sale*

*of 76 Madison Avenue, Apartment 3A, New York, New York, 10016; and (II) Granting Related*

*Relief* (the "Motion"). In support of his Motion, the Receiver states as follows:

#### I.      Background

1.      On February 23, 2023, the Securities and Exchange Commission (the "SEC") filed

its *Complaint for Injunctive and Other Relief* (ECF No. 1) (the "Complaint") together with its

*Motion and Memorandum of Law for Appointment of Receiver* (ECF No. 4).[1]

2.      On February 24, 2023, the Court entered its *Order of Appointment* (ECF 8) (the

"Receivership Order") granting the SEC's motion and appointing Mr. Goldberg as Receiver over

the Defendants and Relief Defendants.

3.      The Receivership Order provides the Receiver with the authority to take immediate

---

[1] The Complaint seeks relief against BKCoin Management LLC and one of its managing members, Min Woo Kang (a/k/a "Kevin Kang") (the "Defendants") and against BKCoin Management LLC, BKCoin Capital, LP, BK Offshore Fund, Ltd, BKCoin Multi-Strategy Master Fund, Ltd., BKCoin Multi-Strategy Fund, LP., BKCoin Multi-Strategy Fund, Ltd., and Bison Digital LLC (the "Relief Defendants").

possession, "of all real property of the Receivership Defendants and Relief Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures." Receivership Order, ¶ 18.

4.      The Receivership Order further provides that the:

> Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

Receivership Order, ¶ 36.

### The Real Property

5.      New York property records reveal that the receivership entity, BK Offshore Fund Ltd. ("BK Offshore"), holds title to certain real property located at 76 Madison Avenue, Apartment 3A, New York, New York, 10016 (the "Property"). A true and correct copy of the warranty deed is attached hereto and incorporated herein as **Exhibit A.**

6.      The Receiver seeks to sell the Property to Jasper Lau (the "Buyer") "As Is" for $2,230,000 (the "Sale") on the terms and conditions provided for in the Contract for Sale, together with all Riders thereto (the "Contract"). A true and correct copy of the Contract is attached hereto and incorporated herein as **Composite Exhibit B**.

7.      The Buyer is an independent party who, upon information and belief, has no relationship with any of the Defendants, the Receiver, or any of the Receiver's professionals.

8.      A deposit in the amount of $223,000.00 has been received from the Buyer.

9.      Based on his business judgment, and informed by the below active and historical comparable sales provided by the Receiver's real estate broker, Justin Rubenstein of Compass RE

NY, LLC d/b/a Compass, the Receiver believes the purchase price is a fair price:

| Unit | Price | Bedrooms, Baths | Living Area | Date of Sale | Price per Square Foot |
|------|-------|-----------------|-------------|--------------|------------------------|
| **3A** | **$2,230,000** | **2/2** | **1,769 sq. ft.** | | **$1,260.60** |
| | | | | | |
| 3A | $2,420,000 | 2/2 | 1,769 sq. ft. | 05/03/22 | $1,368 |
| 3B | $1,750,000 | 2/2 | 1,335 sq. ft. | 08/07/21 | $1,311 |
| 3B | $2,200,000 | 2/2 | 1,335 sq. ft. | 04/28/17 | $1,676 |
| 10A | $3,155,000 | 3/3 | 2, 291 sq. ft. | 11/14/22 | $1,377 |

10.     The Receiver asserts that he has a good faith basis to rely upon the above detailed comparable sales when valuing this Property for purposes of the Sale contemplated herein.

## Real Estate Professionals

11.     The Receivership Order provides that the Receiver is authorized to solicit persons and entities to assist him in carrying out his duties and responsibilities, subject to the approval of the Court. *See* Receivership Order, ¶¶ 56 -57.

12.     The Receiver sought and obtained Court approval of the employment of Justin Rubenstein of Compass RE NY, LLC d/b/a Compass for the listing, marketing, and sale of the Property and authorization to enter into the attendant listing agreement (the "Listing Agreement"). *See* ECF Nos. 63 and 66. The Listing Agreement provides Mr. Rubenstein and Compass with, among other things: (i) the exclusive right of sale for a period of no less than 6 months; (ii) entitlement to 6% of the Real Property's total sale price at closing, or 3% if a co-broker is involved in the sale, with the remaining 3% payable to the co-broker; and (iii) a default commission in the amount of 10% in the event the Receivership Estate receives any money in connection with a buyer's default on a fully executed contract of sale for the Real Property.

13.     The Receiver submits it is also necessary to employ attorneys at Kwast Law, PLLC, relying primarily on associate Dominique Miller, Esq., to assist him as New York transactional

real estate counsel in performing the ordinary and necessary legal services required in connection with the Sale of the Property. Kwast Law, PLLC, a boutique New York real estate firm, is well qualified to serve as the Receiver's real estate counsel and is willing to be compensated on a $4,500 flat fee basis. Further, to the best of the Receiver's knowledge, Kwast Law, PLLC does not hold or represent any interest adverse to the Receiver or the Receivership Estate. Accordingly, the Receiver believes retention of Kwast Law, PLLC to be in the best interests of the Receivership Estate.

## II.      Relief Requested

14.      Through this Motion, the Receiver seeks the entry of an order: (i) authorizing the Sale of the Property to the Buyer for $2,230,000; (ii) approving the form of the Contract and authorizing the Receiver to execute same; (iii) approving the employment of Kwast Law, PLLC as New York transactional real estate counsel on a flat basis with the $4,500 fee to be paid from cash on hand without further order of the Court; and (iv) upon closing of the Sale authorizing the payment to Compass pursuant to the terms of the Court approved Listing Agreement without further order of the Court.

## III.      Support for Relief Requested

15.      The District Court has broad powers and wide discretion to determine relief in an equity receivership. *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). These powers include the authority to approve the sale of property of the Receivership Entities. Clark on Receivers § 482 (3rd ed. 1992) *citing First National Bank v. Shedd*, 121 U.S. 74, 87 (1887) (noting that a court of equity having custody and control of property has power to order a sale of the property in its discretion). The Court should exercise its power and authorize the Receiver to sell the Property.

16.     Federal statutes provide procedures for the sale of realty under any order or decree of any court of the United States. *See* 28 U.S.C. § 2001. Generally, realty shall be sold at public sale within the district where the receiver was first appointed. *Id*. However, after notice and hearing, a court may order the sale of realty at a private sale upon terms and conditions approved by the court, if the court finds that the best interests of the estate will be conserved thereby. 28 U.S.C. § 2001(b). *See also Tanzer v. Huffiness*, 412 F.2d 221, 222 (3rd Cir. 1969). Here, the Receiver seeks to sell the Property by private sale.

17.     Typically, before confirmation of a private sale, a court will appoint three disinterested persons to appraise the property to ensure that no private sale shall be confirmed at a price less than two-thirds of the appraised value. 28 U.S.C. § 2001(b). The Receiver does not believe it is necessary for the Court to appoint multiple disinterested persons to appraise the Property. The Property has been exposed to the marketplace, providing evidence of the actual value of the Property based on the response of real-world buyers. *See Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership,* 526 U.S. 434, 457 (1999) (recognizing that "the best way to determine value is exposure to a market").

18.     Moreover, the Buyer is an independent party; the Contract was entered into as an arm's length transaction, and the Buyer has already partially performed the Contract by paying the required deposit. The Court should exercise its authority to dispense with such procedural requirements and authorize the private sale. *See, e.g., SEC v. Utsick, et al.*, 1:06-cv-20975-PCH, ECF 616 (S.D. Fla. Jan. 4, 2010); *SEC v. Estate of Kenneth Wayne McLeod, et al.*, 1:10-cv-22078-FAM, ECF 62 (S.D. Fla. Feb. 4, 2011) (allowing waiver of formal appraisals for sale of condominiums); *see generally Tanzer v. Huffines*, 412 F.2d 221, 222-23 (3rd Cir. 1969) (upholding

sale of property by receiver approved by District Court even though all procedures under 28 U.S.C. 2001 and 2004 were not strictly followed).

19.     The primary goal of a receivership is to provide a conduit through which assets can be held, liquidated and distributed to the particular beneficiaries of the receivership, in this case the investors. *SEC v. Wencke (Wencke II)*, 783 F.2d 829, 837 n. 9 (9th Cir. 1986). Allowing the Receiver to sell the Property through the proposed private sale will most expeditiously further the goals of the receivership. The Sale will eliminate any additional costs to the receivership associated with maintaining the Property, the proceeds of the Sale will reimburse the receivership estate for carrying costs incurred to date, and the net proceeds of the Sale will benefit the Receivership Estate and its creditors.

20.     WHEREFORE, the Receiver respectfully requests this Court enter an Order granting his *Unopposed Motion for Entry of an Order: (I) Authorizing the Sale of 76 Madison Avenue, Apartment 3A, New York, New York, 10016; and (II) Granting Related Relief* and any such other relief as this Court deems just and proper.

## LOCAL RULE 7.1 CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1, undersigned counsel hereby certifies that the Receiver has conferred with counsel for the SEC, which consents to the relief requested herein.

Dated August 7, 2023                    Respectfully submitted,

By: */s/ Catherine Kretzschmar*
Catherine Kretzschmar, Esq.
Florida Bar Number: 85843
catherine.kretzschmar@akerman.com
Katie Johnson, Esq.
Florida Bar Number: 1040357
katie.johnson@akerman.com
**AKERMAN LLP**
Las Olas Centre II, Suite 1800
201 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Phone: (954) 463-2700
Fax: (954) 463-2224

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this Monday, August 7, 2023 via the Court's notice of electronic filing on all CM/ECF registered users entitled to notice in this case.

