UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>BKCOIN MANAGEMENT, LLC and MIN WOO KANG a/k/a "KEVIN" KANG,<br><br>Defendants, and<br><br>BKCOIN CAPITAL, LP,<br>BK OFFSHORE FUND, LTD.,<br>BKCOIN MULTI-STRATEGY<br>MASTER FUND, LTD.,<br>BKCOIN MULTI-STRATEGY FUND, LP,<br>BKCOIN MULTI-STRATEGY FUND LTD., AND<br>BISON DIGITAL LLC,<br><br>Relief Defendants. | Case No. 1:23-cv-20719-RNS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A LIMITED LIFT OF THE STAY OF LITIGATION AGAINST THE RECEIVER, BKCOIN MANAGEMENT, LLC, AND BKCOIN CAPITAL LP OR IN THE ALTERNATIVE, FOR AN ORDER REQUIRING THE RECEIVER TO ADVANCE AND INDEMNIFY DEFENDANT KANG**

Defendant Kevin Kang respectfully submits this memorandum of law in support of his Motion for a Limited Lift of the Stay of Litigation Against Receiver Michael Goldberg (the "Receiver"), Defendant BKCoin Management LLC, and Defendant BKCoin Capital LP to allow Mr. Kang to file a complaint for indemnification and advancement of attorneys' fees, or in the alternative, for an Order requiring that the Receiver should advance Mr. Kang's attorneys' fees and costs as required under Mr. Kang's partnership agreement with BKCoin Capital LP.

## PRELIMINARY STATEMENT

As a former partner of BKCoin Capital LP, Mr. Kang is entitled to both advancement and indemnification for "reasonable legal and other professional fees" connected to defending against any claim pursuant to the First Amended and Restated Limited Partnership Agreement with BKCoin Capital LP, dated August 28, 2020 (the "Amended LP Agreement"). As set forth more fully below, the commitments are stated in mandatory, non-discretionary language: "To the fullest extent permitted by applicable law, the Partnership shall and does hereby agree to indemnify and hold harmless" Mr. Kang, and it further agrees that "[e]xpenses reasonably incurred . . . in defense or settlement of any claim that may be subject to a right of indemnification hereunder shall be advanced by the Partnership prior to the final disposition[.]" *See* Cohen Decl., Ex. A, Amended LP Agreement at Section 4.03(b) and (e). Under Delaware law, the governing law of the Amended LP Agreement, mandatory provisions such as these must be enforced. And yet, despite the law and the explicit language of the Amended LP Agreement, the Receiver has refused to indemnify and advance Mr. Kang's legal fees and costs.

Because Mr. Kang is being deprived of his contractual right to indemnification and advancement of fees, the Court should order a temporary lift on the stay on litigation against the Receiver and Relief Defendants for the limited purpose of enforcing those rights. In the alternative, the Court should direct the Receiver and Relief Defendants to advance Mr. Kang his legal fees and costs related to the Amended LP Agreement.

## BACKGROUND

**I.     The Court Imposed A Stay Of Litigation Against The Receiver And The Relief Defendants**

On February 23, 2023, the SEC filed a sealed complaint and proposed order instituting, among other things, a stay of litigation against the receiver appointed and the Relief Defendants (BKCoin Capital, LP, BK Offshore Fund, Ltd., BKCoin Multi-Strategy Master Fund, Ltd., BKCoin Multi-Strategy Fund, LP, BKCoin Multi-Strategy Fund, Ltd., and Bison Digital LLC). *See* Proposed Order Appointing Receiver, ECF No. 4-2.

On February 24, 2023 the Court entered the order granting the stay of litigation. In particular, aside from this current action by the SEC, the Court stayed until further order:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants and Relief Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants and Relief Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

Order Appointing Receiver at 11, ECF No. 8.

