UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 23-CV-20719-SCOLA/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

BK COIN MANAGEMENT, LLC, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON
RECEIVER'S SECOND INTERIM OMNIBUS APPLICATION FOR
ALLOWANCE AND PAYMENT OF PROFESSIONALS' FEES AND
<u>REIMBURSEMENT OF EXPENSES FOR JULY 1, 2023–SEPTEMBER 30, 2023</u>**

Michael I. Goldberg, in his capacity as the court-appointed Receiver ("Receiver"), filed Receiver's Second Interim Omnibus Application for Allowance and Payment of Professionals' Fees and Reimbursement of Expenses for July 1, 2023–September 30, 2023 ("Second Interim Application") "seek[ing] Court approval to pay the sum of $206,958.11 to the professionals engaged by the Receiver for fees incurred and reimburse $2,788.06 in expenses paid for a total payment of $209,746.17." [ECF No. 111, p. 1]. The Securities and Exchange Commission ("SEC" or "Plaintiff") does not object to the relief requested. [ECF No. 111, p. 19]. To date, no responses/objections have been filed and the time to do so has passed.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 114]. As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant** the Second Interim Application.

I.     **Procedural and Factual Background**

On February 23, 2023, the SEC commenced this action against Defendants BKCoin Management, LLC ("BKCoin") and Min Woo Kang a/k/a "Kevin" Kang (collectively, "Defendants") and Relief Defendants BKCoin Capital, LP, BK Offshore Fund, LTD., BKCoin Multi-Strategy Master Fund, Ltd., BKCoin Multi-Strategy Fund, LP, BKCoin Multi-Strategy Fund Ltd., and Bison Digital LLC (collectively, "Relief Defendants") asserting that Defendants violated various sections of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940 and for unjust enrichment against Relief Defendants. [ECF No. 1].

The SEC sought and obtained the appointment of the Receiver. [ECF Nos. 4; 8]. The Court also granted the SEC's *ex parte* emergency motion for an order freezing the assets of Defendants and Relief Defendants. [ECF Nos. 5; 9].

The Order appointing the Receiver authorizes him to, among other things, retain personnel to assist him in executing his duties:

2

> [6.]F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;
>
> \*\*\*
>
> 56. Subject to Paragraph 57 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

[ECF No. 8, ¶¶.6F, 56].

The Court's Order provides for reasonable compensation and reimbursement of costs to the Receiver and the retained professionals from the Receivership Estates:

> 57. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

*Id.* at ¶ 57.

The Court's Order defines the term Receivership Estates to include:

> all property interests of the Receivership Defendants and Relief Defendants, including, but not limited to, monies, funds, securities, cryptocurrencies, crypto assets, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants and Relief Defendants own, possess, have a beneficial interest in, or control directly or indirectly[.]

*Id.* at 6.A. "The amount of cash on hand in the Receivership bank accounts as of the date of filing [the Second Interim] Application is $5,177,945.85." [ECF No. 111, p. 4].

Previously, the Receiver filed a First Interim Application [ECF No. 95] seeking approval for fees and costs that he and his retained professionals incurred from February 24, 2023 through June 30, 2023. The Undersigned issued a Report and Recommendations [ECF No. 117] recommending that Judge Scola grant the motion.

In the instant *Second* Interim Application, the Receiver seeks approval of the fees and costs that he and his retained professionals incurred from July 1, 2023–September 30, 2023 ("Application Period"). [ECF No. 111]. To support this request, the Receiver has attached billing records and summarized the work performed by the Receiver himself and the professionals he has engaged. The Receiver has also included a certification which states, in part, that the facts asserted in the Second Interim Application are true. *Id.* at 21–22.

## II. Applicable Legal Standard

"The district court appointing the receiver has discretion over who will pay the costs of the receiver" and "may award the receiver fees from property securing a claim if the receiver's acts have benefitted that property." *S.E.C. v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992); *see also S.E.C. v. Lauer*, No. 03-80612-CIV, 2016 WL 3225200, at *2 (S.D. Fla. Mar. 31, 2016) ("The District Court has significant discretion over the amount of compensation

awarded to a court-appointed receiver and his hired professionals, and to win a reversal, the receiver must show that such discretion was plainly abused." (citation and footnote omitted)).

The party seeking attorney's fees bears the burden of establishing entitlement and reasonableness. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The movant must supply the Court with detailed records showing the amount of time spent on the claim, as well as the nature of the activity at each stage of the case. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from the claim, as those hours are unreasonable. *Id.* at 1299 (quoting *Hensley*, 461 U.S. at 434).

