UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 23-CV-20719-SCOLA/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

BKCOIN MANAGEMENT, LLC, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON THIRD-PARTY ALEJANDRO CANTO'S RENEWED MOTION TO INTERVENE AND TO LIFT LITIGATION STAY AGAINST CARLOS BETANCOURT

Approximately ten months after the Court denied without prejudice his motion to intervene and to lift the litigation stay against non-party Carlos Betancourt ("Betancourt") (but permitted him to file a renewed motion after 120 days, if he deems it necessary), Alejandro Canto ("Canto") filed a renewed motion [ECF No. 135], seeking the same relief. Plaintiff Securities and Exchange Commission ("SEC") filed an opposition response and Canto filed a reply [ECF Nos. 141; 145].

As noted by Canto in his reply, the SEC is, in effect, asking the Court to preserve an indefinite litigation stay against a non-party (*i.e.*, Betancourt) even though: (1) the litigation stay has been in effect for more than 400 days; (2) the SEC is unable to advise the Court when it will end; (3) Canto was the original whistleblower and filed the first

lawsuit addressing the scheme at issue in this SEC-filed lawsuit; (4) the Receiver has advised that there will not be a recovery for all investors; (5) the statute of limitations period concerning unidentified third-parties who assisted in the fraud continues to run; (6) Canto unilaterally (and before the SEC filed this action) stayed his lawsuit in New York against Defendant BKCoin Management, LLC ("BKCoin") and Min Woo "Kevin" Kang ("Kang"), another named defendant here; (7) this Court already indicated, in its earlier Order, that it did not accept the SEC's legal argument that Canto is statutorily prohibited from intervening in the instant action; and (8) any concerns by the SEC and the Receiver about responding to discovery are insufficient to continue the stay (because, under that view, a stay would be warranted in every case.

As outlined in greater detail below, these factors (and others) generate a compelling scenario for *allowing* Canto to intervene so that the Court can order the litigation stay against Betancourt to be lifted. Although the Undersigned is not convinced that Canto has established intervention as a matter of right, the Undersigned concludes that Canto has established permissive intervention. Therefore, the Undersigned **recommends** that Senior United States District Judge Robert N. Scola, Jr. **grant** Canto's renewed motion.[1]

---

[1]     Judge Scola referred [ECF No. 140] Canto's renewed motion to me for "either an order or a report and recommendations, consistent with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72 and Rule 1 of the Local Magistrate Judge Rules." The

2

I.      **Factual Background**

Canto is the plaintiff in a class action case related to BKCoin, Kang, and Betancourt currently pending in the Southern District of New York. *See Canto v. BKCoin Mgmt. et al*, No. 1:22-cv-08858 (S.D.N.Y. Oct. 17, 2022) (hereinafter "*Canto v. BKCoin*"). Canto says he filed a renewed motion to intervene only for the limited purpose of obtaining an Order lifting in part the litigation stay against Betancourt, a non-party to the instant action. Canto filed a complaint in New York federal district court individually and on behalf of class members in October 2022. He amended the complaint in January 2023.

---

Undersigned is adopting a prudent approach and entering a Report and Recommendations even though most courts hold that a motion to intervene is not a case-dispositive pretrial motion. a *United States v. Certain Real Prop.*, 751 F. Supp. 1060 (E.D.N.Y. 1989) (a motion to intervene is not dispositive of a claim or defense of a party under Fed. R. Civ. P. 72 and can be referred to a magistrate judge under § 636(b)(1)(A)); *United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184 (D.N.J. 1999) (a magistrate judge may hear and adjudicate a motion to intervene as a non-case-dispositive pretrial motion, without the consent of the parties); *WFK & Assoc., L.L.C. v. Tangipahoa Parish*, No. 06-6684, 2007 WL 1537633 (E.D. La., May 23, 2007) (a magistrate judge's denial of a motion to intervene was reviewed as a non-case-dispositive matter); *Day v. Sebelius*, 227 F.R.D. 668 (D. Kan. 2005) (an order granting leave to intervene is a non-case-dispositive matter under 28 U.S.C. § 636(b)(1)); *Perles v. Kagy*, 394 F. Supp. 2d 68 (D.D.C. 2005) (a district judge could refer a motion to intervene without the parties' consent and would review objections under a "clearly erroneous" standard).

