UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 23-CV-20719-SCOLA/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.

BK COIN MANAGEMENT, LLC, *et al.*,

       Defendants.
_____/

REPORT AND RECOMMENDATIONS ON
RECEIVER'S FOURTH INTERIM OMNIBUS APPLICATION FOR
ALLOWANCE AND PAYMENT OF PROFESSIONALS' FEES AND
REIMBURSEMENT OF EXPENSES FOR JANUARY 1, 2024 – MARCH 31, 2024

Michael I. Goldberg, in his capacity as the Court-appointed Receiver ("Receiver"),

filed the Receiver's Fourth Interim Omnibus Application for Allowance and Payment of

Professionals' Fees and Reimbursement of Expenses for January 1, 2024 – March 31, 2024

("Fourth Interim Application") "seek[ing] Court approval to pay the sum of $96,755.23 to

the professionals engaged by the Receiver for fees incurred and reimburse $24,817.68 in

expenses paid for a total payment of $121,572.91." [ECF No. 166, p. 1].

The Securities and Exchange Commission ("SEC" or "Plaintiff") does not object to

the relief requested. To date, no responses/objections have been filed, and the time to do

so has passed.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 171].

As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant** the Fourth Interim Application.

## I.      Procedural and Factual Background

On February 23, 2023, the SEC commenced this action against Defendants BKCoin Management, LLC ("BKCoin") and Min Woo Kang a/k/a "Kevin" Kang (collectively, "Defendants") and Relief Defendants BKCoin Capital, LP, BK Offshore Fund, LTD., BKCoin Multi-Strategy Master Fund, Ltd., BKCoin Multi-Strategy Fund, LP, BKCoin Multi-Strategy Fund Ltd., and Bison Digital LLC (collectively, "Relief Defendants"), asserting that Defendants violated various sections of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940, and for unjust enrichment against Relief Defendants. [ECF No. 1].

The SEC sought and obtained the appointment of the Receiver. [ECF Nos. 4; 8]. The Court also granted the SEC's *ex parte* emergency motion for an order freezing the assets of Defendants and Relief Defendants. [ECF Nos. 5; 9].

The Order appointing the Receiver authorizes him to, among other things, retain personnel to assist him in executing his duties:

> [6.]F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

> ***

> 56. Subject to Paragraph 57 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

[ECF No. 8, ¶¶.6F, 56].

The Court's Order provides for reasonable compensation and reimbursement of costs to the Receiver and the retained professionals from the Receivership Estates:

> 57. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

*Id.* at ¶ 57.

The Court's Order defines the term Receivership Estates to include:

> all property interests of the Receivership Defendants and Relief Defendants, including, but not limited to, monies, funds, securities, cryptocurrencies, crypto assets, credits, effects, goods, chattels, lands,

3

premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants and Relief Defendants own, possess, have a beneficial interest in, or control directly or indirectly[.]

*Id.* at 6.A. "The amount of cash on hand in the Receivership bank accounts as of [the date of filing the Fourth Interim Application] is $6,325,606.70." [ECF No. 166, p. 4].

Previously, the Receiver filed a First Interim Application [ECF No. 95], a Second Interim Application [ECF No. 111], and a Third Interim Application [ECF No. 128] seeking approval for fees and costs that he and his retained professionals incurred from February 24, 2023 through June 30, 2023, July 1, 2023 through September 30, 2023, and October 1, 2023 through December 31, 2023, respectively. The Undersigned issued Reports and Recommendations [ECF Nos. 117; 119; 139], recommending that Judge Scola grant the motions. Judge Scola affirmed and adopted the Reports and Recommendations. [ECF Nos. 124; 125; 160]

In the instant *Fourth* Interim Application, the Receiver seeks approval of the fees and costs that he and his retained professionals incurred from January 1, 2024 – March 31, 2024 ("Application Period"). [ECF No. 166]. To support this request, the Receiver attached billing records and summarized the work performed by the Receiver himself and the professionals he engaged. The Receiver also included a certification which states, in part, that the facts asserted in the Fourth Interim Application are true. *Id.* at 19-20.

## II.      Applicable Legal Standard

"The district court appointing the receiver has discretion over who will pay the costs of the receiver" and "may award the receiver fees from property securing a claim if the receiver's acts have benefitted that property." *S.E.C. v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992); *see also S.E.C. v. Lauer*, No. 03-80612-CIV, 2016 WL 3225200, at *2 (S.D. Fla. Mar. 31, 2016) ("The District Court has significant discretion over the amount of compensation awarded to a court-appointed receiver and his hired professionals, and to win a reversal, the receiver must show that such discretion was plainly abused." (citation and footnote omitted)).

The party seeking attorney's fees bears the burden of establishing entitlement and reasonableness. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The movant must supply the Court with detailed records showing the amount of time spent on the claim, as well as the nature of the activity at each stage of the case. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from the claim, as those hours are unreasonable. *Id.* at 1299 (quoting *Hensley*, 461 U.S. at 434).

The Court is tasked with determining a reasonable fee award. "The most useful starting point for determining the amount of a reasonable fee is the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 434. This amount is typically referred to as the "lodestar." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163–64 (11th Cir. 2008).

