UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-20719-SCOLA/LETT

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

BK COIN MANAGEMENT, LLC, *et al.*,

    Defendants.

_____/

# REPORT AND RECOMMENDATIONS ON RECEIVER'S SIXTH INTERIM OMNIBUS APPLICATION FOR ALLOWANCE AND PAYMENT OF PROFESSIONALS' FEES AND REIMBURSEMENT OF EXPENSES FOR JULY 1, 2024 THROUGH SEPTEMBER 30, 2024

**THIS CAUSE** is before the Court pursuant to a referral of District Court Judge Robert N. Scola, Jr. of Receiver Michael I. Goldberg's ("Receiver") Sixth Interim Omnibus Application for Allowance and Payment of Professionals' Fees and Reimbursement of Expenses for July 1, 2024 through September 30, 2024 ("Application," ECF No. 197) for a report and recommendation consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules. [ECF No. 198]. The Receiver is requesting reimbursement in the amount of $111,123.52 for professionals engaged by the Receiver for fees incurred and $21,133.29 in expenses paid for a total of $132,256.81. Application at 1. No objections were filed to the Application or the relief that the Receiver requested.

For the reasons mentioned below, the Court **recommends** that the District Court grant the Receiver's Application.

## I. Background

On February 23, 2023, the Securities and Exchange Commission ("SEC") filed its Complaint for Injunctive and Other Relief ("Complaint," ECF No. 1) against the Defendants BKCoin Management, LLC and Min Woo Kang a/k/a Kevin Kang ("Defendants"), along with Relief Defendants BKCoin Capital, LP; BK Offshore Fund, LTD.; BKCoin Multi-Strategy Master Fund, Ltd.; BKCoin Multi-Strategy Fund, LP; BKCoin Multi-Strategy Fund Ltd.; and Bison Digital LLC ("Relief Defendants"), stating that the Defendants violated the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940, and for unjust enrichment against the Relief Defendants. The SEC subsequently filed a Motion and Memorandum of Law for Appointment of Receiver ("Motion to Appoint Receiver," ECF No. 4). The District Court granted the Motion to Appoint Receiver [ECF No. 8], authorizing the Receiver to retain personnel to assist in the execution of his duties, and for reasonable compensation and reimbursement for the Receiver and the Retained Personnel:

> "[6.]F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;
>
> ***
>
> 56. Subject to paragraph 57 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without obtaining an Order of the Court authorizing such engagement.
> 57. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil

>Actions Commenced by the U.S. Securities and Exchange Commission" ("the Billing Instructions") agree to by the Receiver. Such compensation shall require the prior approval of the Court."

Order Appointing Receiver ¶¶ 6.F., 56-57.

The Receiver has filed five previous Interim Applications. [ECF Nos. 95, 111, 128, 166, and 189]. Magistrate Judge Jonathan Goodman reviewed these Interim Applications and issued Reports and Recommendations on each, recommending that Judge Scola grant the motions. [ECF Nos. 117, 119, 139, 177, and 194]. Judge Scola affirmed and adopted the Reports and Recommendations. [ECF Nos. 124, 125, 160, 181, and 196].

For this Sixth Interim Application, the Receiver requests approval for compensation and reimbursement for work conducted between July 1, 2024 and September 30, 2024. *See generally* Application. The Receiver attached billing records and synopses of the work conducted by himself, as well as the professional groups that he enlisted for assistance on this case: his law firm, Akerman LLP; the accounting firm, YIP Associates; and forensic cryptocurrency consulting firm, Coherent Economics. *Id.* at 4. The Sixth Interim Application included a certification which states that the facts within the Application are true. *Id.*, Ex. 1. The Application is also accompanied by several exhibits, giving detailed lists of hours worked by individuals in each group retained by the Receiver. *See id.*, Exs. 1-5. In the Application and the attached exhibits, the Receiver details the specific actions each party involved in the litigation conducted in the case. *See generally, id.*

    **II.**    **Legal Standard**

When a district court appoints a receiver, the court has discretion over who will pay the costs for the receiver and "may award the receiver fees from property securing a claim if the receiver's acts have benefitted that property." *S.E.C. v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992). "The District Court has significant discretion over the amount of compensation awarded to a court-appointed receiver and his hired professionals, and to win a reversal, the receiver must show that such discretion was plainly abuse." *S.E.C. v. Lauer*, No. 03-60612, 2016 WL 3225200, at *2 (S.D. Fla. Mar. 31, 2016) (citations and footnote omitted). To determine reasonableness of fees, courts look to several factors: 1) the results achieved by the receiver; 2) the ability, reputation, and other professional qualities of the receiver; 3) the size of the estate and its ability to afford the expenses and fees; and 4) the time required to conclude the receivership. *See F.T.C. v. Worldwide Info Servs., Inc.*, No. 6:14-cv-8-Orl-41DAB, 2015 WL 144389, at *4 (M.D. Fla. Jan. 12, 2015). The Receiver and professional groups used by the Receiver are entitled to reimbursement for the "actual and necessary expenses they incurred in the performance of their duties." *See F.T.C. v. Direct Benefits Group, LLC*, No. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013) (citing *S.E.C. v. Elliot*, 953 F.2d at 1567).