By: */s/ Catherine Kretzschmar*
       Catherine D. Kretzschmar, Esq

# EXHIBIT "A"

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>**2022061400474002001EAAEC** |

| **RECORDING AND ENDORSEMENT COVER PAGE** | **PAGE 1 OF 5** |
|---|---|

**Document ID: 2022061400474002**   Document Date: 05-03-2022   Preparation Date: 06-14-2022
Document Type: DEED
Document Page Count: 4

| PRESENTER: | RETURN TO: |
|---|---|
| ENTERPRISE TITLE AGENCY, INC<br>393 JERICHO TPKE STE 208<br>MINEOLA, NY 11501 | ENTERPRISE TITLE AGENCY, INC - ETA-7137<br>393 JERICHO TPKE STE 208<br>MINEOLA, NY 11501 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 857 | 1106   Entire Lot | 3A | 76 MADISON AVENUE |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____   or   DocumentID_____   or   _____ Year____ Reel____ Page_____   or   File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| JARED MESZNIK<br>C/O:. GOLDBERG CORWIN LLP, 60 EAST 42ND<br>STREET, SUITE 1420<br>NEW YORK, NY 10165 | BK OFFSHORE FUND LTD<br>76 MADISON AVENUE, UNIT 3A<br>NEW YORK, NY 10016 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $           125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $         34,485.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $9,680.00  + $30,250.00 = $ | 39,930.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 57.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed          06-23-2022 12:34
City Register File No.(CRFN):
**2022000248973**

*City Register Official Signature*

<u>Bargain and Sale Deed, with Covenant against Grantor's Acts</u>

THIS INDENTURE, made the <u>3rd</u> day of <u>May</u> , two thousand and <u>twenty-two</u>

BETWEEN
JARED MESZNIK, having an address at 212 West 95th Street, Apt. 10A, New York, New York 10025
party of the first part, and

BK OFFSHORE FUND LTD, having an address at 38 East 37th Street, Suite 11, New York, New York 10016

party of the second part,

WITNESSETH, that the party of the first part, in consideration of Ten Dollars, and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the part of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County, City and State of New York, commonly known as 76 Madison Avenue, Unit 3A, New York, New York, all as more particularly described on Schedule "A" annexed hereto and made part hereof.

Being and intended to be the same premises conveyed to the party of the first part by deed dated 11/29/2010 recorded 12/23/2010 in CRFN 2010000431387.

Said Unit is intended for residential use only.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof;

TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.



AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.  The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.  In presence of:

IN PRESENCE OF:

_Jared Mesznik_
_By Paul M. C._
_Jared Mesznik as agent_
By Paul M. Corwin, Esq., As Agent
By POA dated 5/03/2022 and
to be duly recorded
simultaneously herein.


First American Title™

***First American Title Insurance Company***

**Policy No.**   5011436-0272319e
**Title No.**    ETA-7137-22-NY

## SCHEDULE A
## DESCRIPTION OF PREMISES

The Residential Condominium Unit (the "Unit") in the Condominium known as The 76 Madison Avenue Condominium (the "Condominium"), comprised of the land described on Schedule A hereto and by this reference made a part hereof (the "Land") and the building known by the number 76-78 Madison Avenue, New York, New York, (the "Building"), said Unit being designated and described as Unit No. 3A in that certain declaration dated July 17, 2006 and accepted for recording on December 12, 2006, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (The "Condominium Act"), establishing a plan for Condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York, (the "City Registers Office"), on January 19, 2007 as CRFN 2007000037572 (such declaration and any amendments thereto being referred to hereinafter collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1106 in Block 857 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the Floor Plans of the Building (the "Floor Plans"), certified by John Certa, Architect filed in the Real Property Assessment Department of the City of New York on December 12, 2006, as Condominium Plan No. 1636 and also filed in the City Registers Office, County of New York on January 19, 2007, under CRFN 2007000037573.

TOGETHER with an undivided 3.41% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

ALL that certain plot piece or parcel of land, situate, lying and being in the City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the westerly side of Madison Avenue with the southerly side of 28th Street;

THENCE southerly along the westerly side of Madison Avenue, 49 feet 7 inches;

THENCE westerly parallel with 28th Street and partly through a party wall, 95 feet;

THENCE northerly parallel with Madison Avenue, 49 feet 7 inches to the southerly side of 28th Street;

THENCE easterly along the southerly side of 28th Street, 95 feet to the point or place of BEGINNING.

## TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS TAKEN IN NEW YORK STATE

State of New York, County of _New York_                                    ss:

On the 3rd day of May, in the year 2022,
before me, the undersigned, personally appeared
_JARED MESZNIK_ ,
personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.

_Gladwyn P. Small_
(signature and office of individual taking acknowledgment)

_Gladwyn P. Small_

Notary Public, State of New York
Registration #01SM6142698
Qualified in Kings County
Commission Expires March 20, 2026

---

State of New York, County of                                    ss:

On the        day of May, in the year 2022,
before me, the undersigned, personally appeared
_____ ,
personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

## TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS TAKEN OUTSIDE NEW YORK STATE

State of                , County of                ss:

On the        day of                , in the year        ,
before me, the undersigned, personally appeared
_____ ,
personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s)  is (are) subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument, and
that such individual made such appearance before the undersigned in
the _____
(insert City or other political subdivision, and State or Country or other
place the acknowledgment was taken).

_____
(signature and office of individual taking acknowledgment)

---

State of                , County of                ss:

On the        day of                , in the year        ,
before me, the undersigned, personally appeared
_____ ,
personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s)  is (are) subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument, and
that such individual made such appearance before the undersigned in
the _____
(insert City or other political subdivision, and State or Country or other
place the acknowledgment was taken).

_____
(signature and office of individual taking acknowledgment)

---

**BARGAIN AND SALE DEED
WITH COVENANTS**

**JARED MESZNIK**
**TO**
**BK OFF SHORE FUND LTD.**

Title No.: ETA-7137-22-NY

COUNTY: NEW YORK
TOWN/CITY: NEW YORK

PROPERTY ADDRESS:        76 MADISON AVENUE,  UNIT 3A
                         NEW YORK, NEW YORK  10016

SECTION:

BLOCK: 857

LOT: 1106

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2022061400474002001S646D

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|

**Document ID: 2022061400474002**     Document Date: 05-03-2022     Preparation Date: 06-14-2022
Document Type: DEED

**ASSOCIATED TAX FORM ID:**     2022050200044

**SUPPORTING DOCUMENTS SUBMITTED:**

|  | Page Count |
|---|---|
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES
# RP - 5217NYC

| FOR CITY USE ONLY | |
|---|---|
| **C1. County Code** | **C2. Date Deed Recorded** ___ / ___ / ___ Month Day Year |
| **C3. Book** OR | **C4. Page** |
| **C5. CRFN** | |

## PROPERTY INFORMATION

**1. Property Location:** 76  MADISON AVENUE 3A  MANHATTAN  10016
STREET NUMBER  STREET NAME  BOROUGH  ZIP CODE

**2. Buyer Name:** BK OFFSHORE FUND LTD
LAST NAME / COMPANY  FIRST NAME

**3. Tax Billing Address:** Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY  FIRST NAME
STREET NUMBER AND STREET NAME  CITY OR TOWN  STATE  ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed:** 1  # of Parcels OR ☐ Part of a Parcel

**4A. Planning Board Approval - N/A for NYC**
**4B. Agricultural District Notice - N/A for NYC**

Check the boxes below as they apply:
**6. Ownership Type is Condominium** ☐
**7. New Construction on Vacant Land** ☐

**5. Deed Property Size:** ___ FRONT FEET X ___ DEPTH OR ___ ACRES

**8. Seller Name:** MESZNIK  JARED
LAST NAME / COMPANY  FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**
A ☑ One Family Residential
B ☐ 2 or 3 Family Residential
C ☐ Residential Vacant Land
D ☐ Non-Residential Vacant Land
E ☐ Commercial
F ☐ Apartment
G ☐ Entertainment / Amusement
H ☐ Community Service
I ☐ Industrial
J ☐ Public Service

## SALE INFORMATION

**10. Sale Contract Date:** 3 / 23 / 2022 (Month/Day/Year)

**11. Date of Sale / Transfer:** 5 / 3 / 2022 (Month/Day/Year)

**12. Full Sale Price $** 2,420,000

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**
A ☐ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below )
F ☐ Sale of Fractional or Less than Fee Interest ( Specify Below )
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
J ☑ None

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class:** R4
**16. Total Assessed Value (of all parcels in transfer):** 292465

**17. Borough, Block and Lot / Roll Identifier(s)  ( If more than three, attach sheet with additional Identifier(s) )**
MANHATTAN 857 1106

20220502000420101

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| | BUYER | | 5/3/22 | | BUYER'S ATTORNEY | |
|---|---|---|---|---|---|---|
| BUYER SIGNATURE | | | DATE | LAST NAME | | FIRST NAME |

76 MADISON AVENUE  UNIT 3A

| STREET NUMBER | STREET NAME (AFTER SALE) | | | AREA CODE | TELEPHONE NUMBER | |
|---|---|---|---|---|---|---|

NEW YORK

| | | NY | 10016 | | SELLER | 5-3-2022 |
|---|---|---|---|---|---|---|
| CITY OR TOWN | | STATE | ZIP CODE | SELLER SIGNATURE | | DATE |

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York
County of *New York* } SS.:

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of
the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 76 MADISON AVENUE | | 3A |
|---|---|---|
| Street Address Unit/Apt. | | |

| MANHATTAN | New York, | 857 | 1106 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or  a cooperative apartment or condominium unit in a one- or
two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in
compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of
the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The
signatures of at least one grantor and one grantee are required, and must be notarized).