### II. Mr. Kang Is Entitled To Indemnification And Advancement Under The Amended LP Agreement

Mr. Kang was a managing member of BKCoin Management, LLC ("BKCoin"). BKCoin oversaw the following funds that invested in crypto-related assets: BKCoin Capital LP, BK Offshore Fund, Ltd., BKCoin Multi-Strategy Master Fund, Ltd., BKCoin Multi-Strategy Fund, LP, and BKCoin Multi-Strategy Fund Ltd. (together with BKCoin, the "BKCoin Entities"). BKCoin entered into the First Amended and Restated Limited Partnership Agreement with BKCoin Capital LP, dated August 28, 2020 (the "Amended LP Agreement"). *See* Celia Cohen Decl., Ex. A.[1]

Under Section 4.03 the Amended LP Agreement, Mr. Kang is a "Covered Person." *See id.* at 4. The Amended LP Agreement defines a "Covered Person" as "the General Partner (including, without limitation, the General Partner in its role as Tax Matters Partner and, if applicable, in its capacity as a special limited partner or a former general partner), the Investment Manager, each of their Affiliates, any officers, directors, managers, employees, shareholders, partners, members, agents and consultants of any of the foregoing." *Id.* Mr. Kang was a manager of the General Partner, BKCoin, and therefore falls within the definition of "Covered Person."

---

[1] Delaware law is the governing law for the Amended LP Agreement. *See* Cohen Decl., Ex. A at Section 17.02. If necessary, New York, New York is the contractually selected venue for enforcement of Mr. Kang's rights under the Amended LP Agreement - Section 17.03 of the Amended LP Agreement states that the "parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought exclusively in the federal or state courts located in New York County of the State of New York, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of New York."

Section 4.03(b) of the Amended LP Agreement provides for the indemnification of a Covered Person:

> To the fullest extent permitted by applicable law, the Partnership shall and does hereby agree to indemnify and hold harmless each Covered Person from and against any damages, costs, losses, claims, liabilities, actions, and expenses (including reasonable legal and other professional fees and disbursements and all expenses reasonably incurred investigating, preparing, or defending against any claim whatsoever, judgment, fines, and settlements (collectively "**Indemnification Obligations**") incurred by such Covered Person arising out of or relating to this Agreement, the Investment Management Agreement, or any entity in which the Partnership invests (including, without limitation, any act or omission as a director, officer, manager or member of an Affiliate of the Partnership), except in the case of any act or omission with respect to which a court of competent jurisdiction (or other similar tribunal) has issued a final and non-appealable decision, judgment or order that such act or omission resulted from such Covered Person's bad faith, gross negligence, willful misconduct, fraud or a material breach of this Agreement or the Investment Management Agreement. The indemnity set forth herein shall not apply to an internal dispute among the Covered Persons to which the Partnership is not a party. The provisions set forth in this Section 4.03(b) shall survive the termination of this Agreement.

*Id.* at 14.

Section 4.03(e) of the Amended LP Agreement provides for advancement for Mr. Kang:

> Expenses reasonably incurred by a Covered Person in defense or settlement of any claim that may be subject to a right of indemnification hereunder shall be advanced by the Partnership prior to the final disposition thereof upon receipt of a written undertaking by or on behalf of such Covered Person to repay such amount to the extent that it is ultimately determined that such Covered Person is not entitled to be indemnified hereunder. The termination of a proceeding or claim against a Covered Person by settlement or a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that any Covered Person's conduct constituted bad faith, gross negligence, willful misconduct, fraud, or a material breach of this Agreement or the Investment Management Agreement.

*Id.* at 14-15.

Furthermore, Section 4.03(d) of the Amended LP Agreement states that "satisfaction of any indemnification pursuant to this Section 4.03 shall be from and limited to Partnership assets." *Id.* at 14. Section 1.01 of the Amended LP Agreement defines "Partnership" as "the

5

limited partnership referred to in this Agreement, as it may from time to time be constituted[;]" in other words, BKCoin Capital LP. *Id.* at 8.

**III.    Mr. Kang Currently Faces Actions Related To The Amended LP Agreement And Has Incurred Legal Fees And Costs**

Mr. Kang retained counsel following an October 14, 2022 meeting during which he was terminated from his position at BKCoin. At that time, Mr. Kang lost access to all emails and company documents, and it became apparent from the outset that the company, and particularly Carlos Betancourt, was accusing Mr. Kang of wrongdoing. Indeed, Mr. Kang's counsel was informed by counsel for BK Coin Management that he was the subject of regulatory and criminal investigations. Thus, Mr. Kang was required to obtain counsel immediately to defend against accusations "arising out of or relating to this Agreement, the Investment Management Agreement, or any entity in which the Partnership invests (including, without limitation, any act or omission as a director, officer, manager or member of an Affiliate of the Partnership)[.]" *See* Section 4.03(b) of the Amended LP Agreement.