The Court is tasked with determining a reasonable fee award. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 434. This amount is typically referred to as the "lodestar." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163–64 (11th Cir. 2008).

"The [C]ourt . . . itself [is] an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an

independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).[1]

### III. Analysis

The Receiver retained the services of his law firm Akerman LLP ("Akerman") and Maria M. Yip and her accounting firm, YIP Associates ("YIP Associates"). The Receiver and his retained professionals are in the process of conducting forensic analysis which, "once complete, will reconcile all remaining, recovered, and recoverable Receivership Property, and will also identify any and all investors with the requisite standing to participate in a claim process." [ECF No. 111, pp. 4–5].

The Receiver explains that the instant case does not involve a simple liquidation process because there are "multiple investment funds with different investors involving numerous transfers of money among those funds that were subsequently distributed to investors" and "some distributions to investors were based on accurate market values of cryptocurrency while other distributions were based on what appear to be fraudulent valuations." *Id.* at 5. For these reasons, "the Receiver is undertaking a forensic analysis to determine which distributions were valid versus those which were fraudulent in order

---

[1]  In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

for the Receiver to accurately compute investor's claims and propose a proper plan of distribution." *Id.*

As noted above, "[a]s of the filing of [the Second Interim] Application, the aggregate amount of cash on hand totals $5,177,945.85." *Id.* The Receiver is also "in the process of investigating and commencing claims against parties who may have assisted the Receivership Entities in the perpetration of any actionable claims in an attempt to recover money for the estate's creditors." *Id.* at 6.

The Receiver is working with Akerman attorneys and paralegals in administering both this case and the receivership estate. *Id.* Some of these administrative activities include "case coordination, compliance activities, . . . preparation of reports[,] and responding to investor inquiries." *Id*. at 10. He is also assisted by the professionals at YIP Associates, who were retained to perform accounting, forensic accounting, and tax services. *Id.* at 7.

The Second Interim Application describes in detail the activities performed by the Receiver and his legal professionals, including asset analysis, recovery, and disposal. *Id.* at 8–10. The Receiver explains that during the Application Period, he "has been working to repatriate and liquidate . . . assets held on exchanges" and his team "continue[s] to monitor cryptocurrency exchange bankruptcy proceedings and coordinat[e] with

7

debtors' counsel to request Receivership Entities' records and also ensure that any claims belonging to the Receivership Entities are preserved." *Id.* at 9.

The Second Interim Application also describes in detail the work performed by YIP Associates during the Application Period. This work includes analysis of tax issues and preparation of tax returns, "review[ing] and analyz[ing] trading activity and the records from eighteen (18) cryptocurrency exchanges," "assist[ing] the Receiver in meeting with various investors and representatives from banks, fund administrators, and cryptocurrency exchanges," and assisting with Standardized Fund Accounting Report preparation. *Id.* at 14–16.

The Receiver requests the following amounts incurred during the Application Period: $150,235.11 in fees and $2,716.66 in costs by Akerman and $56,723.00 in fees and $71.40 in costs by YIP Associates. *Id.* at 7. The Receiver and Akerman have expended 394.4 hours, and YIP Associates has expended 203.9 hours, for a total of 598.3 hours on work related to this case during the Application Period.

The hourly rates for the legal professionals have been **reduced** from a range of $295.00–$1,015.00 to a range of $233.75–$709.75. *Id.* at 25. The accounting professionals also used a **reduced** rate, from a range of $245.00–$450.00 to a range of $195.00–$375.00. *Id.* at 26. As indicated in the Second Interim Application, "the professionals who seek payment . . . have collectively discounted their fees by a minimum of 15% off their regular

8

rates" and the Receiver's requested hourly rate is "a 45% reduction of his regular billing rate." *Id.* at 1–2.

The SEC does not object to the requested amounts and no responses/objections have been filed. Moreover, the Undersigned has reviewed the records of the Receiver/legal professionals and the retained accounting firm and is satisfied that the billing rates of the timekeepers and hours expended by them, as well as the claimed expenses, are reasonable. *See Norman*, 836 F.2d at 1303 ("The [C]ourt . . . itself [is] an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell*, 112 F.2d at 144)).

## IV.   Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the Court **grant** the Receiver's Second Interim Application [ECF No. 111] and authorize the Receiver to pay the requested $209,746.17 in fees and expenses.

## V.   Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties

from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on December 6, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record