The courts take a more-restrictive view of a magistrate judge's jurisdictional authority to stay a matter (or lift a stay), however, with some court analogizing it to injunctive relief, which is not a matter that a magistrate judge may rule on in an order without consent of all parties. *Reynaga v. Cammisa*, 971 F.2d 414 (9th Cir. 1992). *But see Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*, No. 06-1477, 2008 WL 4540394 (W.D. Pa., Oct. 7, 2008) (a request for a stay of proceedings is a non-case-dispositive matter).

Canto provides the following facts as the underlying scenario, and the SEC has not materially objected to his factual outline, which is summarized below:

Canto maintained a Separately Managed Account ("SMA") with BKCoin after executing Investment Management Agreements with BKCoin on March 16, 2020, and December 7, 2020. Canto's Agreements were signed by Betancourt on behalf of BKCoin. At their height, Canto's investment accounts with BKCoin were worth more than $11 million. But when the crypto markets began to see downturns, BKCoin ceased regularly updating Canto about his investment portfolio and began raiding his portfolio through unauthorized margin calls. Canto's investigation into the mismanagement of his portfolio revealed some of the violations that form the basis of the SEC's lawsuit here [ECF No. 1], against BKCoin and Kang.

Through his attorney, and as early as August 2022, Canto communicated with BKCoin's prior counsel about his investment portfolio and the breaches of fiduciary duty by BKCoin and its two managing members (Kang and Betancourt). BKCoin and its counsel eventually ceased communications with Canto, prompting the filing of his lawsuit against BKCoin, Betancourt, and Kang on October 17, 2022. After initiating his lawsuit, Canto, through his attorney, discovered additional information regarding BKCoin's widespread mismanagement of its investors' funds, and he filed a First Amended Class Action Complaint on January 20, 2023. Among other counts, Canto's

4

complaint brings claims against Betancourt in his individual capacity on behalf of Canto and as a representative for the putative class.

Betancourt failed to file any responsive pleading to Canto's First Amended Class Action Complaint and a clerk's default was entered against him on February 17, 2023.

Shortly after Canto initiated his lawsuit, Betancourt, on behalf of BKCoin, filed an emergency petition in Florida state court on October 28, 2022, seeking the appointment of a receiver. *See* Emergency Petition for Appointment of Receiver, ECF No. 5 in *BKCoin Management, LLC, et al v. BKCoin Multi-Strategy Fund, Ltd., et. al*, No. 2022-020760-CA-01 (Fla. 11th Cir. Ct. Oct. 28, 2022) (hereinafter *BKCoin State Court Litigation*).

The petition alleged that BKCoin's other managing member, Kang, misappropriated money from the Multi-Strategy Funds. *Id*. at 4–5. On November 2, 2022, Michael I. Goldberg, Esq. was appointed as temporary receiver of the Multi-Strategy Funds. *See* Ex Parte Order Appointing a Temporary Receiver, ECF No. 6 in *BKCoin State Court Litigation*. Thereafter, on November 18, 2022, the receiver filed a motion to expand the receivership to include BKCoin. *See* Expedited Verified Motion by Receiver Michael I. Goldberg to Expand Receivership, ECF No. 18 in *BKCoin State Court Litigation*.

On February 23, 2023, the SEC filed this action against BKCoin and Kang under seal. *See* Complaint for Injunctive and Other Relief, *SEC v. BKCoin Mgmt., LLC, et. al*, No. 1:23-CV-201719 (S.D. Fla. Feb. 23, 2023), [ECF No. 1]. On February 24, 2023, this Court

5

entered an Order Appointing Receiver (hereinafter the "Receivership Order"), which appointed Michael I. Goldberg, Esq., ("Receiver") and stayed all litigation against BKCoin and "any of the Receivership defendants and Relief Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature[.]" [ECF No. 8, p. 11]. The SEC filings were unsealed and publicly filed on or about March 6, 2023, and the Receiver filed a notice of the Order Appointing Receiver in Canto's case that same day. It was at this time when Canto first learned that his and all class members' claims against not only Defendants BKCoin and Kang would be subject to the litigation stay, but their direct claims against Betancourt -- a non-party to the SEC litigation -- would also be stayed.