"The [C]ourt . . . itself [is] an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).[1]

## III.    Analysis

The Receiver retained the services of his law firm Akerman LLP ("Akerman"), accounting firm YIP Associates ("YIP Associates"), and forensic cryptocurrency consulting firm Coherent Economics. The Receiver and his retained professionals are in the process of conducting a "thorough forensic analysis of the activities of the Receivership Entities as well as all Receivership Property" which, "once complete, will reconcile all remaining, recovered, and recoverable Receivership Property, and will also identify any and all investors with the requisite standing to participate in a claims process." [ECF No. 166, p. 5].

---

[1]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

The Fourth Interim Application describes in detail the activities performed by the Receiver and his legal team, including asset analysis, recovery, and disposal. *Id.* at 8-15. The Receiver "continues to review potential causes of action against the principals of the Receivership Defendants and various third parties[,]" "includ[ing] common law claims and claims under fraudulent transfer statutes." *Id.* at 5. He is also "investigating and commencing claims against parties who may have assisted the Receivership Entities in the perpetration of any actionable claims in an attempt to recover money for the estate's creditors." *Id.*

The Receiver and Akerman located financial accounts associated with the Receivership Entities and brought those funds into accounts under the Receiver's control. *Id.* at 8. During the Application Period, the Receiver "identified accounts held at Interactive Brokers belonging to BKCoin Management LLC and BKCoin Capital LP." *Id.* at 9. The securities in those accounts were liquidated and all cash was transferred to a federally insured bank to receive and hold all Receivership Funds." *Id.* The Receiver and Akerman worked diligently with various financial institutions to coordinate the transfer of funds into the Receivership estate.

During the Application Period, the Receiver and Akerman also "analyzed documents, prepared formal demands for turnover from financial institutions and third parties in possession of receivership assets[,]" and "identified digital assets held at

various exchanges as well as digital assets held in a hardware wallet." *Id.* at 10. They "have been working to repatriate and liquidate [digital assets held at financial institutions]." *Id.* at 11.

Additionally, because the Receivership entities have claims in several crypto-related bankruptcies, the Receiver has "filed proofs of claim in those proceedings where required," "continued to monitor these cryptocurrency exchange bankruptcy proceedings, "coordinat[ed] with debtors' counsel, and "ensured that any claims belonging to the Receivership Entities are preserved if practicable." *Id.*

The Fourth Interim Application describes in detail the work performed by YIP Associates during the Application Period. YIP Associates shared its records and analyses with consulting firm Coherent Economics. *Id.* at 13. It also continued its work of "trac[ing] funds through the receivership entity bank accounts and relevant cryptocurrency exchanges" reviewing document productions, updating analysis, and assisting the Receiver with preparing the Standardized Fund Accounting Report filed with the Court on February 14, 2024. *Id.* It also analyzed the previous year's tax returns, reviewed outstanding tax issues, coordinated tax compliance matters, and communicated with investors. *Id.* at 14.

The Receiver additionally employed Coherent Economics "to assist with cryptocurrency tracing and accounting in order to properly compute creditor claims, to

support potential litigation contemplated by the Receiver, and to provide the Court with the required reporting in [the] administration of the case." *Id.* at 14. Coherent Economics "review[ed] and analy[zed] [ ] trading activity and records from eighteen (18) cryptocurrency exchanges." *Id.* It "prepared a database of the trading activity and transfers of digital assets across the cryptocurrency exchanges used by the Receivership Entities[,]" which it continues to update as more information becomes available. *Id.* at 14-15.

The Receiver requests the following amounts incurred during the Application Period: $58,564.73 in fees and $24,442.68 in expenses by Akerman; $21,898.50 in fees and $375 in expenses by YIP Associates; and $16,292.00 in fees and no expenses by Coherent Economics. *Id.* at 21-26. The Receiver and Akerman expended 185.60 hours, YIP Associates expended 73.60 hours, and Coherent Economics expended 44.00 hours for a total of 303.20 hours on work related to this case during the Application Period. *Id.*

The hourly rates for the legal professionals were **reduced** from a range of $295.00–$1,015.00 to a range of $233.75–$709.75. *Id.* at 24. The accounting professionals used a **reduced** rate, from a range of $300.00–$450.00 to a range of $245.00–$375.00. *Id.* at 25. The forensic cryptocurrency professionals also used a **reduced** rate, from a range of $345.00–$650.00 to a range of $276.00–$520.00. *Id.* at 26.

As indicated in the Fourth Interim Application, "the professionals who seek payment . . . have collectively discounted their fees by a minimum of 15% off their regular rates" and the Receiver's requested hourly rate is "a 45% reduction of his regular billing rate." *Id.* at 2.

The SEC does not object to the requested amounts and no responses/objections have been filed. Moreover, the Undersigned has reviewed the records of the Receiver/legal professionals, the retained accounting firm, and the retained forensic cryptocurrency firm. I am satisfied that the timekeepers' billing rates and hours expended, as well as the claimed expenses, are reasonable. *See Norman*, 836 F.2d at 1303 ("The [C]ourt . . . itself [is] an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (quoting *Campbell*, 112 F.2d at 144)).

## IV.  Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the Court **grant** the Receiver's Fourth Interim Application [ECF No. 166] and authorize the Receiver to pay the requested $121,572.91 in fees and expenses.

## V.      Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on June 24, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record

11