The party seeking attorney's fees bears the burden of establishing entitlement to those fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Judges are given discretion and must exercise judgment when making fee determinations. *Id.* at 436. The Court is required to determine a reasonable fee amount once the entitlement to fees is established. *See id.* at 437. Courts typically begin this analysis with the

4

"lodestar" method, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See id.* at 434; *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163-64 (11th Cir. 2008). Once that number is determined, it carries a presumption of reasonableness. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). The lodestar amount may be adjusted by courts upward or downward based on other considerations. *Hensley*, 461 U.S. at 433-37. The party requesting fees must use sound judgement and exclude hours that would be unreasonable to bill a client when requesting fees. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988). The Court must also exclude excessive or redundant hours included in the final billing. *Id.* at 1303.

### III. Analysis

The Court is tasked with determining if the requested amount of fees and expenses in the Application by the Receiver is reasonable. The Receiver requests the following amounts in the Sixth Interim Application: $53,541.52 in fees and $20,528.89 in expenses for the Receiver and Akerman LLP; $38,005.00 in fees and $604.40 in expenses for YIP Associates; and $19,577.00 in fees for Coherent Economics. Application at 6-8. The Receiver and Akerman LLP have agreed to reduced rates of varying degrees and billed 158.70 hours during the time relevant to the Application. *Id.* at 6. Specifically, the Receiver has agreed to charge $550 per hour, which is a 45% discounted rate; Catherine Kretzschmar agreed to a rate of $465 per hour, which is a 25% discounted rate; and all other Akerman LLP professionals are discounted at a rate of 15%. YIP Associates billed 120.80 hours and reduced their

professionals' rates by 15%. *Id*. at 7. Coherent Economics billed 53.25 hours and has reduced their rate by 20%. *Id*. at 8.

### A. The Receiver and Akerman LLP

During the time frame of July 1, 2024 to September 30, 2024, the Receiver and Akerman LLP worked on asset analysis and recovery, consisting of identifying and reviewing potential assets and financial accounts involved with parties in the case. *Id*. at 8. Additionally, the Receiver located accounts at financial institutions that were not part of the Receivership estate and helped secure those funds under the Receiver's control. *Id*. at 8-9. The Receiver worked to transfer funds from digital assets and liquidating them for the Receivership. *Id*. at 9. The Receiver and Akerman LLP also worked extensively on case administration, communicating with government officials, former employees, creditors, investors, and other interested parties. *Id*. at 10. This extensive work has involved the production of hundreds of thousands of documents for both the SEC and Defendant Kang. *Id*. The Receiver and Akerman LLP produced the Seventh Interim Report as required by the District Court during this time frame, presenting their progress for the quarter. *Id*.

### B. YIP Associates

YIP Associates began working for the Receiver on April 20, 2023, to perform forensic accounting, financial investigative work, and tax work for the Receivership. *Id*. at 11. During this current Application period, YIP Associates conducted extensive forensic accounting, working to reconstruct books and records from past transactions, as well as sharing analyses with Coherent, the cryptocurrency professionals retained by the Court. *Id*. at 11. YIP Associates has also traced funds through the Receivership

Entity bank accounts and cryptocurrency exchanges. *Id*. at 12. YIP conducted an analysis of tax issues and prepared tax returns related to the sale of the Condominium in New York City, and analyzed the filing requirements for tax returns for New York State and New York City. *Id*. YIP Associates continued work on the preparation of several related tax documents during the relevant period that will be distributed to investors later this year. *Id*.

### C. Coherent

Coherent Economics was retained effective as of October 25, 2023, to perform financial investigations, forensic accounting, and forensic blockchain analysis for the Receiver. *Id*. at 12. Their work during this period consisted of reconstructing previous transactional records, "assist[ing] with cryptocurrency tracing and accounting in order to properly compute creditor claims, support[ing] potential litigation contemplated by the Receiver, and provid[ing] the Court with required reporting in administration of the case." *Id*. at 13. Coherent continues to supplement the database of trading activity and asset transfers Coherent prepared for the case and has performed detailed analyses of investor activity in conjunction with their work with YIP Associates. *Id*. at 13.

The SEC does not object to the requested amounts, and no other responses or objections were filed by any parties. Nonetheless, the Court itself must review the billing hours and rates for reasonableness. *See Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) (holding that even when a party defaults and does not

7

file a response or objection to attorney's fees, the Court has "an independent obligation" to review hourly rates, number of hours, and costs in motions for fees).

The Court has reviewed the billing records and information related to the work conducted by the Receiver, Akerman LLP, YIP Associates, and Coherent Economics, and based on the aforementioned factors, the Court believes that the billing rates, hours expended, and claimed expenses are reasonable. The Court notes that all parties have reduced their hourly rates by a significant percentage from their customary rates. Additionally, the time sheets demonstrate diligent work by the parties involved, without frivolous billing. Given the information provided by the Receiver regarding the extensive forensic accounting and analyses involved in cryptocurrency accounts, the Court agrees with the assessment that this is a particularly unique Receivership that has required sophisticated and nuanced work in line with what has been billed. For those reasons, the Court is satisfied with the Receiver's Sixth Interim Application and the amount of the fees and expenses requested therein.

### IV. Conclusion

For the reasons stated above, the Undersigned **RECOMMENDS** that the Court **GRANT** the Receiver's Sixth Interim Application [ECF No. 197] and authorize the Receiver to pay the requested $132,256.81 in fees and expenses as allocated in the request.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above

findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

**DONE and ORDERED** in Chambers in Miami, Florida on this 26th day of June, 2025.

_____
**ENJOLIQUÉ A. LETT**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record