JARED MESZNIK
Name of Grantor (Type or Print)

Jared Mesznik
by Paul M. Lo    as agent
Signature of Grantor

BK Offshore Fund Ltd by Kevin Kang
manager
Name of Grantee (Type or Print)

Signature of Grantee

Sworn to before me    Gladwyn P. Small
this  3rd  day of  MAY  20 22
GLADWYN P. SMALL
Notary Public, State of New York
Registration #01SM6142698
Qualified In Kings County
Commission Expires March 20, 20 26

Sworn to before me
this  3rd  day of  May  20 22
VASILIOS DOULOUMBAKAS
Notary Public, State of New York
No. 01DO6073126
Qualified in Kings County
Commission Expires April 15, 2026

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as
a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY
6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A
COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING,
WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2022050200044101

# COMPOSITE EXHIBIT "B"

DocuSign Envelope ID: D1A8830E-1BF2-4E4D-8255-65B7DC76D8C0

*Note: This form is intended to deal with matters common to most transactions involving the sale of a condominium unit. Provisions should be added, altered or deleted to suit the circumstances of a particular transaction. No representation is made that this form of contract complies with Section 5-702 of the General Obligations Law ("Plain Language Law").*

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT
## <u>Condominium Unit – Contract of Sale</u>

This Contract made as of _____August 4_____, 2023, between

**Michael Goldberg, receiver for BK Offshore Fund Ltd., a BVI entity**, hereinafter called "Seller", having an address at 201 Las Olas Blvd., Suite 1800, Ft. Lauderdale, FL 33301;

AND

**Jasper Lau** , hereinafter called "Purchaser", having an address at ____189 Schermerhorn. Brooklyn, NY. 11201____.

1.    Unit: Seller agrees to sell and convey, and Purchaser agrees to purchase, **Unit 3A** ("Unit") in the building ("Building") known as **The 76 Madison Avenue Condominium** ("Condominium") and located at **76 Madison Avenue, NY 10016**, together with a **3.41 percent** undivided interest in the Common Elements (as defined in para. 6) appurtenant thereto, all upon and subject to the terms and conditions set forth herein. The Unit shall be as designated in the Declaration of Condominium Ownership (as the same may be amended from time to time, the "Declaration") of the Condominium, recorded in New York County, New York or the By-Laws (as the same may be amended from time to time, the "By-Laws") of the Condominium.

2.    **Personal Property:** Included in this sale: (a) The sale includes all of Seller's right, title and interest, if any, in and to ***the following, but only to the extent they are located in the Unit as of the date hereof***:
(i) the refrigerators including ice makers, freezers, ranges, ovens and built in microwave ovens, dishwashers, clothes washing machines, clothes dryers, cabinets and counters, lighting and plumbing fixtures, air conditioning equipment, venetian blinds, shades, screens, storm windows and other window treatments, wallto-wall carpeting, built-in bookshelves, switch plates, door hardware, built-ins, fireplace equipment, built in wine racks, mantels, stained glass, built in mirrors and articles of property and fixtures attached to or appurtenant to the Unit, except those listed in subpapa. 2(b), all of which included property and fixtures are represented to be owned by Seller, free and clear of all liens and encumbrances other than those encumbrances ("Permitted Exceptions") set forth on Schedule A
(*strike inapplicable items);*
(ii) As is, as exists
(b) Excluded from this sale are:
(i) furniture and furnishings (other than as specifically provided in this Contract); and
(ii) **N/A**
(c)The property referred to in subpara. 2(a)(i) and (ii) may not be purchased if title to the Unit is not conveyed pursuant to this contract.

**3. Purchase Price:** (a) The purchase price ("Purchase Price") is **$2,230,000.00**, payable as follows:
(i) **$223,000.00** ("Downpayment") on the signing of this Contract by check subject to collection, the receipt of which is hereby recognized, **or wire** to be held in escrow pursuant to para. 16; and   (ii) **$2,007,000.00** representing the balance of the Purchase Price, by certified check of Purchaser or official bank check **or wire** (except as otherwise provided in this Contract) on the delivery of the deed. (b) All instruments in payment of the Purchase Price shall represent United States currency and be drawn on or issued by a bank or trust company authorized to accept deposits in New York State. All checks in payment of the Downpayment shall be payable to the order of Escrowee (as hereinafter defined). All checks in payment of the balance of the Purchase Price shall be payable to the order of the Seller (or as Seller otherwise directs pursuant to subparas. 6(a)(ix) or 18(b)).
(c) Aside from the Downpayment and checks aggregating not more than ***$1,000,*** all checks delivered by Purchaser shall be certified or official bank checks as herein provided.

4.    **Closing of Title:** The closing referred to in para. 6 shall be delivered, and payment of the balance of the Purchase Price

shall be made, at the Closing, to be held **on or about 60-days from the date of court approval** at the offices of Seller's attorney or at the office of Purchaser's lending institution or its counsel; provided, however, that such office is located in either the City or County in which either (a) Seller's attorney maintains an office or (b) the Unit is located ***or (c) remote.***

5.    **Representations, Warranties and Covenants:** The Seller unconditionally represents, warrants and covenants that: (a) The Seller is the sole rightful owner of the Unit and the personal property described in subpara. 2(a), and Seller has the full right, power and authority to sell, convey and transfer the same;
(b)    The common    charges imposed by the Condominium (excluding separately billed utility charges) for the Unit on the date hereof ***are approximately $3,742.00 per month.***
(c)    Seller has not received any notice, written or oral, of any intended assessment or increase in common charges not reflected in subpara.5(b). Purchaser acknowledges that it will not have the right to cancel this Contract in the event of the imposition of any assessment or increase in common charges after the date hereof of which Seller has not heretofore received written or oral notice;
(d)    The real estate taxes for the Unit for the fiscal year of **July 1, 2023 through June 30, 2024** are approximately $*37,170.76; **provided however, Seller makes no representation or warranty as to the accuracy of real estate taxes associated with the Unit. Purchasers shall have the sole responsibility for obtaining information with regards to the real estate taxes.***
(e)    Seller is not a "sponsor" or a nominee of a "sponsor" under any plan of condominium organization affecting the Unit;
(f)    ~~All refrigerators, freezers, ranges, ovens and built in microwave ovens, dishwashers, clothes washing machines, clothes dryers, lighting and plumbing fixtures, air conditioning equipment, if included in this sale will be in working order at the time of Closing;~~
(g)    ~~If a copy is attached to this Contract, the copy of the Certificate of Occupancy covering the Unit is a true and correct copy; and~~
(h)    Seller is not a "foreign person" as defined in IRC #1445 as amended, and the regulations thereunder (Code Withholding Section).
(*If applicable, delete and provide for compliance with Code Witholding Section, as defined in para. 17).*

**6. Closing Documents:** (a) At the Closing, Seller shall deliver to Purchaser the following:
(i)    Bargain and sale deed with covenant against grantor's acts ("Deed"), complying with RPL § 339-0 and containing the covenant required by LL § 13 (5), conveying to Purchaser title to the Unit, and any garage or storage units appurtenant to the Unit, together with its undivided interest in the Common Elements (as such term is defined in the Declaration and which term shall be deemed to include Seller's

right, title and interest in any limited common elements attributable to or used in connection with the Unit) appurtenant thereto, free and clear of all liens and encumbrances other than Permitted Exceptions. The Deed shall be executed and acknowledged by Seller and, if requested by the Condominium, executed and acknowledged by Purchaser, in proper statutory form for recording;

(ii) If a corporation and if required pursuant to BCL § 909, Seller shall deliver to Purchaser (1) a resolution of its board of directors authorizing the delivery of the Deed or a statement included in the Deed as follows: "This conveyance is made in the ordinary course of business actually conducted by the Grantor", and (2) a certificate executed by an officer of such corporation certifying as to the adoption of such resolution and setting forth facts demonstrating that the delivery of the Deed is in conformity with the requirements of BCL § 909. The Deed shall also contain a recital sufficient to establish compliance with such law;

(iii) A waiver of right of first refusal of the board of managers of the Condominium ("Board") if required in accordance with para. 8;

(iv) A statement by the Condominium or its managing agent on behalf of and authorized by the Condominium that the common charges and any assessments then due and payable to the Condominium have been paid to the date of the Closing; (v) All keys to the doors of, and mailbox and for, the Unit; and storage units.