On October 18, 2022, Plaintiff Alejandro Canto filed an initial complaint in the Southern District of New York against BKCoin, Carlos Betancourt, and Kevin Kang alleging breaches of fiduciary duty in connection with the management of his funds that were in a separately managed account, and certain loan agreements. *See Canto v. BKCoin Mgmt., LLC*, No. 1:22-cv-08858-JPO (S.D.N.Y.), Dkt. No. 3. On January 20, 2023, Canto filed a first amended complaint (the "Canto FAC"), adding additional allegations regarding improper acts by Mr. Kang in connection with the management of BKCoin funds. *See* Dkt. No. 28. Cohen Decl., Ex. D.

On March 6, 2023, the Securities and Exchange Commission (the "SEC") unsealed its complaint against BKCoin and Mr. Kang in the Southern District of Florida alleging violations of Section 17(a)(2-3) of the Securities Act, Section 10(b) and Rule 10b-5(a-c) of the Exchange

6

Act, Section 206(1-2) of the Advisers Act, and unjust enrichment. *See SEC v. BKCoin Mgmt., LLC,* No. 1:23-cv-20719-RNS (S.D.F.L.), Dkt. No. 1 (the "SEC Complaint"), Cohen Decl., Ex. E. The SEC's Complaint alleged misconduct by Mr. Kang in connection with investor funds under the Amended LP Agreement and other agreements. *See, e.g.*, SEC Complaint at ¶ 26.

Mr. Kang has incurred legal fees and costs since he was terminated from BK Coin in preparation for potential actions against him, and has incurred additional fees and costs in connection with the two current actions against him.

### IV. The Receiver Wrongfully Denied Mr. Kang's Demand For Advancement

On March 27, 2023, counsel for Mr. Kang issued the Demand for Indemnification and Advancement to Mr. Goldberg, the Receiver for the BKCoin Entities. *See* Cohen Decl., Ex. B. Counsel for Mr. Kang demanded indemnification and advancement for Mr. Kang, as a Covered Person, under the Amended LP Agreement pursuant to Sections 4.03(b) and (e) for legal fees and costs incurred in the Canto Action and the SEC Action. *Id.* The Demand for Indemnification and Advancement included an undertaking from Mr. Kang that stated, "Pursuant to the Amended LP Agreement, I, Kevin Kang, undertake to repay any expenses advanced to me to the extent that it is ultimately determined that I am not entitled to be indemnified." *See id.* at 3. The Demand for Indemnification and Advancement included the aggregate amount of expenses incurred by Mr. Kang as of March 24, 2023, which was $154,842. *Id.* Counsel for Mr. Kang also offered to provide monthly notices for expenses in accordance with Amended LP Agreement going forward. *Id.* at 1-2.

The Amended LP Agreement is also governed by Delaware law, under which an individual's right to advancement of attorneys' fees and legal defense costs must be enforced as a matter of contract, statute, and public policy. Delaware law expressly permits entities to

commit to advancing "[e]xpenses (including attorneys' fees) incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding." 8 Del. C. § 145(e). Once an entity has committed to provide advancement, "advancement rights" are enforced "by their terms [as] contract rights." *Blankenship v. Alpha Appalachia Holdings, Inc.*, C.A. No. 10610-CB, 2015 WL 3408255, at *29 (Del. Ch. May 28, 2015) (ordering advancement of fees for plaintiff's criminal defense). Delaware courts also recognize that upholding valid advancement rights supports important public policy concerns such as providing "an inducement for attracting capable individuals into corporate service." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005); *see also VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998); *Blankenship*, 2015 WL 3408255, at *17 (public policy "supports resolving ambiguity in favor of indemnification and advancement"); *Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 404 (Del. Ch. 2008) ("the Delaware policy gloss favoring advancement to corporate officials supports resolving . . . ambiguity in favor of advancement").

Additionally, under Delaware law, a provision that legal defense costs and attorneys' fees "shall be advanced" is accorded its "plain meaning" and given the interpretation "that advancement is mandatory." *Stockman v. Heartland Indus. Partners, L.P.*, No. CIV.A. 4227-VCS, 2009 WL 2096213, at *6 (Del. Ch. July 14, 2009).