On March 24, 2023, Canto filed a Motion to Intervene and to Lift Stay of Litigation Against Carlos Betancourt [ECF No. 51]. Thereafter, on April 7, 2023, the SEC filed a response in opposition to Canto's motion, and on April 14, 2023, Canto filed a reply to the SEC's response. On May 4, 2023, the Court heard argument on Canto's motion. The same day, the Court issued an Order [ECF No. 73] denying Canto's motion without prejudice and gave him leave to renew the motion within 120 days. The Court denied Canto's motion because "the Court is unable to conclude that Canto's interests are being inadequately represented by the existing parties to this suit." *Id.* at 4. Further, the Court

6

encouraged the Receiver to share information obtained through the course of the Receivership with Canto. *Id.* at 5.

As Canto previously informed the SEC, the Receiver, and this Court, he says he does not seek to interfere with the SEC's litigation against Defendants or Relief Defendants or to interfere with the Receiver's duties and responsibilities. Canto notes that he had already voluntarily agreed to stay any claims against BKCoin after the filing of the *BKCoin State Court Litigation* -- before the commencement of this matter and the litigation stay entered by this Court.[2]

Canto seeks to pursue a final judgment against Betancourt on behalf of himself and other similarly situated class members. At this time, Canto has obtained a certificate of default against Betancourt, which, he points out, could still be vacated by the New York court. Canto says he should be entitled to conduct discovery to establish Betancourt's liability for damages to him and the class members and to determine if there are any third-parties who aided and abetted Betancourt in his personal breaches of fiduciary duties and fraud.

More than a year has passed since the Court issued its Order on Canto's motion to intervene. Shortly before the expiration of the 120-day period for Canto to renew his

---

[2] The First Amended Complaint in Canto's case, filed on January 20, 2023, notes that he was not seeking any relief against BKCoin because of the pending receivership action filed in the state court in Miami.

7

intervention request, the Receiver filed a motion to extend the Receivership. That motion was granted. The Receiver hired third parties to conduct blockchain forensics to understand the flow of cash and digital assets of the Receivership Entities. *See* Receiver's Fourth Interim Report [ECF No. 127, pp. 16–17]. The Receiver has also now filed a liquidation plan with the Court. *See* [ECF No. 123].

The liquidation plan illustrates that the Receiver will be unable to make either Canto or the class of victims whole. *See, id.* at pp. 7–8. Canto contends that the time is undeniably ripe to allow him to continue to pursue his claims. Canto says he has received no updates from the SEC since this Court's May 2023 hearing. Accordingly, he contends that he is unaware of any basis to not renew his motion at this time.

According to Canto, the only persons or entities who are benefiting from the Receivership's complete stay of litigation is Betancourt and those who may have aided and abetted his unlawful conduct. He emphasizes that claims against them are all subject to statute of limitations periods that count down each day.

## II. Applicable Legal Standards and Analysis

<u>Is Canto Statutorily Prohibited From Intervening Because the SEC Does Not Consent?</u>

The SEC argues that Section 21(g) of the Securities Exchange Act of 1934 absolutely bars third parties like Canto from intervening in enforcement actions instituted by it without its consent. In addition, it argues that even if the Court were to conclude that

Section 21(g) is not a complete bar to intervention, the Court should still deny Canto's motion to intervene because he has not met the standards for either mandatory or permissive intervention under Federal Rule of Civil Procedure 24.

The SEC's position is that Canto's intervention for purposes of lifting the litigation stay against Betancourt would unduly burden the instant proceedings and undermine the status quo. Canto counters that Section 21(g) is neither as broad nor as prohibitive as the SEC suggests, and that removing the stay as to his pending class action against Betancourt will neither require coordination or consolidation with this action, nor affect the SEC or the Receiver's duties to the investors. He argues that he is entitled to intervene because the litigation stay as to Betancourt is impairing his ability to pursue his and the proposed class's interests, and because those interests are not being adequately represented here. For the reasons set forth below, the Undersigned concludes that Canto's intervention would not be premature.

In the initial ruling denying Canto's first intervention motion without prejudice, Judge Scola expressly pointed out that the Court was not taking a position on the SEC's Section 21(g) argument. [ECF No. 73, p. 3]. However, Judge Scola denied the motion without prejudice and authorized Canto to renew the motion if he wished. Moreover, although he did not conclusively rule on the merits of the SEC's argument, Judge Scola explained that he does not "really believe there is a blanket prohibition against these

9

types of interventions[.]" [ECF No. 143, p. 19].