(vi) Such affidavits and/or other evidence as the title company ("Title Company") from which Purchaser has ordered a title insurance report and which is authorized to do business in New York State shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against Seller and persons or entities whose names are the same as or are similar to Seller's name;

(vii) New York City Real Property Transfer Tax Return, if applicable, prepared, executed and acknowledged by Seller in proper form for submission;

(ix) Checks in payment of all applicable real property transfer taxes except a transfer tax which by law is primarily imposed on the purchaser ("Purchaser Transfer Tax") in connection with the sale. In lieu of delivery of such checks, Seller shall have the right, upon not less than 3 business days notice to Purchaser, to cause Purchaser to deliver checks at the Closing and to credit the amount against the balance of the Purchase Price. Seller shall pay the additional transfer taxes, if any, payable after the Closing by reason of the conveyance of the Unit, which obligation shall survive the Closing;

(x) Certification that Seller is not a foreign person pursuant to para. 18 (*If inapplicable, delete and provide for compliance with Code Section, as defined in para. 17.);* and

(xi) Affidavit that a single station smoke detecting alarm device is installed pursuant to New York Executive Law § 378(5). (b) At the Closing, Purchaser shall deliver to Seller the following: (i) Checks in payment of (y) the balance of the Purchase Price in accordance with subpara. 3(b) and (z) any Purchaser Transfer Tax;

(ii) If required by the Declaration or By-Laws, power of attorney to the Board, prepared by Seller, in the form required by the Condominium. The Power of attorney shall be executed and acknowledged by Purchaser and, after being recorded, shall be sent to the Condominium;

(iii) New York City Real Property Transfer Tax Return executed and acknowledged by Purchaser and an Affidavit in Lieu of Registration pursuant to New York Multiple Dwelling Law, each in proper form for submission, if applicable; and

(iv) If required, New York State Equalization Return executed and acknowledged by Purchaser in proper form for submission. (c) It is a condition of Purchaser's obligation to close title hereunder that:

(i) All notes or notices of violations of law or governmental orders, ordinances or requirements affecting the Unit and noted or issued by any governmental department, agency or bureau having jurisdiction which were noted or issued on or prior to the date hereof shall have been cured by Seller;

(ii) Any written notice to Seller from the Condominium (or its duly authorized representative) that the Unit is in violation of the Declaration, By-Laws or rules and regulations of the Condominium shall have been cured; and

(iii) The Condominium is a valid condominium created pursuant to RPL Art. 9-B and the Title Company will insure the same.

***(d) The delivery and acceptance of the Deed at the Closing shall be deemed to constitute full compliance by Seller with all of the terms, conditions and covenants of this Contract on Seller's part to be performed, other than those expressly set forth herein to survive the Closing.***

**7. Closing Adjustments:** (a) The following adjustments shall be made as of 11:59 P.M. of the day before the Closing:

(i) Real estate taxes and water charges and sewer rents, unless same are part of common charges, on the basis of the fiscal period for which assessed, except that if there is a water meter with respect to the Unit, apportionment shall be based on the last available actual reading, subject to adjustment after the Closing, promptly after the next reading is available; provided, however, that in the event real estate taxes have not, as of the date of Closing, been separately assessed to the Unit, real estate taxes shall be apportioned on the same basis as provided in the Declaration or By-Laws or, in the absence of such provision, based upon the Unit's percentage interest in the Common Elements;

(ii) Common charges of the Condominium; and

(iii) If fuel is separately stored with respect to the Unit only, the value of fuel stored with respect to the Unit at the price then charged by Seller's supplier (as determined by a letter or certificate to be obtained by Seller from such supplier), including any sales taxes.

(b) If at the time of Closing the Unit is affected by an assessment which is or may become payable in installments, then, for the purposes of this Contract, only the unpaid installments which are then due shall be considered due and are to be paid by Seller at the Closing. All subsequent installments at the time of Closing shall be the obligation of Purchaser.

(c) Any errors or omissions in computing closing adjustments shall be corrected. This subpara. 7c shall survive the Closing.

(d) If the Unit is located in the City of New York, the "customs in respect to title closings" recommended by The Real Estate Board of New York, Inc., as amended and in effect on the date of Closing, shall apply to the adjustments and other matters therein mentioned, except as otherwise provided herein.

**8. Right of First Refusal:** If so provided in the Declaration or By-Laws, this sale is subject to and conditioned upon the waiver of a right of first refusal to purchase the Unit held by the Condominium and exercisable by the Board. Seller agrees to give notice promptly to the Board of the contemplated sale of the Unit to Purchaser, which notice shall be given in accordance with the terms of the Declaration and By-Laws, and Purchaser agrees to provide promptly all applications, information and references reasonably requested by the Board. If the Board shall exercise such right of first refusal, Seller shall promptly refund to Purchaser the Downpayment (which term, for all purposes of this contract, shall be deemed to include interest, if any, earned thereon, and title charges including but not limited to examination of title and departmental charges) and upon the making of such refund this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligation or liabilities to, the other by reason of this contract. If the Board shall fail to exercise such right of first refusal within the time and in the manner provided for in the Declaration or By-Laws or shall declare in writing its intention not to exercise such right of first refusal (a copy of which writing shall be delivered to Purchaser promptly following receipt thereof), the parties hereto shall proceed with this sale in accordance with the provisions of this contract.

**9. Processing Fee:** Seller shall, at the Closing, pay all fees and charges payable to the Condominium (and/or its managing agent) in connection with this sale, including, but not limited to, any processing fee, the legal fees, if any, of the condominium's attorney in connection with this sale and, unless otherwise agreed to by Seller and Purchaser in writing, all "flip taxes," transfer or entrance fees or similar charges, if any, payable to or for the 'Condominium or otherwise for the benefit of the Condominium unit owners, which arise by reason of this sale. ***Except as provided above, Purchaser shall pay when due any and all application, credit search and/or credit report fees payable by purchasers to the Condominium (and/or its managing agent) in connection with the review of any application or documents required***

*in the Condominium from the Purchaser. Purchaser shall also pay any move-in or elevator fees or deposits required by the Condominium or its managing agent, relating to the move-in. Seller will pay all move-out or elevator fees or deposits relating to its move-out .*

**10.   No Other Representations:** Purchaser has examined and is satisfied with the Declaration, By-Laws and rules and regulations of the Condominium as amended, or has waived the examination thereof. Purchaser has inspected the Unit, its fixtures, appliances and equipment and the personal property, if any, included in this sale, as well as the Common Elements of the Condominium, and knows the condition thereof and, subject to subpara. 5(f), agrees to accept the same "as is," i.e., in the condition they are in on the date hereof, subject to normal use, wear and tear between the date hereof and the Closing.  Purchaser has examined or waived examination of the last audited financial statements of the Condominium, and has considered or waived consideration of all other matters pertaining to this Contract and to the purchase to be made hereunder, and does not rely on any representations made by any broker or by seller or anyone acting or purporting to act on behalf of Seller as to any matters which might influence or affect the decision to execute this Contract or to buy the Unit, or said personal property, except those representations and warranties which are specifically set forth in this Contract.

**11.   Possession:** Seller shall, at or prior to the Closing, remove from the Unit all furniture, furnishings and other personal property not included in this sale, shall repair any damage caused by such removal, and shall deliver exclusive possession of the Unit at the Closing, vacant, broom-clean and free of tenancies or other rights of use or possession.

**12.   Access:** Seller shall permit Purchaser and its architect, decorator or other authorized persons to have the right of access to the Unit between the date hereof and the Closing, *a maximum of 1 times plus the final walkthrough,* for the purpose of inspecting the same and taking measurements, at reasonable times and upon reasonable prior notice to Seller (by telephone or otherwise).  Further, Purchaser shall have the right to inspect the Unit at a reasonable time during the 24-hour period immediately preceding the Closing.

**13.   Defaults and Remedies:** (a) If purchaser defaults hereunder, Seller's sole remedy shall be to retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.
(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**14.   Notices:** Any notice, request or other communication ("Notice") given or made hereunder (except for the notice required by para. 12), shall be in writing and either (a) sent by any of the parties hereto or their respective attorneys, by registered or certified mail, return receipt requested, postage prepaid, or (b) delivered in person or by overnight courier, with receipt acknowledged, to the address given at the beginning of this Contract for the party to whom the Notice is to be given, or  to such other address for such party as said party shall hereafter designate by Notice given to the other party pursuant to this para. 14. or *(c) by confirmed facsimile/email transmission.*  Each Notice mailed shall be deemed given on the fourth business day following the date of mailing and each Notice delivered in person or by overnight courier *or by confirmed facsimile/email* shall be deemed given when delivered.

*The attorneys for the respective parties shall be authorized and permitted to deliver and receive Notice on behalf of the Seller and Purchaser.*

**15.   Purchaser's Lien:** The Downpayment and all other sums paid on account of this Contract and the reasonable expenses of the examination of title, and departmental violation searches in respect of,

the Unit are hereby made a lien upon the Unit, but such lien shall not continue after default by Purchaser.