Despite the contractual and legal basis for advancement and indemnification, the Receiver denied the Demand for Indemnification and Advancement on two grounds on March 31, 2023. *See* Cohen Decl., Ex. C. First, the Receiver improperly alleged that there were no assets available for indemnification and advancement: "the Receivership entities' obligation to advance funds for expenses to Mr. Kang is, under the express terms of the Agreement, limited to partnership assets. Agreement at Section 4.03(d): 'The satisfaction of any indemnification

pursuant to this Section 4.03 *shall be from and limited to* Partnership assets' (emphasis added)." *Id.* at 1.  Notwithstanding the definition of "Partnership" in Section 1.01 of the Amended LP Agreement, which as discussed above defines "Partnership" as BKCoin Capital LP, the Receiver insisted that it was unclear what "Partnership Assets" meant under Section 4.03.  Instead, the Receiver pointed to the defined term "Available Assets," which refers to funds available for distribution to the partners in BKCoin Capital LP, which is distinct from the Partnership assets from which Mr. Kang is entitled to advancement of fees and indemnification.  *See* Cohen Decl., Ex. A, Section 1.01 at 2, Section 8.01 ("Distributions") at 25, and Section 4.03.

Based on this incorrect definition, the Receiver then denied Mr. Kang indemnification and advancement because "the only funds the Receivership entities possess are directly traceable to investor funds[, and these] funds cannot be considered Partnership assets under the definition of Available Assets set forth above, or under any reasonable definition of the term Partnership assets, since they properly belong to investors."  Cohen Decl., Ex. C at 2 (internal citation omitted).  Second, the Receiver denied indemnification because he had determined that "Mr. Kang's purported undertaking attached to [Counsel's] letter . . . is woefully insufficient to provide even the remotest possibility that the Receivership entities could recover any advanced funds from Mr. Kang in the likely event he is found to have committed fraud."  *Id.*

This other claimed ground for denial of advancement is also incorrect.  Under Delaware law, which governs the Amended LP Agreement, parties are only required to furnish an undertaking in order to receive an advancement.[2]  There is no requirement for parties to secure the undertaking or show their immediate ability to repay the advance.  Kang provided an

---

[2] *See Blankenship v. Alpha Appalachia Holdings, Inc.*, C.A. No. 10610-CB, 2015 WL 3408255, at *29 (Del. Ch. May 28, 2015).

9

undertaking pursuant to Section 4.03(e), and the Receiver is legally required to honor that undertaking under the Amended LP Agreement. Finally, the proper definition of "Partnership Assets" encompasses all of the assets of BKCoin Capital LP. *See* Section 1.01 of the Amended LP Agreement. This is far broader than the Receiver's incorrect definition. Under the correct definition, there are ample funds available for advancement.

## ARGUMENT

The Court should either order a limited lift of the stay on litigation to allow Mr. Kang to enforce his contractual rights in a New York state court action, or direct the Receiver to advance Mr. Kang his attorneys' fees and defense costs associated with the two matters.

### I. Legal Standard

Courts apply a three-part balancing test in determining whether to lift the litigation stay against a receiver: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from stay is made; and (3) the merit of the moving party's underlying claim. *See SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984); *see also United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005); *SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-CIV-81205-RAR, 2021 WL 3211690, at *1 (S.D. Fla. July 28, 2021) (applying both *Wencke* and *Acorn*).

### II. Mr. Kang Meets All Of The *Wencke* Factors

#### a. Mr. Kang Will Face Substantial Injury If The Stay Is Not Lifted

Mr. Kang is currently facing a nine count complaint brought by the SEC involving issue related to the Amended LP Agreement, and is under investigation by the United States Attorney's Office for the Southern District of Florida in relation to the Amended LP Agreement.

10

The SEC's case against Mr. Kang is becoming more intense as the bulk of discovery is now being produced and depositions are being noticed. The charges in the SEC case involve a complex analysis of voluminous information necessary to defend against charges that Mr. Kang violated various securities laws. Mr. Kang has already incurred legal fees in connection with the Canto lawsuit[3] and the SEC charges, and cannot continue to properly defend himself against the SEC charges without advancement and indemnification of his fees and costs. In addition, given the U.S. Attorney's Office investigation, Mr. Kang will similarly be hampered in his ability to defend against a potential criminal case where the stakes are even higher. Mr. Kang therefore meets the first *Wencke* factor for substantial injury. *Wencke*, 742 F.2d at 1241; *see also SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 2761850, at *6 (N.D. Tex. June 6, 2018) (holding in part that parties were entitled to advancement of legal fees from D&O policy within the receivership and faced substantial harm because without the money, their "ability to defend themselves in ongoing litigation would have likely been substantially impaired") (internal citations omitted); *see also In re Platinum-Beechwood Litig.*, 378 F. Supp. 3d 318, 330 (S.D.N.Y. 2019) (holding in part that individual facing an SEC action along with other lawsuits, who had exhausted his insurance coverage and now sought advancement demonstrated "irreparable harm" for purposes of a preliminary injunction directing advancement).