Judge Scola also assured Canto that he was "going to make sure [his] rights and everybody else's rights are protected." *Id.* And he further explained that "if you still think [after 120 days] that it is appropriate and to the extent that the [R]eceiver is able to share information with Mr. Canto's attorneys, then I would encourage him to do that." *Id.* [As noted in Canto's renewed motion, that information was not shared]. And Judge Scola ended the hearing with the following observation: "If you think in the 120 days you are not in a place where your client's interests are protected, you can refile a motion and I will consider it promptly. Okay?" *Id.*

Section 21(g) provides, in relevant part, that:

> [N]o action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g).

As clearly evidenced by the parties' submissions, there is a split of authority as to whether Section 21(g) acts as an absolute bar to intervention in SEC enforcement actions like this one. *Compare SEC v. Nadel*, No. 8:09-cv-87-T-26TBM, 2009 WL 3126266, at *1 (M.D. Fla. Sep. 24, 2009) (barring intervention) and *SEC v. Cogley*, No. 98CV802, 2001 WL 1842476, at *3 (S.D. Ohio 2001) ("After reviewing the legislative history, and reviewing

10

other cases that have discussed this issue, this Court comes to the inescapable conclusion that Section 21(g) bars intervention.") *with SEC v. Flight Transp. Corp.*, 699 F.2d 943, 950 (8th Cir. 1983) ("[T]he purpose of [Section 21(g)] is simply to exempt the Commission from the compulsory consolidation and coordination provisions applicable to multidistrict litigation. **It does not say that no one may intervene in an action brought by the SEC without its consent.** It does not mention Fed. R. Civ. P. 24, nor does Rule 24 contain any clause giving special privileges to the SEC.") (emphasis added) and *SEC v. Callahan*, 2 F. Supp. 3d 427, 437 (E.D.N.Y. 2014) ("[T]here is no persuasive authority which suggests that section 21(g) . . . bars intervention in all SEC enforcement actions.").

Moreover, the Eleventh Circuit has not addressed the issue.

Because this Court concluded earlier that Canto had not met the Rule 24 intervention standards at the time, Judge Scola determined that he did not need to decide whether Section 21(g) barred Canto from intervening.

But the time to consider that argument has ripened again, and the Undersigned is not convinced by the SEC's argument.

In *SEC v. Kings Real Estate Inv. Tr.*, 222 F.R.D. 660, 662–67 (D. Kan. 2004), the district court analyzed the statute, its legislative history, and related authorities—including cases

11

relied upon by the SEC here.[3] The district court there found "**no support** for the proposition that Congress, by including only words 'coordinate' and 'consolidate' in the language of Section 21(g), meant for that provision to apply to all possible interventions in SEC enforcement actions." *Id.* at 667 (emphasis added); *see also S.E.C. v. TLC Invs. & Trade Co.*, 147 F. Supp. 2d 1031, 1040 (C.D. Cal. 2001) ("[T]he plain language of § 21(g) bars only *consolidation*. It makes no mention of **intervention,** and the Federal Rules of Civil Procedure contain no exception to intervention for SEC actions.*")* (emphasis added*);* *S.E.C. v. Novus Techs., LLC,* 2:07 CV 0235 DB, 2008 WL 115114, at *3 (D. Utah Jan. 10, 2008) ("[T]he legislative history behind the statute, the plain language of the statute and Rule 24(b) do not support the SEC's position that Section 21(g) is an absolute bar to intervention.").

Canto does not seek to consolidate or coordinate the class action with the SEC's case. Nor does he seek to intervene to assert any claims or to seek damages against any Defendant in this case. He seeks intervention only for the limited purpose of asking the Court to lift a litigation stay of Canto's earlier-filed case against a non-party to this matter so that he may pursue his (and the class's) claims in the Southern District of New York.