**16.   Downpayment in Escrow:** (a) Seller's attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at the depository identified at the end of this Contract until Closing or sooner termination of this Contract and shall pay over or apply the Downpayment in accordance with the terms of this para.16.  Escrowee shall *not* hold the Downpayment in an interest-bearing account for the benefit of the parties.  If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon.  If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law.  The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee at the end of this contract.  At closing, the Downpayment shall be paid by Escrowee to Seller.  If for any reason Closing does not occur and either party gives Notice (as defined in para.14) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this Contract or a final, nonappealable judgment, order or decree of a court of competent jurisdiction.  However, Escrowee shall have the right at any time to deposit the Downpayment with the clerk of a court in the county in which the Unit is located and shall give Notice of such deposit to Seller and Purchaser.  Upon such deposit or other disbursement in accordance with the terms of this para. 16, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.
(b) The parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at the request of the parties and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee.  Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee. (c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.
(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this para. 16 by signing in the place indicated in this Contract. (e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.
*(f)     Escrowee shall be protected in reasonably relying upon the accuracy, acting in reliance upon the contents, and assuming the genuineness, of any notice, demand, certificate, signature, instrument or other document which is given to Escrowee pursuant to this Contract without the necessity of Escrowee verifying the truth or accuracy of any such notice, demand, certificate, signature, instrument or other document.*
*(g)     Escrowee shall not be bound by any other agreement or understanding between the parties hereto, whether or not Escrowee has knowledge thereof or consents thereto unless such consent is given in writing.*
*(h)     Escrowee's sole duties and responsibilities shall be to hold and disburse the Downpayment in accordance with this Contract. (i) Provided that the Escrowee shall deposit the Downpayment in an FDIC insured account, the Escrowee shall not have any liability or obligation for  loss of all  or  any portion  of the Downpayment by reason of the insolvency or failure of the institution or depository with whom the escrow account is maintained.*

DocuSign Envelope ID: D1A9880D-1B52-4E4D-8255-65B7DC76D8C0

*(i) Escrowee may at any time resign hereunder by giving notice of its resignation to Seller and Purchaser at least ten (10) days prior to the date specified for such resignation to take effect and, upon the effective date of such resignation, the Downpayment shall be delivered by Escrowee to such person or entity as Seller and Purchaser may have designated, whereupon all duties and obligations of the Escrowee named herein shall cease and terminate. If no such person or entity shall have been designated by the date which is five (5) days prior to the date specified for such resignation to take effect then Escrowee may designate a law firm or bank in New York City to act as escrowee hereunder.*

17.    **FIRPTA:**  Seller represents and warrants to Purchaser that Seller is not a "foreign person" as defined in IRC § 1445, as amended, and the regulations issued thereunder ("Code Withholding Section"). At the Closing Seller shall deliver to Purchaser a certification stating that Seller is not a foreign person in the form then required by the Code Withholding Section.  In the event Seller fails to deliver the aforesaid certification or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certification, Purchaser shall deduct and withhold from the Purchase Price a sum equal to 15% thereof and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

18.    **Title Report; Acceptable Title:**  (a) Purchaser shall promptly after the date hereof, or after receipt of the mortgage commitment letter, if applicable, order a title insurance report from the Title Company.  Promptly after receipt of the title report and thereafter of any continuation thereof and supplements thereto, Purchaser shall forward a copy of each such report, continuation or supplement to the attorney for Seller.  Purchaser shall further notify Seller's attorney of any other objections to title not reflected in such title report of which Purchaser becomes aware following the delivery of such report, reasonably promptly after becoming aware of such objections.

(b)    Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two business days following the date of Closing, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser at the Closing official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record.  Upon request made not less than 3 business days before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with subpara. 3(b).  If the Title Company is willing to insure Purchaser that such charges, liens and encumbrances will not be collected out of or enforced against the Unit and is willing to insure the lien of Purchaser's Institutional Lender (as hereinafter defined) free and clear of any such charges, liens and encumbrances, the Seller shall have the right in lieu of payment and discharge to deposit with the Title Company such funds or give such assurances or to pay such special or additional premiums as the Title Company may require in order to so insure.  In such cases the charges, liens and encumbrances with respect to which the Title Company has agreed to insure shall not be considered objections to title.

(c)    Seller shall convey and Purchaser shall accept fee simple title to the Unit in accordance with the terms of this Contract, subject only to: (a) the Permitted Exceptions and (b) such other matters as (i) the Title Company or any other title insurer licensed to do business by the State of New York shall be willing, without special or additional premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Unit (ii) shall be accepted by any lender which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Unit ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given. (d) Notwithstanding any contrary provisions in the Contract, express or

implied, of any contrary rule of law or custom, if Seller shall be unable to convey the Unit in accordance with this Contract (provided that Seller shall release, discharge or otherwise cure at or prior to Closing any matter created by Seller after the date hereof and any existing mortgage, unless this sale is subject to it) and if Purchaser elects not to complete this transaction without abatement of the Purchase Price, the sole obligation and liability of Seller shall be to refund the Downpayment to Purchaser, together with the reasonable cost of the examination of title and departmental violation searches in respect of, the Unit, and upon the making of such refund and payment, this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligation or liabilities to, the other by reason of this contract.  However, nothing contained in the subpara. 18(d) shall be construed to relieve Seller from liability due to a willful default.

19. **Risk of Loss; Casualty:** (a) The risk of loss or damage to the Unit or the personal property included in this sale, by fire or other casualty, until the earlier of the Closing or possession of the Unit by Purchaser, is assumed by Seller, but without any obligation of Seller to repair or replace any such loss or damage unless Seller elects to do so as herein-after provided. Seller shall notify Purchaser of the occurrence of any such loss or damage to the Unit or the personal property included in this sale within 10 days after such occurrence or by the date of Closing, whichever first occurs, and by such notice shall state whether or not Seller elects to repair or restore the Unit and/or the personal property, as the case may be. If Seller elects to make such repairs and restorations, Seller's notice shall set forth an adjourned date for the Closing, which shall be not more than 60 days after the date of the giving of Seller's notice. If Seller either does not elect to do so or, having elected to make such repairs and restorations, fails to complete the same on or before said adjourned date for the Closing, Purchaser shall have the following options:

(i)    To declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment in which event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract; or

(ii)    To complete the purchase in accordance with this Contract with- out reduction in the Purchase Price, except as provided in the next sentence.  If Seller carries hazard insurance covering such loss or damage, Seller shall turn over to Purchaser at the Closing the net proceeds actually collected by Seller under the provisions of such hazard insurance policies to the extent that they are attributable to loss of or damage to any property included in this sale, less any sums theretofore expended by Seller in repairing or replacing such loss or damage or in collecting such proceeds; and Seller shall assign (without recourse to Seller) Seller's right to receive any additional insurance proceeds which are atatributable to the loss of or damage to any property included in this sale.

(b)    If seller does not elect to make such repairs and restorations, Purchaser may exercise the resulting option under (i) or (ii) of (a) above only by notice given to Seller within 10 days after receipt of Seller's notice.  If Seller elects to make such repairs and restorations and fails to complete the same on or before the adjourned closing date, Purchaser may exercise either of the resulting options within 10 days after the adjourned closing date.

(c)    In the event of any loss of or damage to the Common Elements which materially and adversely affects access to or use of the Unit, arising after the date of this Contract but prior to the Closing, Seller shall notify Purchaser of the occurrence thereof within 10 days after such occurrence or by the date of Closing, whichever occurs first, in which event Purchaser shall have the following options:    (i) To complete the purchase in accordance with this Contract without reduction in the Purchase Price; or

(ii) To adjourn the Closing until the first to occur of (1) completion of the repair and restoration of the loss or damage to the point that there is no longer a materially adverse effect on the access to or use of the Unit or (2) the 60th day after the date of the giving of Seller's aforesaid notice. In the event Purchaser elects to adjourn the Closing as aforesaid and such loss or damage is not so repaired and restored within 60 days after the date of the giving of Seller's aforesaid notice, then Purchaser shall have the right either to (x) complete the purchase in accordance with this Contract without reduction in the Purchase Price or (y) declare this Contract cancelled and of no further force or effect and receive a

refund of the Downpayment, in which latter event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract.

(d)     In the event of any loss of or damage to the Common Elements which does not materially and adversely affect access to or use of the Unit, Purchaser shall accept title to the Unit in accordance with this Contract without abatement of the Purchase Price.

**20.     Internal Revenue Service Reporting Requirement:** Each party shall execute, acknowledge and deliver to the other party such instruments, and take such other actions, as such other party may reasonably request in order to comply with IRC § 6045(e), as amended, or any successor provision or any regulations promulgated pursuant thereto, insofar as the same requires reporting of information in respect of real estate transactions. The provisions of this para. 20 shall survive the Closing. The parties designate ***Purchaser's or Purchaser's lender's attorney*** as the attorney responsible for reporting this information as required by the Internal Revenue Code.

**21.     Broker:** Seller and Purchaser represent and warrant to each other that the only real estate brokers with whom they have dealt in connection with this Contract and the transaction set forth herein are ***Justin Rubinstein (Compass) and Chester Yow (Nest Seekers)*** and that they know of no other real estate broker who has claimed or may have the right to claim a commission in connection with this transaction. The commission of such real estate shall be paid by Seller pursuant to separate agreement. If no real estate broker is specified above, the parties acknowledge that this Contract was brought about by direct negotiation between Seller and Purchaser and each represents to the other that it knows of no real estate broker entitled to a commission in connection with this transaction. Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses (including reasonable attorneys' fees) arising out of the breach of any representation, warranty or agreement contained in this para. 21. The provisions of this para. 21 shall survive the Closing or, if the Closing does not occur, the termination of this Contract.

**22.     Mortgage Contingency:** *(Delete if inapplicable) (*a) The obligations of Purchaser hereunder are conditioned upon issuance on or before **45** days (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a loan, other Than a VA, FHA or other governmentally insured loan to Purchaser, at Purchaser's sole cost and expense, of **$1,680,000.00** or such lesser sum as Purchaser shall be willing to accept at the prevailing fixed rate of interest not to exceed     or ***prevailing*** initial adjustment rate of interest not to exceed for a term of at least **30** years and on other customary commitment terms, whether or not conditioned upon any factors other than an appraisal satisfactory to the Institutional Lender, secured by a first mortgage on the Unit together with its undivided interest in the Common Elements. Purchaser shall (i) make prompt application to an Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information on Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, (v) cooperate in good faith with such Institutional Lender to the end of securing such first mortgage loan and (vi) promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application. Purchaser shall comply with all requirements of such commitment (or of any commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above Purchaser may cancel this Contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this Contract shall be deemed cancelled and thereafter neither party shall have any further organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and

rights against, or obligation or liabilities to, the other by reason of this Contract except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in para. 21. If Purchaser fails to give Notice of cancellation or if Purchaser shall accept a commitment that does not comply with the terms set forth above, the Purchaser shall be deemed to have waived Purchaser's right to cancel this Contract and to receive a refund of the Downpayment by reason of the contingency contained in this para. 22.