     **b. The Receivership Has Been In Place For 8 Months And There Will Be No Harm To The Receivership**

The second *Wencke* factor takes into account the timing of the motion to lift the stay in the course of the receivership. *Wencke*, 742 F.2d at 1230-1231. This is a fact-specific test, and takes into account "the number of entities, the complexity of the scheme, and any number of

---

[3] There are currently no ongoing legal fees connected to the Canto matter as the matter has been stayed.

other factors." *SEC v. Provident Royalties, L.L.C.*, No. 3:09-CV-1238-L, 2011 WL 2678840, at *3 (N.D. Tex. July 7, 2011). There is no bright-line rule for how long a receivership must be in place before a litigation stay may be lifted. *See id.* (collecting cases). However, once a receivership has taken sufficient steps and is "moving toward a close[,]" courts have found that sufficient time has elapsed in favor of lifting the stay. *Id.*; *see also SEC v. Priv. Equity Mgmt. Grp., LLC*, No. CV 09-2901 PSG EX, 2010 WL 4794701, at *3 (C.D. Cal. Nov. 18, 2010) (finding receiver's sufficient progress cut in favor of lifting the stay).

The Receiver has had ample time to identify assets and "explore the affairs of the entities," and it will not be harmed by a limited lift of the stay of litigation. Specifically, in February, the Receiver was "in the process of completing a through forensic analysis of the activities of the Receivership Entities as well as all Receivership Property." First Motion for Attorney Fees Receiver's First Interim Omnibus Application for Fees & Expenses 2.24.2023-6.30.2023, ECF No. 95. Currently, the Receiver is scheduled to file a liquidation plan for the Receivership Property by December 21, 2023. *See* Motion for Extension of Time to Extend Deadline to File Liquidation Plan, ECF No. 89. Furthermore, according to the Receiver's Second Interim Report, the Receiver has already identified assets in a combination of cash and real property worth $7,168,932.02, along with a substantial amount of crypto-related assets. *See* Receiver's Second Interim Report, ECF No. 86.

Given the substantial steps taken by the Receiver and the plan to file a liquidation plan shortly, a temporary lift of the stay to allow Mr. Kang to enforce his contractual rights to indemnification and advancement of fees will not harm the Receiver. The Receiver has been in place since November 21, 2022, and as described above, has made substantial progress. Indeed, *Wencke,* specifically noted that, "as the receivership progresses, however, it may become less

plausible for the receiver to contend that he needs more time to explore the affairs of the entities. The merits of the moving party's claim may then loom larger in the balance." *Wencke*, 742 F.2d at 1232 (internal citations omitted). The same is true here. The Receiver has had ample time and success in identifying the estate's assets, and is nearly ready to file a liquidation plan. Mr. Kang has a contractual right to indemnification and advancement of fees and will be greatly harmed if he cannot enforce those rights. Therefore, Mr. Kang's claim "looms larger in the balance," and outweighs any claim of harm by the Receiver. *Id.*

### c. Mr. Kang Has A Meritorious Claim Under Delaware Law

Mr. Kang is entitled to advancement and indemnification under Delaware law, and has the requisite meritorious claim for the third *Wencke* factor. The Amended LP Agreement clearly provides for his advancement and indemnification, and Mr. Kang has even provided an undertaking in support of his request for advancement. Delaware law requires advancement and indemnification under contract regardless of the allegations. *See Blankenship*, 2015 WL 3408255, at *29. The language in the Amended LP Agreement is clear: "To the fullest extent permitted by applicable law, the Partnership shall and does hereby agree to indemnify and hold harmless" and "[e]xpenses reasonably incurred . . . in defense or settlement of any claim that may be subject to a right of indemnification hereunder shall be advanced by the Partnership prior to the final disposition[.]" Amended LP Agreement at Section 4.03(b) and (e). This is the exact type of language that Delaware courts have found to require mandatory advancement of legal fees and costs. *See Stockman*, 2009 WL 2096213, at *6.

Because Mr. Kang has met all three *Wencke* factors, the Court should order a limited lift of the stay of litigation against the Receiver and Relief Defendants to permit Mr. Kang to file a complaint for indemnification and advancement of his attorneys' fees and costs.