In addition, in my view, the SEC is not persuasive in its contention that Canto's

---

[3] *See* [ECF No. 141, at p. 10 (citing to *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 332 (1979), *Aaron v. S.E.C.*, 446 U.S. 680, 717 n.9 (1980), and *S.E.C. v. Wozniak*, No. 92 C 4691, 1993 WL 34702, at *1–2 (N.D. Ill. Feb. 8, 1993)].

litigation would "necessarily involve" discovery requests to the Receiver, thereby forcing the Receiver to expend "valuable resources." [ECF No. 141, pp. 11-12]. That does not explain why *Betancourt* should be shielded from deposition. Moreover, the Receiver has had substantial time -- more than 430 days -- to gather documents, conduct his investigation, marshal assets, and submit a final Liquidation Plan. Neither federal statute nor federal cases shield a Receiver from all discovery.

The SEC does not address the reality that Canto unilaterally -- and before this SEC action -- voluntarily stayed his case against BKCoin and later agreed to a stay against Kang, another defendant to this action. He has thus far exhibited no desire to interfere with this enforcement action or the Receiver's work. *See, e.g., SEC v. Illarramendi*, No. 3:11cv78, 2011 WL 13234327, at *2 (D. Conn. June 16, 2011) (holding that Section 21(g) did not bar intervention because "[m]ovants do not seek to intervene in order to recover damages from the parties against whom the SEC seeks relief, but instead seek only [to] 'oppose the far–reaching relief sought by the SEC'").

Finally, as highlighted above, Judge Scola already noted that he does not think that Section 21(g) acts as a blanket prohibition on intervention in enforcement actions.

Given the Undersigned's conclusion that Section 21(g) does not bar Canto's requested intervention, I will shift the analysis to assessing Canto's motion under Rule 24.

### Intervention "As of Right"

Rule 24(a)(2) of the Federal Rules of Civil Procedure permits intervention as of right when: (1) the movant's application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing *Athens Lumber Co. v. F.E.C.*, 690 F.2d 1364, 1366 (11th Cir. 1982)). The movant has the burden to show that each of these four elements are met. *See CFTC v. Heritage Cap. Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir. 1984). "Failure to satisfy even one of [Rule 24(a)'s] requirements is sufficient to warrant denial of a motion to intervene as a matter of right." *Id.*

Canto cannot meet the second requirement for intervention as of right, *i.e.*, he does not hold a "direct, substantial, legally protect[a]ble interest in the proceeding" or in the transaction which is the subject of the proceeding, because, by his own admission, Betancourt's assets are not part of the Receivership Estate. [ECF No. 135, p. 14]. As Canto cannot show an interest relating to the property or transaction that is the subject of this action, he also cannot establish that disposition of this action, as a practical matter, may impair or impede his ability to protect that interest. *NBD Bank N.A. v. Bennett*, 159 F.R.D.

505, 507 (S.D. Ind. 1994) ("[b]ecause they fail to satisfy the second prong of the test . . . petitioners necessarily fail to meet the third prong" (citation omitted)).

### Permissive Intervention

A district court may exercise its discretion to allow a third party to intervene if: (1) a movant's claim or defense and the main action have a question of law or fact in common, and (2) the proposed intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(3). *See also Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005).

Canto and the class members' complaint asserts common questions of law and fact relating to the BKCoin entities and the unlawful dissipation of investor funds. (*See* ECF No. 28 in *Canto v BKCoin*).

However, the need for a common issue is minimized here, as Canto seeks intervention only for the limited purpose of lifting the stay against Betancourt and proceeding against him in the New York action. Betancourt is not a party to this matter, his assets have not been frozen by the SEC, and allowing Canto to pursue his and the class members' individual claim against Betancourt will not prejudice the SEC, the Receiver, or Defendants, nor will it delay this litigation or the rights of any involved party.

At bottom, Canto wants to get in (*i.e.*, intervene) in order to get *out* (*i.e.*, persuade the Court to lift the stay and permit him to litigate the other lawsuit).

15

The SEC contends that Canto's lawsuit may complicate this action because absent a stay, he may seek discovery against Defendants in this action. But Rule 24 asks whether the intervention will delay the proceedings -- not whether lifting the stay after intervention will cause delays. In any event, this Court is not (and will not be) powerless to address discovery which the Receiver may deem unduly burdensome.

Canto has adequately explained why permissive intervention is appropriate, and the Court should therefore exercise its discretion and permits him to intervene for the limited purpose of seeking a partial lifting of the stay (so he can pursue the lawsuit against Betancourt).