(b) For purposes of this Contract, an "Institutional Lender" is any bank, savings bank, private banker, trust company, savings and loan association and credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; insurance company duly any instrumentality created by the United States or any state with the power to make mortgage loans.

*(Delete if inapplicable)*(c)Purchaser and Seller agree that the submission of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in para. 22(a)(i) of this Contract, and that Purchaser's cooperation in good faith with such Mortgage Broker to obtain a commitment from an Institutional Lender (together with Purchaser's cooperation in good faith with any Institutional Lender to which Purchaser's application has been submitted by such Mortgage Broker), and the prompt giving of Notice of Purchaser to Seller of the name and address of each Mortgage Broker to which Purchaser has submitted such an application shall constitute full compliance with the terms and conditions set forth in para. 22 and (vi) of this Contract.

**23.     Gender:** As used in this Contract, the neuter includes the masculine and feminine, the singular includes the plural and the plural includes the singular, as the context may require.

**24.     Entire Contract:** All prior understandings and agreements, written or oral, between Seller and Purchaser are merged in the Contract and this Contract supersedes any and all understandings and agreements between the parties and constitutes the entire agreement between them with respect to the subject matter hereof.

**25.     Captions:** The captions in this Contract are for convenience and reference only and in no way define, limit or describe the scope of this Contract and shall not be considered in the interpretation of this Contract or any provision hereof.

**26.     No Assignment by Purchaser:** Purchaser may not assign this Contract or any of Purchaser's rights hereunder.

**27.     Successors and Assigns:** Subject to the provisions of para. 26, the provisions of this Contract shall bind and inure to the benefit of the Purchaser and Seller and their respective distributees, executors, adminstators, heirs, legal representatives, successors and permitted assigns.

**28.     No Oral Changes:** This Contract cannot be changed or terminated orally. Any changes or additional provisions must be set forth in a rider attached hereto or in a separate written agreement signed by both parties to this Contract.

**29.     Contract Not Binding Until Signed:** This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

**30.     *This contract includes those terms and conditions contained in the Rider that is attached hereto and made part hereof.***

DocuSign Envelope ID: D1A8830F-1BF2-4E4D-8255-65B7DC76D8C0

31.     *Contract Not Binding Until Signed: This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser. It is expressly understood and agreed by the parties hereto that this Contract shall not constitute an offer or create any rights in favor of Purchaser and shall in no way obligate or be binding upon Seller and this Contract shall have no force or effect unless and until the same is duly executed by Seller and Purchaser and a fully executed counterpart hereof is delivered by Seller to Purchaser and the Downpayment has cleared through the Escrowee's account. Delivery of a fully executed counterpart of this Contract to Purchaser's attorney shall be deemed delivery to Purchaser. Purchaser agrees that this Contract is not to be recorded and any attempt to do so shall be a default hereunder. This Contract may be executed in one or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute but one and the same instrument.*

32.     *Governing Law: This Contract and the Schedules annexed hereto (a) shall be governed by and construed in accordance with the laws of the State of New York and (b) shall be given a fair and reasonable construction in accordance with the intentions of the parties hereto. For purposes of construction of this Contract, provisions, which are deleted or crossed out, shall be treated as if never included herein. If any provision of this Contract is invalid or unenforceable as against any person or under certain circumstances, the remainder of this Contract and the applicability of such provision to other persons or circumstances shall not be affected thereby. Each provision of this Contract shall be valid and enforceable to the fullest extent permitted by law.*

33.     *No Waiver: No failure or delay of either party in the exercise of any right given to such party hereunder or the waiver by any party of any condition hereunder for its benefit (unless the time specified herein for exercise of such right, or satisfaction of such condition, has expired) shall constitute a waiver of any other or further right nor shall any single or partial exercise of any right preclude any other or further exercise thereof or any other right. The waiver of any breach hereunder shall not be deemed to be waiver of any other or any subsequent breach hereof.*

34.     *Waiver of Trial by Jury: Both Purchaser and Seller hereby irrevocably waive all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Contract. In connection with any litigation arising out of this Contract, the prevailing party shall be entitled to recover all costs thereof, including, without limitation, reasonable attorneys' fees and disbursements for services rendered in connection with such litigation (including appellate proceedings and post judgment proceedings).*

35.     *Purchaser shall accept the walls in the Unit subject to such minor chips, holes and other indentations as are ordinarily created by the removal of nails, screws or similar items used to hang pictures or other removable items. Seller is not obligated to install any equipment or appliances in the Unit or otherwise make any repairs, improvements or decorations to the Unit or its equipment, appliances and fixtures except as set forth in the Contract and Riders.*

36.     *The Contract and this Rider may be executed in more than one counterpart, each of which, when taken together, shall be deemed to be one (1) instrument. The Contract and this Rider may be executed and delivered by facsimile transmission or by email via .pdf format, in each case, with the same force and effect as originals.*

37.     *The Purchaser herein acknowledges that he has a right to a summary of the heating and/or cooling bills or a complete set of said bills, types and areas of insulation installed by the seller in the premises during his ownership or by any previous owners known to seller under Article 17-103 of the Energy Law of the State of New York commonly known as the Truth in Heating Law. The Purchaser hereby waives his right to copies of said bills or a summary of said bills and further waives his right to a statement of the types and areas of insulation and acknowledges that he has not requested them in connection with this transaction.*

*In Witness Whereof*, the parties hereto have duly executed this Contract on the day and year first above written.

*Michael I. Goldberg*
Michael I. Goldberg (Aug 3, 2023 11:53 EDT)

**Michael Goldberg, receiver for**
**BK Offshore Fund Ltd., a BVI entity**

*Jasper Lau*
B3935DA79E764C1...

Jasper Lau

Agreed to as to para. 16: _____*Rosalind Kwast*_____ Escrow Depository: JPMORGAN CHASE BANK, N.A. (850 3RD AVENUE, NY NY)
Kwast Law PLLC. – Escrowee

## SCHEDULE A – Permitted Exceptions

1.  Zoning laws and regulations and landmark, historic or wetlands designation which are not violated by the Unit and which are not violated by the Common Elements to the extent that access to or use of the Unit would be materially and adversely affected.
2.  Consents for the erection of any structure or structures on, under or above any street or streets on which the Building may abut.
3.  The terms, burdens, covenants, restriction, conditions, easements and rules and regulations set forth in the Declaration, By-Laws and rules and regulations of the Condominium, the Power of Attorney from Purchaser to the board of managers of the Condominium and the floor plans of the Condominium, all as may be amended from time to time.
4.  Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Building and Common elements, provided that none of such rights imposes any monetary obligation on the owner of the Unit or materially interferes with the use of or access to the Unit.

**5.** Encroachments of stops, areas, cellar steps, trim, cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Building over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Common Elements.

**6.** any state of facts which an accurate survey or personal inspection of the Building, Common Elements or Unit would disclose, provided that such facts do not prevent the use of the Unit for dwelling purposes, or if a storage unit, for storage purposes.  For the purposes of this Contract, none of the facts shown on the survey, if any, identified below, shall be deemed to prevent the use of the Unit for dwelling purposes, and Purchaser shall accept title subject thereto.

**7.** The lien of any unpaid common charge, real estate tax, water charge, sewer rent or vault charge, provided the same are paid or apportioned at the Closing as herein provided.

**8.** The lien of any unpaid assessments to the extent of installments there-of payable after the Closing.

**9.** Liens, encumbrances, and title conditions affecting the Common elements which do not materially and adversely affect the right of the Unit owner to use and enjoy the Common Elements,

**10.** Notes or notices of violations of law or governmental orders, ordinances or requirements (a) affecting the Unit and noted or issued subsequent to the date of this Contract by any governmental department, agency or bureau having jurisdiction and (b) any such notes or notices affecting only the Common Elements which were noted or issued prior to or on the date of this Contract or at any time hereafter.

**11.** Any other matters or encumbrances subject to which Purchaser is required to accept title to the Unit pursuant to this Contract.

The survey referred to in No. 6 above was prepared by

dated                                           and last revised

DocuSign Envelope ID: D1A86805-4BE2-4F4D-8255-65B7DCZ6D869

<div style="text-align: center;">

**Rider Annexed to and Forming a Part of**
**the Contract of Sale for**
**Condominium Apartment 3A**
**76 Madison Avenue**
**New York, New York**
**between**
**Michael Goldberg, receiver for BK Offshore Fund Ltd., a BVI entity, as Seller**
**and**
**Jasper Lau, as Purchaser**

</div>

1. <u>Rider to Control.</u> In the event of any inconsistency between the terms of this Rider and those contained in the printed form of Contract to which this Rider is annexed, the terms of this Rider shall govern.

2. <u>Condition of the Unit.</u> Seller shall not be obligated to repair normal and expected marks, dings, and holes which can be spackled in the normal course of spackling and painting, and normal and expected floor discoloration left behind on account of any item of personal property which Seller is entitled to remove pursuant to the Contract of Sale.