13

### III. This Court May Order The Receiver To Indemnify And Advance Legal Fees And Expenses To Mr. Kang

Alternatively, given that the law and the facts support advancement of fees in this case, in the interest of judicial economy and preserving the assets of the Receivership, Mr. Kang requests that the Court order the Receiver to indemnify him and advance him his legal fees and expenses connection with the SEC allegations.[4] In similar contexts, courts have concluded that officers and directors of entities in receivership have a contractual right to advancement. *See SEC v. Illarramendi*, No. 3:11CV78 JBA, 2014 WL 545720, at *1 (D. Conn. Feb. 10, 2014) (holding that movants made a *prima facie* showing of contractual entitlement to advancement of attorneys' fees, but evidentiary hearing was necessary); *see also Ridder v. CityFed Fin. Corp.*, 47 F.3d 85, 88 (3d Cir. 1995) (reversing district court's order and instructing it to issue an injunction requiring receiver to advance such defense costs as mandated by the underlying agreements).

The situation in *Illarramendi* is analogous to this case. In that matter, movants, former principals and officers of an entity under receivership sought an order requiring the receiver to provide for advancement of their legal fees to defend against an action filed by the receiver. *Illarramendi*, 2014 WL 545720, at *1. The receiver opposed the motions, contending that advancement was unwarranted given the limited estate assets for investors and because movants were at fault. *Id.* The court was not persuaded by the receiver's position that limited estate assets precluded the movants from receiving advancement, and noted that advancement is determined as a matter of contractual right. *Id.* at *5.[5] As in *Illarramendi*, the Kang case is a

---

[4] Under Delaware law, which governs the Amended LP Agreement, courts order advancement through expedited summary proceedings in accordance with the underlying purpose and public policy for advancement under Delaware law. *See Trascent Mgmt. Consulting, LLC v. Bouri*, 152 A.3d 108, 113 (Del. 2016).

[5] While ultimately the *Illarramendi* movants did not receive advancement, that ruling was due to their

straightforward claim for indemnification and advancement, which is contractual right that is enforceable under Delaware law, and any argument that the Receiver has limited assets is irrelevant. Accordingly, the Court should order the Receiver to advance his legal fees and costs related to the Amended LP Agreement.

## **CONCLUSION**

For all of the reasons set forth above, Mr. Kang respectfully requests that the Court grant his motion to either lift the stay on litigation against the Receiver and Relief Defendants in order for Mr. Kang to enforce his contractual rights, or in the alternative, direct the Receiver and Relief Defendants to advance Mr. Kang his legal fees and costs related to the Amended LP Agreement.

---

"unclean hands," because the parties surreptitiously transferred $2.9 million for their legal fees before even making the claim for advancement. *SEC v. Illarramendi*, No. 3:11CV78 JBA, 2014 WL 8019048, at *12 (D. Conn. Mar. 27, 2014). This is not an issue here because Mr. Kang did not engage in such conduct.

New York, New York
Date: November 7, 2023

Respectfully submitted,

*[signature: Celia A. Cohen]*

Celia Cohen (*pro hac vice*)
cohenc@ballardspahr.com
Michael Robotti (*pro hac vice*)
robottim@ballardspahr.com
Ballard Spahr LLP
1675 Broadway
19th Floor
New York, NY 10019-5820
Telephone: 212-223-0200
Facsimile: 212-223-1942


*/s/ Walter Norkin*

Walter Norkin
Fla Bar ID # 1022653
wnorkin@akrivislaw.com
Akrivis Law Group PLLC
One Southeast Third Avenue
Suite 2120
Miami, Florida 33131
Telephone: 305-359-6399
*Attorneys for Min Woo Kang a/k/a Kevin Kang*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about November 7, 2023 a true and accurate copy of Defendant Kang's Memorandum of Law in Support of Motion to Lift the Stay of Litigation Against the Receiver was served on counsel of record via the CM/ECF system.

Date: November 7, 2023                     Respectfully submitted,


                                           */s/ Walter Norkin*

                                           Walter Norkin
                                           Fla Bar ID # 1022653
                                           wnorkin@akrivislaw.com
                                           Akrivis Law Group PLLC
                                           One Southeast Third Avenue
                                           Suite 2120
                                           Miami, Florida 33131
                                           Telephone: 305-359-6399