### Should the Stay of Litigation Against Betancourt Be Lifted?

The Ninth Circuit articulated what has become the widely-adopted test for lifting a stay of litigation where a receiver has been appointed. The Ninth Circuit held that factors to consider are:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

*S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) (internal citations omitted).

#### A. Lifting the Stay Against Betancourt Will Not Change the Status Quo

This factor "essentially balances the interests in preserving the receivership estate

16

with the interests" of the movant. *See S.E.C. v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011). Betancourt is not a Defendant in this case and is not subject to the Court's asset freeze. [ECF No. 5]. Allowing Canto to proceed against Betancourt will not affect the Receivership or any Receivership assets, nor will it affect the SEC's litigation against Defendants.

Canto has brought claims against Betancourt (a nonparty in this matter) in his individual capacity. Lifting the stay as to only Betancourt will not disturb the "status quo" here. However, if the stay were to continue and remain in place, as it has for more than a year, then Canto contends he and others would be prejudiced. Canto argues that he and the proposed class members face the risk of not being able to timely pursue their claims against Betancourt or those who may have assisted in his unlawful conduct. This is a legitimate concern, and the Undersigned concludes that this factor is in Canto's favor.

### *B. The Timing of this Motion Does Not Prejudice the Parties or Receiver*

The timing of the instant Motion is inconsequential because Canto's claims against Betancourt do not seek to disturb the frozen assets under the Receiver's control. In this situation, there is no concern that the Receiver would be "forced into court" to defend or protect the frozen assets. *See S.E.C. v. Vescor Cap. Corp.*, 599 F.3d 1189, 1198 (10th Cir. 2010). As stated above, any recovery against Betancourt would be in his individual capacity, which is *outside* of the Receivership.

Moreover, neither the SEC nor Defendants here will be prejudiced. Betancourt is not a named Defendant in this case, and the SEC has not sought to freeze *his* assets. Simply put, a limited lift of the stay to allow Canto and the class to pursue their claims against Betancourt will not prejudice, or even affect, this matter, which appears to be nearing its completion.

Additionally, the Receiver has had more than a year to gather documents and other information, alleviating any concern that the lift of the litigation stay as to Betancourt would be burdensome on the Receiver or his investigation.

Therefore, the timing of this Motion is proper. This factor is also in Canto's favor.

### C. The Claims that Canto Seeks to Litigate Appear Meritorious

Canto's claims on behalf of himself and the proposed nationwide class seem meritorious. Nevertheless, he is not required to show that he is likely to prevail on the merits; Canto must show only that he has "*colorable* claims to assert which justify lifting the receivership stay." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 444 (3d Cir. 2005) (citing *Wencke*, 742 F.2d at 1232) (emphasis added). The claims that Canto and the class members have brought against Betancourt relate to Betancourt's individual breaches of fiduciary duty and fraud in his role as an investment manager with BKCoin and the dissipation of investors' funds. The evidence filed by the SEC in this case demonstrates that the claims Canto seeks to litigate are well founded.

The SEC contends that a district court has broad authority to prohibit non-parties from commencing suits against receivership entities. [ECF No. 141, p. 12 (citing *S.E.C. v. Harbor City Cap. Corp.*, No. 6:21-cv-694, 2023 WL 1105282 (M.D. Fla. Jan. 30, 2023))]. But Canto is not opposing a stay against the Receiver or any receivership entities. He is seeking to lift a stay against a former officer of BKCoin, a non-party here, and whose personal assets are not subject to this Court's Asset Freeze Order.

The Undersigned is not convinced by the SEC's argument that lifting the stay will disturb the status quo. The only basis for this contention is that the Receiver may have to respond to discovery. But that is not a basis to shield *Betancourt* from sitting for deposition, turning over documents, or identifying third-parties who may be able to produce discovery to allow for recovery on behalf of the class. Nor is it even clear how responding to discovery upsets the status quo.

And if it turns out that the Receiver is required to respond to discovery and deems those requests unduly burdensome, then he is certainly able to seek relief from the Court.

This final factor is also in Canto's favor.

### III.   Conclusion

For the reasons outlined above, the Undersigned respectfully recommends that Judge Scola **grant** Canto's renewed motion, allow him to intervene, and to partially lift the stay so that Canto may pursue his other lawsuit against Betancourt in New York

19

federal district court.

## IV. Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on May 17, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record