3. <u>Sale As Is.</u> (a) Purchaser agrees to accept the Unit, Personalty, Premises, and the Included Interests, if any, "as is" on the date hereof, subject to reasonable wear and tear as may occur between the date hereof and Closing. Purchaser expressly acknowledges that the condition of the Unit, Personalty, Premises, and the Included Interests, if any, as of the date hereof is familiar and acceptable in all respects.

       (b) It is agreed that except as specifically set forth herein, Seller is not obligated to repair, replace or install any equipment, appliance, fixture, wall, floor, window, or any other property in the Unit or otherwise make any improvements in the Unit, its appliances and fixtures, including without limitation, electrical, plumbing, heating, fans, or air conditioning. In the event the appliances/systems are not in the condition "as is" as of the date of the inspection, Seller's obligation is limited to a closing credit not to exceed $7,500 in aggerate.  In the event the Unit is vandalized, Seller shall repair. Vandalism as defined as intentional damage beyond normal wear and tear as compared to condition of the Unit as set forth in the Inspection Report attached hereto as Exhibit A.

(c) Purchaser represents to Seller that Purchaser has examined, inspected, and investigated to the full satisfaction of Purchaser, the physical nature and condition of the Unit, Personalty and Premises, and the Included Interests, if any, and (ii) neither Seller nor any agent, officer, employee, or representative regarding the subject matter of this Contract or any part thereof, make any representations as to the physical nature or condition of the Unit, Personalty, and Premises, and the Included Interests, if any, or carrying charges affecting the Unit, Personalty, and Premises and Included Interests, if any, and (iii) Purchaser, in executing, delivering and performing this Contract, does not rely upon any statement, information or representation to whomsoever made or given whether to Purchaser or others, and whether directly or indirectly, verbally or in writing, made by any person, firm or corporation except as set for herein. Purchaser acknowledges having entered into this Agreement without relying upon any promises, statements, estimates, representations, warranties, conditions or other inducements, expressed or implied, oral or written not set forth herein. Purchaser acknowledges and confirms that Purchaser has conducted its own due diligence on the Unit, Personalty, Premises, and Included Interests, if any. In the event the Seller, except for Seller's willful default, is unable to satisfy any obligation or term in the Contract and Rider(s) then this Contract shall be terminated and the sole liability of Seller shall be to return the down payment to Purchaser.

4. <u>Purchaser's Representations.</u> Purchaser represents that: (a) with the funding of the mortgage proceeds they have sufficient funds to pay the Balance of the Purchase Price plus adjustments and monies to timely pay all of their closing costs and expenses; (b) this Contract is expressly not contingent upon the sale, refinance or application of credit of Purchaser's residence (cooperative unit, condominium unit, house or otherwise) or any other matter other than the consent of the Board as fully set forth in Section 5 hereof; (c) there are no judgments, bankruptcy or other insolvency proceedings or pending litigation against Purchaser; (d) Purchaser has never been rejected by any Cooperative or Condominium board of directors; (e) no institutional lender has ever commenced a real property mortgage or cooperative loan foreclosure against Purchaser; (f) Purchaser has never been convicted of a penal offense.; and (g) to the best of Purchaser's actual knowledge Purchaser's credit rating, income and assets are sufficient to secure the mortgage loan contemplated herein and to the best of Purchaser's actual knowledge they are not aware of any fact that would prevent them from qualifying for the mortgage loan.

5. <u>Full Performance.</u> Acceptance of the delivery of the deed by Purchaser shall be deemed to be the full performance and discharge of every agreement and

obligation on the part of Seller to be performed pursuant to this Contract, except those, if any, which are indicated to survive the delivery of the deed.

6. <u>Modifications.</u> The attorneys are authorized on behalf of their respective clients to change, modify, alter or amend any terms or conditions or time limitations in this Contract by and behalf of their clients.

7. <u>Expiration of Period on a Non-Business Day.</u> If any period for giving notice or taking action hereunder expires on a day which is Saturday, Sunday or a legal holiday in the state in which the Unit is located, the period shall automatically be extended to the business day immediately following such Saturday, Sunday or legal holiday.

8. <u>No Representations.</u> Supplementing the provisions of Section 5, nothing herein is intended to represent that the Board may not raise common charges or levy special assessments prior to Closing or that the real estate taxes will not increase. Purchaser shall be responsible for their pro-rata share of such assessment, or increase in common charges or real estate taxes. Assessments shall be apportioned in the same manner as common charges. Purchaser acknowledges that the representations made on the foregoing (including, without limitation, the percentage of undivided interest in the common elements) are for informational purposes only and Purchaser shall be responsible for verification of same. Apportionments at Closing shall be calculated on the actual charges at that time. Errors in the foregoing figures shall not permit the Purchaser to cancel the Contract nor allow for an abatement of the purchase price.

9. <u>Status of Title.</u> In the event Seller is unable to deliver title in accordance with the terms of the Contract of Sale, Seller may deem the Contract of Sale cancelled and upon return of the down payment to Purchaser, the Contract of Sale shall be void and of no further force and effect and Seller shall then be under no obligation or liability whatsoever to the Purchaser for failure to convey title. Seller shall be under no obligation to remove any encumbrance, lien (other than voluntary liens), defects in title, or other title exceptions (other than the Permitted Exceptions) or to bring any action or proceeding or to incur any expense in excess of 1% of the Purchase Price to render title marketable. However, Purchaser, at its election, shall have the right to accept such title as the Seller is able to convey without any claim on the part of Purchaser for a reduction of the purchase price. Notwithstanding the foregoing, nothing herein

shall absolve Seller from ensuring that all mortgages and/or voluntary liens against the unit are paid in full at or prior to closing. Seller shall be entitled to a reasonable adjournment not to exceed 30 calendar days from the closing date set forth in Paragraph 4 of the pre-printed Contract of Sale to remove all objections to title, including violations, notice of which is served by Purchaser upon Seller. Any attempt by Seller to cure an objection shall not be construed as an admission by Seller that such objection is one that would give Purchaser the right to cancel this Contract.

10. <u>Escrow Agent.</u> Escrow Agent may rely and shall be protected in acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties. If conflicting demands are made or notices are served upon Escrow Agent with respect to the down payment, or if Escrow Agent shall hold a good faith belief that the rights of a claimant to the down payment are not absolutely clear, the parties hereto agree that Escrow Agent shall be entitled to refuse to comply with any such claim or demand and to withhold and stop all further proceedings in the performance of this Contract so long as such disagreement shall continue. In so doing, Escrow Agent shall not be or become liable for damages or interest to either of the parties hereto or to any other person for its failure to comply with such conflicting or adverse demands or notices. Escrow Agent shall be entitled to continue to so refrain and so refuse to act until (i) the rights of the adverse claimants have been finally adjudicated in a court having and assuming jurisdiction of the parties and/or the down payment or (ii) all differences shall have been adjusted by mutual agreement of the parties, and Escrow Agent shall have been notified thereof in writing signed by both parties. In the alternative, Escrow Agent may, but shall not be obligated to, file a suit in interpleader for a declaratory judgment for the purpose of having the respective rights of the claimants adjudicated, and/or may deposit with a court of competent jurisdiction the down payment held hereunder, in which event Seller and Purchaser, jointly and severally, agree to pay all costs, expenses and attorneys' fees incurred by Escrow Agent in connection therewith. In the event that Escrow Agent shall deposit the down payment with such court, Escrow Agent shall be fully released and discharged from any and all duties and obligations thereunder. The Escrow Agent shall receive no compensation for the services to be performed hereunder, but shall be entitled to recover all costs and expenses as aforesaid. In the event that there is a dispute as to payment of the down payment and as a result, Escrow Agent incurs any costs or expenses, including reasonable attorneys fees, Escrow Agent shall be entitled to payment of such costs and expenses out of the down

payment before any other party is entitled to payment of any portion of the down payment.

11. <u>Abatements.</u> Seller shall be entitled to receive any real estate tax refund not offset by a corresponding City or Condominium charge relating to the period of time during which Seller owned the Unit. The provisions of this paragraph shall survive Closing for one (1) year.

12. <u>1031 Exchange.</u> Purchaser is on notice and aware that Seller may perform an IRC Section 1031 tax deferred exchange pursuant to their sale. Seller requests Purchaser's cooperation in such an exchange and agrees to hold Purchaser harmless and indemnify Purchaser from any and all claims, costs, liabilities or delays in time resulting from such an exchange. Purchaser agrees to an assignment of this Contract by Seller. Nothing herein shall require Purchaser to execute any instrument imposing personal liability on Purchaser.

13. <u>Personal Property</u>. It is agreed that no part of the purchase price hereunder is allocated to personal property, and that any personal property being transferred with the Unit is appurtenant to the Unit and has no value apart therefrom.

14. <u>Binding Effect.</u> This Contract shall not be binding on Seller in any way unless and until (a) the same is duly executed by Seller and Purchaser, (b) a fully executed copy of same is delivered to Purchaser's counsel, and Purchaser has paid the Contract Downpayment to the Escrow Agent and such monies have cleared the Escrow Agent's account.

15. <u>Access.</u> Supplementing and modifying Section 12 of the printed form, access shall be limited to the appraisal and final walkthrough of the Unit. Purchaser agrees to indemnify, defend and hold Seller harmless against any losses, liabilities, damage, claims, costs or expenses for injury or damage to persons or property, including without limitation, the property of Seller, arising out of the acts or actions of Purchaser, its agents, contractors, decorators, representatives or invitees. Seller shall have no obligation to repair same and may convey same to Purchaser subject to such damage. Purchaser's agreement to indemnify Seller shall survive Closing or the earlier termination of this Contract.

16. <u>Lead Paint.</u> Purchaser hereby waives the opportunity to conduct a risk assessment or inspection of the Unit for the presence of lead-based paint. Upon execution of this Contract, Purchaser and Seller shall also execute the Disclosure of Information on Lead-Based Paint and/or Paint Hazards annexed hereto.

17. <u>Fees.</u> Supplementing Section 9 of the printed form, Seller agrees to pay all fees relating to this sale that are customarily charged by the Board of Managers, Managing Agent, or the attorneys for the Condominium to Seller, and Purchaser agrees to pay all fees relating to this sale that are customarily charged by the Board of Managers, the Managing Agent, or the attorneys for the Condominium to Purchaser, including but not limited to any fees charged in connection with any financing by Purchaser, any move-in fees, processing fees or credit check fees. Additionally, Purchaser shall pay the New York State "Mansion Tax". In addition, Purchaser shall submit the waiver application to Seller's broker prior to final submission to Managing Agent/the Board of Managers for final review and comment. Such submission shall be made within three (3) business days from receipt of the loan commitment letter but in no event to exceed forty- eight (48) days from entering into contract.

18. <u>Electronic Signatures.</u> This Contract may be executed in counterparts, and may be signed by facsimile and/or PDF transmission bearing the original signatures of the respective parties, or by AdobeSign or DocuSign, which shall be deemed original and binding and email delivery of same shall constitute Delivery to the Purchaser's Attorney for purposes of this Contract.

19. <u>Attorney's Fees.</u> In the event that either party hereto shall commence litigation against the other in connection herewith, the non-prevailing party shall reimburse the prevailing party for its reasonable attorneys' fees incurred in such action.

20. Any error in calculations or apportionments at Closing shall be corrected promptly thereafter. This provision shall survive the Closing for sixty (60) days.

DocuSign Envelope ID: D1A86805-4BE2-4E4D-8255-65B7DC26D8E9

21. Purchaser and Seller acknowledge and agree that this Agreement and the sale of the Unit are subject to approval by the United States District Court, Southern District of Florida (the "Court") in the matter of Securities and Exchange Commission v. BKCoin Management, LLC, et al., Case No.: 23-20719-Civ-Scola.  If the appropriate final approval orders from the Court authorizing the sale of the Unit to Purchaser are not obtained within forty-five (45) calendar days from the Contract Date, this Agreement shall terminate, the Downpayment shall be returned to Purchaser, and Purchaser and Seller shall be relieved of all further liabilities hereunder.

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Rider to the Contract.

SELLER:                                                    PURCHASER:

_Michael I. Goldberg_                          _Jasper Lau_
Michael I. Goldberg (Aug 3, 2023 11:53 EDT)          B3935DA79E764C1...

DocuSign Envelope ID: D1A868D5-4BE2-4F4D-8255-65B7DC26D8C9

### eTHE 76 MADISON AVENUE CONDOMINIUM
### PURCHASER'S RIDER TO CONTRACT OF SALE - CONDOMINIUM UNIT

Rider Number:  2

Agreement dated as of:  ____**August 4**____, 2023 (the "Contract")

Between:        Michael Goldberg, receiver for BK Offshore Fund Ltd., a BVI entity, as Seller; and

                    Jasper Lau, as Purchaser

Re:            Unit 3A ("Unit") at 76 Madison Avenue, New York, NY 10016

1.  The provisions of this Purchaser's Rider hereby are made a part of the annexed Contract of Sale and Rider.  The provisions of this Purchaser's Rider supplement and are on addition to and not in limitation of the terms and provisions of the printed portion of the Contract of Sale and Rider.  In the event of any inconsistency between the provisions of this Purchaser's Rider and the Contract of Sale and Rider, the provisions of this Purchaser's Rider shall govern (collectively the "Contract").

2.   If any such open permits or construction applications against the Unit exist, Seller shall, at Seller's sole cost and expense, cause such permits or applications to be appropriately signed-off or closed-out on or before the Closing.

3.  As a courtesy only, Seller shall make available to Purchaser all written notices from the Condominium received by Seller subsequent to the full execution of the Contract but prior to closing pertaining to (1) any increase in common charges; (2) the imposition of a special assessment; (3) any intended or proposed changes to the "flip tax" or other transfer fee charged by the Condominium or its Managing Agent; (4) any proposed amendment or modification of the Condominium Declaration, House Rules, or By-Laws; (5) any proposed construction or repair work the cost of which is intended to be borne by the Condominium, its insurers or its Unit Owners; (6) any refinancing or other material change with respect to any mortgage affecting the Condominium; or (7) any damage or casualty to the Unit or the Condominium. Seller's failure to provide shall not be deemed a default. Furthermore, the content of such notices shall not enable Purchaser to delay Closing or demand a credit.

4.  Notwithstanding the terms of the Contract, after issuance of a Loan Commitment Letter, if Lender withdraws said Loan Commitment Letter and refuses to fund the loan for reasons solely related to the Condominium or Unit, then Purchaser shall have the right to cancel the Contract and shall be entitled to the return of the Contract Deposit after notice of the above is given to Seller's attorney.

5.  Supplementing Paragraph 6(c)(i) of the pre-printed portion of the Contract of Sale, "date hereof" in the second and third line shall be amended to read "date of Closing".

6.  Supplementing Paragraphs 6(a)(iii) and 8 of the pre-printed portion of the Contract of Sale, the term "waiver of the right of first refusal" shall mean an unconditional waiver of the right of first refusal by the Condominium.  In the event any condition(s) shall be imposed by the Condominium with respect to the issuance or effectiveness of the waiver of right of first refusal, Purchaser shall have the right to cancel this Contract and such cancellation shall have the same effect, and the parties shall proceed, as though the Board shall have exercised the right of first refusal.

7. Notwithstanding anything to the contrary, Seller represents that the appliances, lighting and plumbing, security system, electrical, heating and air-conditioning systems to the extent that the Seller is responsible for maintaining pursuant to the Condominium's Offering plan, By-Laws and House Rules, shall be in the same working order as set forth in the Inspection Report attached hereto as Exhibit A at Closing, subject to normal wear and tear and as set forth in Paragraph 3(b) of the Seller's Rider.

8. If Seller is a "foreign person," as defined in IRC 1445, Seller will comply with the federal withholding requirements set forth therein and will indemnify Purchasers and hold them harmless with respect to all tax obligations required to be paid by Seller by any governmental taxing authority. In the event the Seller has not obtained a ruling or determination from the IRS on a withholding certificate regarding the amount of federal income tax to be paid by Seller, Seller shall deliver completed forms 8288 and 8288A to Purchaser's attorney at closing and Purchasers' attorney shall submit fifteen percent (15%) of the gross proceeds of the sale to the Internal Revenue Service.

9. Notwithstanding anything to the contrary, there shall be no automatic waiver of any contractual rights or obligations.  Any language in the Contract pertaining to an automatic waiver of rights is hereby deleted.  Should a time period lapse, the party attempting to enforce a right or rights due to the expiration of a time period shall notify the other party in writing of the expiration of the relevant time period.  The party receiving such notice shall be provided with three (3) business days to cure and meet the lapsing condition starting with the day after the notice is received, except for Closing.

10. Seller shall indemnify and hold Purchaser harmless from and against any and all claims, liabilities, fees, penalties, damages, costs and reasonable expenses (including, but not limited to reasonable attorney's fees and disbursements) that may be incurred or suffered by Purchaser at any time after closing by reason of any material representation or misstatement made by or on behalf of Seller in any of the following documents, or the failure to file or pay required under the same: a) FIRPTA affidavit or IRS Form 8288 and 8288A; b) IRS Form 1099-S; c) Form TP-584; d) IT 2663, if applicable and any other transfer tax documents or transfer taxes imposed as a result of the sale, excluding the payment of the Mansion Taxes, the payment of such taxes are the Purchaser's responsibility.  Seller shall also be responsible for the preparation of said documentation.  This paragraph shall survive the closing.

11. The parties agree that their respective counsel are authorized to modify this Contract with respect to adjournment of dates and times for performance of duties, with the same force and effect as if modified in writing by the parties themselves.  The parties further agree that all notices required to be served upon the parties under this Contract may be served upon the parties' respective counsel with the same force and effect as if served upon the parties themselves, unless such notices are notices of default under the terms of this Contract.

12. It is consented to and agreed that "PDF" or DocuSign copies of the signatures of the Parties of this Contract and pages that same are located thereon shall be deemed to be originals.  It is further agreed that the Contract may be executed in one or more counterparts, each of which shall be an original, and all of which together shall constitute a single Contract.  This Contract shall be deemed to have become effective when one or more such counterparts shall have been signed by each of the Parties below.

**[SIGNATURE PAGE TO FOLLOW]**

2

DocuSign Envelope ID: D1A86805-4BF2-4F4D-8255-65B7DC76D8C9

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth hereinabove.

**SELLER**                                              **PURCHASER**

_Michael I. Goldberg_
Michael I. Goldberg (Aug 3, 2023 11:53 EDT)
_____                              _____
Michael Goldberg, receiver for                          Jasper Lau
BK Offshore Fund Ltd., a BVI entity